UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-108 (PAM/TNL)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PROPOSED JURY** |
| v. | ) | **INSTRUCTIONS OF THE** |
| | ) | **UNITED STATES** |
| 2.   TOU THAO, | ) | |
| 3.   J. ALEXANDER KUENG, and | ) | |
| 4.   THOMAS KIERNAN LANE, | ) | |
| | ) | |
| Defendants. | ) | |

The United States of America, by and through its attorneys, Charles J. Kovats, Jr.,

Acting United States Attorney for the District of Minnesota, Manda M. Sertich, Assistant

United States Attorney, and Samantha Trepel, Special Litigation Counsel for the Civil

Rights Division, hereby requests that the Court use the attached proposed instructions of

law during its preliminary and final instructions to the jury.  The United States reserves the

right to submit additional proposed instructions of law at the close of the evidence.

Dated: January 6, 2022

CHARLES J. KOVATS, JR.
Acting United States Attorney

*/s/ Manda M. Sertich*
BY:  MANDA M. SERTICH
Assistant U.S. Attorney
Attorney ID No. 4289039 NY

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

*/s/ Samantha Trepel*
BY:  SAMANTHA TREPEL
Special Litigation Counsel
Attorney ID No. 992377 DC

## GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 1
### PRELIMINARY INSTRUCTIONS BEFORE TRIAL
### INSTRUCTIONS BEFORE VOIR DIRE

Members of the Jury Panel, if you have a cell phone, smart phone, iPhone, or any other wireless communication device with you, please take it out now and turn it off.  Do not turn it to vibration or silent; power it down.  [During jury selection, you must leave it off.]  (Pause for thirty seconds to allow them to comply, then tell them the following:)

If you are selected as a juror, (briefly advise jurors of your court's rules concerning cellphones, cameras and any recording devices).

I understand you may want to tell your family, close friends and other people about your participation in this trial so that you can explain when you are required to be in court, and you should warn them not to ask you about this case, tell you anything they know or think they know about it, or discuss this case in your presence.  You must not post any information on a social network, or communicate with anyone, about the parties, witnesses, participants, charges, evidence, or anything else related to this case, or tell anyone anything about the jury's deliberations in this case until after I accept your verdict or until I give you specific permission to do so.  If you discuss the case with someone other than the other jurors during deliberations, you may be influenced in your verdict by their opinions.  That would not be fair to the parties and it would result in a verdict that is not based on the evidence and the law.

While you are in the courthouse and until you are discharged in this case, do not provide any information to anyone by any means about this case.  Thus, for example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, computer, the Internet, any Internet service, any text or instant messaging service, any social media, including services or apps such as Facebook, Instagram, Snapchat or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror.

Do not do any research—on the Internet, in libraries, in the newspapers, or in any other way—or make any investigation about this case on your own.  Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony.  Also, do not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge until you have been excused as jurors.

The parties have a right to have this case decided only on evidence they know about and that has been presented here in court. If you do some research or investigation or experiment that we don't know about, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, including the oath to tell the truth and by cross-examination. Each of the parties is entitled to a fair trial, rendered by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide a case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice. It is very important that you abide by these rules. Failure to follow these instructions could result in the case having to be retried. It could also result in sanctions for anyone who willfully violates my instruction.

[Are there any of you who cannot or will not abide by these rules concerning communication with others and outside research in any way, shape or form during this trial?] (And then continue with other voir dire.)

**Authorities**:

Model Crim. Jury Instr. 8th Cir. § 0.01 (2020) (modified to include possible sanctions, given the recent frequency with which the government has encountered jurors who have conducted Google research).

3

## GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 2
## PRELIMINARY INSTRUCTIONS BEFORE TRIAL
## INSTRUCTIONS AT END OF VOIR DIRE

During this recess, and every other recess, do not discuss this case among yourselves or with anyone else, including your family and friends.  Do not allow anyone to discuss the case with you or within your hearing.  "Do not discuss" also means do not e-mail, send text messages, "like' or "dislike" comments or articles, blog, comment, or engage in any other form of written, oral or electronic communication, as I instructed you before.

Do not read any newspaper or other written account, watch any televised account, or listen to any radio program on the subject of this trial.  Do not conduct any Internet research or consult with any other sources about this case, the people involved in the case, or its general subject matter.  You must keep your mind open and free of outside information.  Only in this way will you be able to decide the case fairly based solely on the evidence and my instructions on the law.  If you decide this case on anything else, you will have done an injustice.  It is very important that you follow these instructions.

I may not repeat these things to you before every recess, but keep them in mind until you are discharged.

**Authorities**:

Model Crim. Jury Instr. 8th Cir. § 0.02 (2020) (modified to include more recent internet activity options, such as "liking" or "disliking" comments and articles).

4

## GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 3
### PRELIMINARY INSTRUCTIONS BEFORE TRIAL
### GENERAL: NATURE OF CASE; NATURE OF INDICTMENT; BURDEN OF PROOF; PRESUMPTION OF INNOCENCE; DUTY OF JURY; CAUTIONARY

Ladies and gentlemen: I will take a few moments now to give you some initial instructions about this case and about your duties as jurors.  At the end of the trial I will give you further instructions. I may also give you instructions during the trial.  Unless I specifically tell you otherwise, all such instructions—both those I give you now and those I give you later—are equally binding on you and must be followed.

You must leave your cell phone, PDA, Blackberry, smart phone, iPhone and any other wireless communication devices in the jury room during the trial and may only use them during breaks.  However, you are not allowed to have cell phones in the jury room during your deliberations.  You may give the cell phone to the [bailiff] [deputy clerk] for safekeeping just before you start to deliberate.  It will be returned to you when your deliberations are complete.

This is a criminal case, brought against the defendants by the United States government.  The Indictment in this case charges the defendants with the crime of deprivation of rights under color of law.

There is no Count One of this Indictment.  The Indictment starts with Count Two, which charges that Defendants Tou Thao and J. Alexander Kueng, while acting under color of law, willfully deprived George Floyd of the right, secured and protected by the Constitution and laws of the United States, to be free from an unreasonable seizure. Specifically, Count Two states that Defendants Kueng and Thao were aware that former officer Derek Chauvin was holding his knee across George Floyd's neck as Mr. Floyd lay handcuffed and unresisting, and that Mr. Chauvin continued to hold Mr. Floyd to the ground even after Mr. Floyd became unresponsive, and Defendants Kueng and Thao willfully failed to intervene to stop Mr. Chauvin's use of unreasonable force.  Count Two charges that this offense resulted in bodily injury to, and the death of, George Floyd.

Count Three charges that Defendants Tou Thao, J. Alexander Kueng, and Thomas Lane, while acting under color of law, willfully deprived George Floyd of the right, secured and protected by the Constitution and laws of the United States, not to be deprived of liberty without due process of law, which includes an arrestee's right to be free from a police officer's deliberate indifference to his serious medical needs.  Specifically, Count Three sets out that the defendants saw George Floyd lying on the ground in clear need of medical care, and willfully failed to aid Mr. Floyd, thereby acting with deliberate indifference to a

substantial risk of harm to Mr. Floyd.  Count Three charges that this offense resulted in bodily injury to, and the death of, George Floyd.

The Indictment is simply the document that formally charges the defendants with the crimes for which they are on trial.  The Indictment is not evidence.  The defendants have pleaded not guilty, and are presumed to be innocent unless and until proved guilty beyond a reasonable doubt.

You might notice that the Indictment talks of rights "secured and protected by the Constitution and laws of the United States."  Sometimes, when people hear that a case involves constitutional rights or civil rights, they wrongly assume that the case has to do with racial discrimination.  For that reason, I want to let you know now, at the start of the case, that there is no allegation of racial discrimination here.  The constitutional rights involved in this case are the rights of every person in the United States to be free from the use of unreasonable force by a police officer and to be free from a police officer's deliberate indifference to their serious medical needs while in police custody.  These rights belong to everyone, and have nothing to do with the race of either the person in custody or the officer.  So keep in mind—even if an officer and a person in the officer's custody are of different races—that there is no allegation of racial discrimination.

It will be your duty to decide from the evidence whether each defendant is guilty or not guilty of the crimes charged.  From the evidence, you will decide what the facts are.  You are entitled to consider that evidence in the light of your own observations and experiences in the affairs of life.  You may use reason and common sense to draw deductions or conclusions from facts which have been established by the evidence.  You will then apply those facts to the law which I give you in these and in my other instructions, and in that way reach your verdict.  You are the sole judges of the facts, but you must follow my instructions, whether you agree with them or not.  You have taken an oath to do so.

Do not allow sympathy or prejudice to influence you. The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you.  You should not take anything I may say or do during the trial as indicating what I think of the evidence or what I think your verdict should be.

6

Finally, please remember that only these defendants, not anyone else, are on trial here, and that these defendants are on trial only for the crimes charged, not for anything else.

**<u>Authorities</u>:**

Model Crim. Jury Instr. 8th Cir. § 1.01 (2020) (modified to clarify that proof of deprivation of civil rights under § 242 does not require proof of racial discrimination).

18 U.S.C. § 242.

### GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 4
### PRELIMINARY INSTRUCTIONS BEFORE TRIAL
### ELEMENTS OF THE OFFENSE—PRELIMINARY

In order to help you follow the evidence, I will now give you a brief summary of the elements of the crimes charged, which the government must prove beyond a reasonable doubt to make its case.

Count Two charges that Defendants Thao and Kueng, while acting under color of law, willfully deprived Mr. Floyd of the right to be free from the use of unreasonable force by a police officer by willfully failing to intervene to stop Mr. Chauvin's use of unreasonable force.  As to Count Two, the elements are:

*One*, that Defendants Thao and Kueng acted under color of law, meaning in their official capacity;

*Two*, that Defendants Thao and Kueng deprived Mr. Floyd of the right to be free from the use of unreasonable force by failing to intervene to stop Mr. Chauvin from using unreasonable force as alleged in the Indictment;

*Three*, that Defendants Thao and Kueng committed the acts or omissions willfully; and

*Four*, that bodily injury and/or death resulted from the unreasonable force.

Count Three charges that Defendants Thao, Kueng, and Lane, while acting under color of law, willfully deprived Mr. Floyd of the right to be free from a police officer's deliberate indifference to his serious medical needs.  As to Count Three, the elements are:

*One*, that Defendants Thao, Kueng, and Lane acted under color of law, meaning in their official capacity;

*Two*, that Defendants Thao, Kueng, and Lane deprived Mr. Floyd of the right to be free from a police officer's deliberate indifference to his serious medical needs as alleged in the Indictment;

*Three*, that Defendants Thao, Kueng, and Lane committed the acts or omissions willfully; and

*Four*, that bodily injury and/or death resulted from the offense.

You should understand, however, that what I have just given you is only a preliminary outline.  At the end of the trial I will give you a final instruction on these matters.  If there is any difference between what I just told you, and what I tell you in the instructions I give you at the end of the trial, the instructions given at the end of the trial must govern your deliberations.

**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 1.02 (2020).

18 U.S.C. § 242.

## GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 5
### PRELIMINARY INSTRUCTIONS BEFORE TRIAL
### EVIDENCE; LIMITATIONS

I have mentioned the word "evidence." The "evidence" in this case consists of the testimony of witnesses, the documents and other things received as exhibits, and any facts that have been stipulated—that is, formally agreed to by the parties.

You may use reason and common sense to draw deductions or conclusions from facts which have been established by the evidence in the case.

Certain things are not evidence. I will list those things for you now:

1. Statements, arguments, questions, and comments by lawyers representing the parties in the case are not evidence.

2. Objections are not evidence. Lawyers have a right to object when they believe something is improper. You should not be influenced by the objection. If I sustained an objection to a question, you must ignore the question and must not try to guess what the answer might have been.

3. Testimony that I struck from the record, or told you to disregard, is not evidence and must not be considered.

4. Anything you saw or heard about this case outside the courtroom is not evidence.

Furthermore, a particular item of evidence is sometimes received for a limited purpose only. That is, it can be used by you only for one particular purpose, and not for any other purpose. I will tell you when that occurs, and instruct you on the purposes for which the item can and cannot be used.

Finally, some of you may have heard the terms "direct evidence" and "circumstantial evidence." You are instructed that you should not be concerned with those terms. The law makes no distinction between direct and circumstantial evidence. You should give all evidence the weight and value you believe it is entitled to receive.

**Authorities**:

Model Crim. Jury Instr. 8th Cir. § 1.03 (2020).

**GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 6**
**PRELIMINARY INSTRUCTIONS BEFORE TRIAL**
**CREDIBILITY OF WITNESSES**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

[In deciding what testimony of any witness to believe, consider the witness's intelligence, the opportunity the witness had to have seen or heard the things testified about, the witness's memory, any motives that witness may have for testifying a certain way, the manner of the witness while testifying, whether that witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with other evidence that you believe].

**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 1.05 (2020).

11

**GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 7**
**PRELIMINARY INSTRUCTIONS BEFORE TRIAL**
**NO TRANSCRIPT AVAILABLE; NOTE-TAKING**

At the end of the trial you must make your decision based on what you recall of the evidence.  You will not have a written transcript to consult, and it may not be practical for the court reporter to read [play] back lengthy testimony.  You must pay close attention to the testimony as it is given.

If you wish, however, you may take notes to help you remember what witnesses said.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  And do not let note-taking distract you so that you do not hear other answers by the witness.

When you leave at night, your notes will be secured and not read by anyone, and after trial, your notes will be destroyed.

**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 1.06(A) (2020) (modified to state that notes will be destroyed to address a juror's potential concern that people might read and criticize their notes afterward).

### GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 8
### PRELIMINARY INSTRUCTIONS BEFORE TRIAL
### BENCH CONFERENCES AND RECESSES

During the trial it may be necessary for me to talk with the lawyers out of the hearing of the jury, either by having a bench conference here while the jury is present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence, and to avoid confusion and error.  We will, of course, do what we can to keep the number and length of these conferences to a minimum.

**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 1.07 (2020).

13

### GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 9
### PRELIMINARY INSTRUCTIONS BEFORE TRIAL
### CONDUCT OF THE JURY

To insure fairness, you as jurors must obey the following rules:

*First*, do not talk or communicate among yourselves about this case, or about anyone involved with it, until the end of the case when you go to the jury room to decide on your verdict.

*Second*, do not talk with anyone else about this case, or about anyone involved with it, until the trial has ended and you have been discharged as jurors.

*Third*, when you are outside the courtroom do not let anyone tell you anything about the case, or about anyone involved with it [until the trial has ended and your verdict has been accepted by me]. If someone should try to talk to you about the case [during the trial], please report it to the [bailiff][deputy clerk]. (Describe person.)

*Fourth*, during the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case—you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice. If a person from one side of the case sees you talking to a person from the other side—even if it is simply to pass the time of day—an unwarranted and unnecessary suspicion about your fairness might be aroused. If any lawyer, party or witness does not speak to you when you pass in the hall, ride the elevator or the like, it is because they are not supposed to talk to or visit with you. Please do not take it personally.

*Fifth*, it may be necessary for you to tell your family, close friends, teachers, coworkers, or employer about your participation in this trial. You can explain when you are required to be in court, but must not say anything more about the case. You should warn others not to ask you about this case or any related case, tell you anything they know or think they know about this case or any related case, or discuss this case, or any related case, in your presence. You must not communicate with anyone or post information about the parties, witnesses, participants, [claims][charges], evidence, or anything else related to this case. You must not tell anyone anything about the jury's deliberations in this case until after I accept your verdict or until I give you specific permission to do so. If you discuss the case with someone other than the other jurors during deliberations, it could create the perception that you have clearly decided the case or that you may be influenced in your verdict by their opinions. That would not be fair to the parties and it may result in the verdict being thrown out and the case having to be retried. During the trial, while you

14

are in the courthouse and after you leave for the day, do not provide any information to anyone by any means about this case.  Thus, for example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, Blackberry, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or Website such as Facebook, YouTube, Instagram, Snapchat, TikTok, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict.

*Sixth*, do not do any research—on the Internet, in libraries, in the newspapers, or in any other way—or make any investigation about this case on your own.  Do not visit or view any place discussed in this case and do not use Internet programs or other device to search for or to view any place discussed in the testimony.  Also, do not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge.

*Seventh*, do not read any news stories or articles in print, or on the Internet, or in any blog, about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.  [In fact, until the trial is over, I suggest that you avoid reading any newspapers or news journals at all, and avoid listening to any television or radio newscasts at all. There will be news reports about this case, and you might inadvertently find yourself reading or listening to something before you could do anything about it.  If you want, you can have your spouse or a friend clip out or save any stories and set them aside to give you after the trial is over.]  I can assure you, however, that by the time you have heard the evidence in this case, you will know what you need to return a just verdict.

The parties have a right to have the case decided only on evidence they know about and that has been introduced here in court.  If you do some research or investigation or experiment that we don't know about, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, including the oath to tell the truth and by cross-examination.  All of the parties are entitled to a fair trial, rendered by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process.  If you decide a case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice.  It is very important that you abide by these rules.  Remember, you have taken an oath to abide by these rules and you must do so.  Failure to follow these instructions may result in the case having to be retried and could result in you being held in contempt.

*Eighth*, do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.

**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 1.08 (2020) (modified to add more recent Internet platforms).

**GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 10**
**PRELIMINARY INSTRUCTIONS BEFORE TRIAL**
**OUTLINE OF TRIAL**

The trial will proceed in the following manner:

First, the government will make an opening statement. [Next the defendants' attorneys may, but do not have to, make opening statements.] An opening statement is not evidence but is simply a summary of what the attorney expects the evidence to be.

The government will then present its evidence and counsel for the defendants may cross-examine. [Following the government's case, the defendants may, but do not have to, present evidence, testify or call other witnesses. If the defendants call witnesses, the government may cross-examine them.]

After presentation of evidence is completed, the attorneys will make their closing arguments to summarize and interpret the evidence for you. As with opening statements, closing arguments are not evidence. The court will instruct you further on the law. After that you will retire to deliberate on your verdict.

**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 1.09 (2020).

17

## GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 11
### INSTRUCTION FOR USE DURING TRIAL
### STATEMENT OF ONE DEFENDANT IN MULTI-DEFENDANT TRIAL

You may consider the out-of-court statement(s) of defendant(s) (name) only in the case against him/them, and not against the other defendants.  You may not consider defendant(s) (name)(s') out-of-court statement(s) in any way when you are deciding if the government proved, beyond a reasonable doubt, its case against the other defendants.

**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 2.15 (2020) (in the event at least one defendant testifies: modified to clarify that instruction refers to out-of-court statements).

## GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 12
## FINAL INSTRUCTIONS FOR USE AT END OF TRIAL
## INTRODUCTION

Members of the jury, the instructions I gave you at the beginning of the trial and during the trial remain in effect.  I will now give you some additional instructions.

You must, of course, continue to follow the instructions I gave you earlier, as well as those I give you now.  You must not single out some instructions and ignore others, because <u>all</u> are important. This is true even though some of those I gave you at the beginning of trial and during trial are not repeated here.

The instructions I am about to give you now are in writing and will be available to you in the jury room.  I emphasize, however, that this does not mean they are more important than my earlier instructions.  Again, <u>all</u> instructions, whenever given and whether in writing or not, must be followed.

**<u>Authorities</u>:**

Model Crim. Jury Instr. 8th Cir. § 3.01 (2020).

## GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 13
## DUTY OF JURY

It is your duty to find from the evidence what the facts are. You will then apply the law, as I give it to you, to those facts. You must follow my instructions on the law, even if you thought the law was different or should be different.

Do not allow sympathy or prejudice to influence you. The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you.

**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 3.02 (2020).

## GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 14
### EVIDENCE; LIMITATIONS

I have mentioned the word "evidence." The "evidence" in this case consists of the testimony of witnesses, the documents and other things received as exhibits, and any facts that have been stipulated—that is, formally agreed to by the parties.

You may use reason and common sense to draw deductions or conclusions from facts which have been established by the evidence in the case.

Certain things are not evidence. I will list those things again for you now:

1. Statements, arguments, questions, and comments by lawyers representing the parties in the case are not evidence.

2. Objections are not evidence. Lawyers have a right to object when they believe something is improper. You should not be influenced by the objection. If I sustained an objection to a question, you must ignore the question and must not try to guess what the answer might have been.

3. Testimony that I struck from the record, or told you to disregard, is not evidence and must not be considered.

4. Anything you saw or heard about this case outside the courtroom is not evidence.

Finally, if you were instructed that some evidence was received for a limited purpose only, you must follow that instruction.

**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 3.03 (2020).

21

## GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 15
### CREDIBILITY OF WITNESSES

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You may believe all of what a witness said, or only part of it, or none of it.

In deciding what testimony to believe, consider the witness's intelligence, the opportunity the witness had to have seen or heard the things testified about, the witness's memory, any motives that witness may have for testifying a certain way, the manner of the witness while testifying, whether that witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with any evidence that you believe.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things.  You need to consider therefore whether a contradiction is an innocent misrecollection or lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or only a small detail.

[You should judge the testimony of a/the defendant in the same manner as you judge the testimony of any other witness.]

**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 3.04 (2020).

**GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 16**
**EXPERT WITNESSES**

You have heard testimony from persons described as experts.  Persons who, by knowledge, skill, training, education or experience, have become expert in some field may state their opinions on matters in that field and may also state the reasons for their opinion.

Expert testimony should be considered just like any other testimony.  You may accept or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the soundness of the reasons given for the opinion, the acceptability of the methods used, and all the other evidence in the case.

**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 4.10 (2020).

**GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 17**
**DEMONSTRATIVE SUMMARIES NOT IN EVIDENCE**

Certain charts and summaries have been shown to you in order to help explain the facts disclosed by the books, records, or other underlying evidence in the case. Those charts or summaries are used for convenience. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the books, records or other underlying evidence.

**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 4.11 (2020).

## GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 18
### RULE 1006 SUMMARIES

You will remember that certain [schedules][summaries][charts] were admitted in evidence. You may use those [schedules][summaries][charts] as evidence, even though the underlying documents and records are not here.

[However, the [accuracy][authenticity] of those [schedules][summaries][charts] has been challenged. It is for you to decide how much weight, if any, you will give to them. In making that decision, you should consider all of the testimony you heard about the way in which they were prepared.]

**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 4.12 (2020).

25

## GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 19
### FALSE EXCULPATORY STATEMENTS

When a defendant voluntarily and intentionally offers an explanation, or makes some statement before trial tending to show his innocence, and this explanation or statement is later shown to be false, you may consider whether this evidence points to a consciousness of guilt. Whether the statement is later shown to be false is a matter for you to determine. The significance to be attached to any such evidence is a matter for you to determine.

**Authorities**:

Model Crim. Jury Instr. 8th Cir. § 4.15 (2020) (modified to allow the jury to find whether or not the statement was false).

**GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 20**
**DESCRIPTION OF CHARGES; INDICTMENT NOT EVIDENCE;**
**PRESUMPTION OF INNOCENCE; BURDEN OF PROOF (MULTIPLE**
**DEFENDANTS, MULTIPLE COUNTS)**

The Indictment in this case charges the defendants with the crime of deprivation of rights under color of law.

There is no Count One.  The Indictment starts with Count Two, which charges that Defendants Tou Thao and J. Alexander Kueng, while acting under color of law, willfully deprived George Floyd of the right, secured and protected by the Constitution and laws of the United States, to be free from an unreasonable seizure.  Specifically, Count Two states that Defendants Kueng and Thao were aware that Mr. Chauvin was holding his knee across George Floyd's neck as Mr. Floyd lay handcuffed and unresisting, and that Mr. Chauvin continued to hold Mr. Floyd to the ground even after Mr. Floyd became unresponsive, and Defendants Kueng and Thao willfully failed to intervene to stop Mr. Chauvin's use of unreasonable force.  Count Two charges that this offense resulted in bodily injury to, and the death of, George Floyd.

Count Three charges that Defendants Tou Thao, J. Alexander Kueng, and Thomas Lane, while acting under color of law, willfully deprived George Floyd of the right, secured and protected by the Constitution and laws of the United States, not to be deprived of liberty without due process of law, which includes an arrestee's right to be free from a police officer's deliberate indifference to his serious medical needs.  Specifically, Count Three states that the defendants saw George Floyd lying on the ground in clear need of medical care, and willfully failed to aid Mr. Floyd, thereby acting with deliberate indifference to a substantial risk of harm to Mr. Floyd.  Count Three charges that this offense resulted in bodily injury to, and the death of, George Floyd.

Each defendant has pleaded not guilty to each of those charges.

The Indictment is simply the document that formally charges the defendants with the crimes for which they are on trial.  The Indictment is not evidence.  At the beginning of the trial, I instructed you that you must presume the defendants to be innocent.  Thus, the defendants began the trial with a clean slate with no evidence against them.

The presumption of innocence alone is sufficient to find each defendant not guilty of each count.  This presumption can be overcome as to each charged offense only if the government proved during the trial, beyond a reasonable doubt, each element of that charged offense.

Keep in mind that you must give separate consideration to the evidence about each individual defendant. Each defendant is entitled to be treated separately, and you must return a separate verdict for each defendant. Also keep in mind that you must consider, separately, each crime charged against each individual defendant, and you must return a separate verdict for each of those crimes charged.

There is no burden on a defendant to prove that he is innocent. Instead, the burden of proof remains on the government throughout the trial. **[If requested by the defense:** The fact that a defendant did not testify must not be considered by you in any way, or even discussed, in arriving at your verdict.]

**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 3.08 (2020).

**GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 21**
**INSTRUCTIONS FOR COUNTS TWO AND THREE: 18 U.S.C. § 242**
**DEPRIVATION OF RIGHTS UNDER COLOR OF LAW**
**ELEMENTS**

Counts Two and Three charge the defendants with committing the same general crime – deprivation of rights – in two different ways.  Because the counts have similar requirements, I will describe them together.  The crime of deprivation of rights, as charged in Counts Two and Three of the Indictment, has four essential elements, which are:

*First*:        That the defendant acted under color of law;

*Second*:        That the defendant deprived George Floyd of a right secured by the Constitution or laws of the United States, as alleged in the Indictment. Counts Two and Three involve different constitutional rights, so I will describe each one to you separately;

*Third*:        That the defendant committed the acts or omissions willfully; and

*Fourth*:        That bodily injury and/or death resulted from the offense.

If all of these elements have been proved beyond a reasonable doubt as to a defendant on a particular count, then you can find that defendant guilty of the crime charged in that count.   Otherwise, you must find that defendant not guilty of the crime charged in that count.

Because Counts Two and Three both charge that Mr. Floyd's death resulted from the charged offense, if you find a defendant guilty of one or more counts, you must also determine if the government has proven beyond a reasonable doubt that Mr. Floyd died as a result of that offense.


**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 3.09 (2020) (Elements of Offense—Burden of Proof) (modified).

Model Crim. Jury Instr. 8th Cir. § 6.18.242 (2020) (Deprivation of Civil Rights) (18 U.S.C. § 242) (modified).

29

United States v. Lanier, 520 U.S. 259, 264 (1997) (noting that "[s]ection 242 is a Reconstruction Era civil rights statute making it criminal to act (1) 'willfully' and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States").

Williams v. United States, 341 U.S. 97, 98 (1951) (discussing elements of 18 U.S.C. § 242 offense).

Screws v. United States, 325 U.S. 91, 106-07 (1945) (discussing elements of offense, which has since been codified as 18 U.S.C. § 242).

United States v. Hewitt, 999 F.3d 1141, 1148 (8th Cir. 2021) ("To secure a conviction for deprivation of rights under color of law, the Government must prove that a defendant acted (1) willfully and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States.") (internal quotation marks omitted).

United States v. Peterson, 887 F.3d 343, 347 (8th Cir. 2018) (explaining that "'Section 242 is a
. . . civil rights statute making it criminal to act (1) "willfully" and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States'") (quoting Lanier, 520 U.S. at 264).

United States v. Harrison, 671 F.2d 1159, 1161 (8th Cir. 1982) (noting that conviction under § 242 is proper where official acting under color of law commits "willful deprivation of a person's rights") (citing United States v. Jackson, 235 F.2d 925, 927 (8th Cir. 1956)).

Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607, 613 (8th Cir. 1980) (noting that "willful deprivations of constitutional rights under color of state law are punishable under 18 U.S.C. § 242, the criminal analog of section 1983").

**GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 22**
**INSTRUCTIONS FOR COUNTS TWO AND THREE: 18 U.S.C. § 242**
**DEPRIVATION OF RIGHTS UNDER COLOR OF LAW**
**FIRST ELEMENT: COLOR OF LAW**

I will now describe each element of Counts Two and Three. The first element of Counts Two and Three requires the government to prove beyond a reasonable doubt that the defendant acted "under color of law." A person acts "under color of law" if he is a public official or employee of a federal, state, or local government and he uses or abuses the power he possesses because of his official position. A government official, such as a police officer, acts "under color of law" if he is performing his official duties, purporting to perform those duties, or giving the appearance of performing such official duties, even if he misuses or abuses his official authority by doing something the law forbids.

If you find that the defendant was an officer with the Minneapolis Police Department and that he was acting, pretending to act, or giving the appearance of acting as a Minneapolis Police Department officer, then you may find that this element is satisfied.

**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 6.18.242 (2020) (Deprivation of Civil Rights) (18 U.S.C. § 242) (modified).

West v. Atkins, 487 U.S. 42, 49-50 (1988) (noting that "[i]t is firmly established that a defendant . . . acts under color of state law when he abuses the position given to him by the State. . . [t]hus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law").

Monroe v. Pape, 365 U.S. 167, 183-87 (1961), overruled on other grounds by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) (explaining that "under color of state law" includes "[m]isuse of power possessed by virtue of state law and made possible because the wrongdoer is clothed with the authority of state law") (internal quotation marks omitted).

Williams v. United States, 341 U.S. 97, 99-100 (1951) (holding that a misuse of lawful authority can constitute action taken under color of law) (internal citations omitted).

31

Screws v. United States, 325 U.S. 91, 107-11 (1945) (holding that officers performing official duties, regardless of whether they misuse their lawful authority, act under color of law).

United States v. Classic, 313 U.S. 299, 326 (1941) (holding that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of law") (internal quotation marks and citations omitted).

United States v. Peterson, 887 F.3d 343, 347 (8th Cir. 2018) (holding that an action is taken under color of law "if the defendant misused power that he possessed by virtue of state law and the action was made possible only because the wrongdoer was clothed with the authority of state law") (alterations and internal quotation marks omitted).

Ramirez-Peyro v. Holder, 574 F.3d 893, 900 (8th Cir. 2009) ("It has been firmly established that a public official acts under color of law when that official abuses the position given to him by the State.") (internal quotation marks omitted).

United States v. Colbert, 172 F.3d 594, 596 (8th Cir. 1999) ("[A] defendant acts under color of law when he misuses power possessed by virtue of state law and made possible only because he was clothed with the authority of state law.").

Armstrong v. City of Minneapolis, 525 F. Supp. 3d 954, 967 (D. Minn. 2021) ("A public employee acts under color of law when he exercises power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. To determine whether a public employee acts under color of law, courts look to see whether a sufficient nexus exists between the official's public position and the official's harmful conduct.") (internal quotation marks, citations, and alterations omitted).

**GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 23**
**INSTRUCTIONS FOR COUNT TWO: 18 U.S.C. § 242**
**DEPRIVATION OF RIGHTS UNDER COLOR OF LAW**
**SECOND ELEMENT: RIGHT TO BE FREE FROM UNREASONABLE FORCE**
**(FAILURE TO INTERVENE)**

The second element of Counts Two and Three requires the government to prove beyond a reasonable doubt that the defendant deprived George Floyd of a right secured by the United States Constitution. Because Counts Two and Three charge violations of different constitutional rights, I will provide you with separate instructions for this element, one for each Count.

First, I will describe the second element as it applies to Count Two. Count Two of the Indictment charges that Defendants Tou Thao and J. Alexander Kueng deprived George Floyd of the right to be free from an unreasonable seizure, which includes the right to be free from the use of unreasonable force by a police officer. I instruct you that this right is one secured by the United States Constitution, which prohibits an officer from using unreasonable force, and also prohibits an officer from failing to intervene to stop a fellow officer from using unreasonable force, despite having knowledge and the opportunity and means to do so.

In order to find that a defendant violated Mr. Floyd's right to be free from a police officer's use of unreasonable force by failing to intervene, you must find the following:

(1) That former officer Chauvin used objectively unreasonable force against Mr. Floyd;

(2) That the defendant observed or otherwise knew that unreasonable force was being used against Mr. Floyd;

(3) That the defendant had the opportunity and means to intervene to stop the unreasonable force; and

(4) That the defendant failed to take reasonable steps to do so.

In determining whether former officer Chauvin used unreasonable force, you should evaluate reasonableness from the point of view of an ordinary and reasonable officer on the scene at the time the force was used. In making your determination, you should consider all the facts and circumstances, including the amount of the force used; the relationship between the need for force and the amount of force used; the extent of Mr.

Floyd's injuries, if any; any effort made by Mr. Chauvin to temper or to limit the amount of force; the severity of the crime or security problem, if any, at issue; the threat reasonably perceived by Mr. Chauvin; and whether Mr. Floyd was actively attempting to escape or intentionally resisting Mr. Chauvin or other police officers.  In determining whether the force used was reasonable under all the facts and circumstances, keep in mind that force that is objectively reasonable at the beginning of an encounter may not be justified—even seconds later—if the objective justification for the initial use of force has been eliminated.

Each police officer present for an unreasonable use of force has an independent duty to intervene.  An officer has a duty to intervene regardless of rank or seniority.  If a defendant-officer took reasonable actions to stop the unreasonable force, he has not violated the Constitution merely because the steps he took were ultimately unsuccessful.

In determining whether a defendant has committed the constitutional violation of failing to intervene, as I have described it to you, you should consider all the facts and circumstances, including how long the use of unreasonable force against Mr. Floyd lasted; how much of the unreasonable force the defendant saw or heard; the defendant's distance from the unreasonable force; and any statements the defendant made prior to, during, or regarding the unreasonable force.

You must consider the evidence separately as to Defendant Thao and Defendant Kueng.

If you find that the government has proven these facts beyond a reasonable doubt as to a defendant, then you may find that the second element of the offense charged in Count Two is satisfied as to that defendant.

**Authorities:**

Pattern Civ. Jury Instr. 7th Cir. 7.22 (2021).

Pattern Civ. Jury Instr. 11th Cir. 5.7 (2019).

DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety . . . . [An] affirmative duty to protect arises . . . .").

Hollingsworth v. City of St. Ann, 800 F.3d 985, 991 (8th Cir. 2015) ("This court had established by July 2009 that an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment.  To establish a failure to intervene claim . . . the plaintiff must show that the officer observed or had reason to know that excessive force would be or was being used.").

Smith v. Conway Cty., Ark., 759 F.3d 853, 861 (8th Cir. 2014) ("At the time Smith was tased, it was clearly established that a jail official violates a detainee's due-process rights if the official knows that another official is using excessive force against the detainee but fails to intervene.") (internal quotations and citations omitted).

Nance v. Sammis, 586 F.3d 604, 611 (8th Cir. 2009) ("[O]ne who is given the badge of authority of a police officer may not ignore the duty imposed by his office by failing to act to prevent the use of excessive force.") (internal quotation marks omitted).

Nance, 586 F.3d at 612 ("A police officer who fails to act to prevent the use of excessive force may still be held liable where (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.") (internal quotation marks omitted).

Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir. 1981) ("We conclude although Crowe was a subordinate the evidence is sufficient to hold him jointly liable for failing to intervene if a fellow officer, albeit his superior, was using excessive force and otherwise was unlawfully punishing the prisoner.").

United States v. Serrata, 425 F.3d 886, 896 (10th Cir. 2005) (holding that evidence was sufficient to support § 242 conviction for officer's failure to intervene to prevent assault; noting that "[t]here is no question that [the officer] had a legal obligation to act to prevent the assault on [the victim], and we flatly reject any suggestion otherwise").

Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994) ("The number of officers present and able to intervene . . . in no way correlates with any one officer's duty to intercede.  Each police officer present has an independent duty to act.").

United States v. Koon, 34 F.3d 1416, 1447-48 (9th Cir.), aff'd in part, 518 U.S. 81 (1996) (holding, in § 242 case, that "the district court stated the law correctly" with respect to sergeant's failure to protect Rodney King from harm).

35

United States v. Reese, 2 F.3d 870, 887-90 (9th Cir. 1993) (affirming officer's § 242 conviction for failure to protect against use of excessive force and rejecting defendant's argument that "his failure to act did not 'subject' these individuals to the deprivation of a right 'secured or protected by the Constitution' within the meaning of section 242" as foreclosed by "principles approved by the Supreme Court, recognized in previous section 242 prosecutions, and acknowledged in our own decisions").

United States v. Burks, Case No. 2:19-cr-344-MHT, Dkt. No. 165 at 12-13 (M.D. Ala. July 21, 2021) (jury instructions defining law enforcement officer's failure to intervene in violation of 18 U.S.C. § 242).

United States v. Alex Huntley, Case No. 3:18-cr-8-WKW, Dkt. No. 60 at 12-13 (M.D. Ala. June 8, 2018) (same).

***Objectively Unreasonable Force***

Model Crim. Jury Instr. 8th Cir. § 6.18.242 (2020).

O'Malley, Grenig, & Lee, Fed. Jury. Prac. & Instr. Crim. Comp. HB § 7:1.

Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015) ("Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.  We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.").

Saucier v. Katz, 533 U.S. 194, 202 (2001) ("[A] use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.").

Graham v. Connor, 490 U.S. 386, 394, 396-97 (1989) (holding that the "test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight") (internal quotations and citation omitted).

Pollreis v. Marzolf, 9 F.4th 737, 747 (8th Cir. 2021) ("An officer's use of force violates the Fourth Amendment if it was objectively unreasonable. Objective unreasonableness is judged from the perspective of a reasonable officer on the scene, in light of the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.") (internal quotations and citations omitted).

Jackson v. Stair, 944 F.3d 704, 710 (8th Cir. 2019) ("The Fourth Amendment guarantees each citizen a right to be free from unreasonable searches or seizures. Where, as here, an excessive force claim is made against a law enforcement officer related to conduct involving an arrest, the Supreme Court has made clear that the conduct should be analyzed under an objective reasonableness standard.  . . .  Relevant considerations include the severity of the crime at issue, whether the suspect posed an immediate safety threat, and whether he was actively resisting arrest or attempting to flee.  We judge the relevant facts from the perspective of a reasonable officer on the scene, not with 20/20 hindsight vision. The question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.") (internal quotations and citations omitted).

Wilson v. Lamp, 901 F.3d 981, 989 (8th Cir. 2018) ("Force may be objectively unreasonable when a plaintiff does not resist, lacks an opportunity to comply with requests before force is exercised, or does not pose an immediate safety threat.").

United States v. Boone, 828 F.3d 705 (8th Cir. 2016) (affirming § 242 conviction predicated on officer's kick to prone arrestee).

Hollingsworth v. City of St. Ann, 800 F.3d 985, 989 (8th Cir. 2015) ("An officer's use of force violates the Fourth Amendment if it is objectively unreasonable in light of the facts and circumstances of the particular case, as judged from the perspective of a reasonable officer on the scene.") (internal quotations and citation omitted).

Retz v. Seaton, 741 F.3d 913, 919 (8th Cir. 2014) (upholding jury instruction that to find that the defendant-officer used unreasonable force, the jury must consider whether a reasonable officer on the scene would have used the same force under similar circumstances).

United States v. Palkowitsch, Case No. 0:19-cr-00013-WMW-DTS, Dkt. No. 104 at 8-9 (D. Minn. Nov. 26, 2019) (jury instructions on the use of unreasonable force in violation of § 242).

***Force that is Initially Reasonable May Become Unreasonable***

<u>McReynolds v. Schmidli</u>, 4 F.4th 648, 653 (8th Cir. 2021) (explaining that while there might be a question of whether plaintiff was initially non-compliant, "At the moment McReynolds was tackled, he was compliant and neither a threat nor a flight risk. We have previously explained that the use of significant force against such a suspect is not objectively reasonable.").

<u>Cole Estate of Richards v. Hutchins</u>, 959 F.3d 1127, 1135-36 (8th Cir. 2020) (citing with approval <u>Lytle v. Bexar</u> and <u>Waterman v. Batton</u>, which hold that a use of force that is initially reasonable can become unreasonable if factors justifying the use of force have ceased, and stating that "a few seconds is enough time to determine an immediate threat has passed, extinguishing a preexisting justification" for force).

<u>Lytle v. Bexar Cty., Tex.</u>, 560 F.3d 404, 413 (5th Cir. 2009) ("An exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased.").

<u>Smith v. Finkley</u>, 10 F.4th 725, 748 (7th Cir. 2021) (" An exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased.").

<u>Amador v. Vasquez</u>, 961 F.3d 721, 730 (5th Cir. 2020) ("[A]n exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of the force has ceased.").

<u>McCoy v. Meyers</u>, 887 F.3d 1034, 1051 (10th Cir. 2018) ("Our cases have consistently concluded that a suspect's initial resistance does not justify the continuation of force once the resistance ceases.").

<u>Glasscox v. Argo</u>, 903 F.3d 1207, 1214 (11th Cir. 2018) ("Even if the arrestee's resistance justified deployment of a taser initially, if he has stopped resisting . . . during this time period, further taser deployments are excessive.") (internal quotation marks omitted).

**GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 24**
**INSTRUCTIONS FOR COUNT THREE: 18 U.S.C. § 242**
**DEPRIVATION OF RIGHTS UNDER COLOR OF LAW**
**SECOND ELEMENT: RIGHT TO BE FREE FROM DELIBERATE**
**INDIFFERENCE TO SERIOUS MEDICAL NEEDS**

This instruction applies to the second element of Count Three. Count Three of the Indictment charges that Defendants Tou Thao, J. Alexander Kueng, and Thomas Lane deprived Mr. Floyd of the right to due process of law, which includes the right of a person in police custody to be free from a police officer's deliberate indifference to his serious medical needs. I instruct you that this right is one secured by the United States Constitution. Specifically, it violates the Constitution for a police officer to deliberately deny or delay critical medical care to a person in police custody.

In order for you to find that a defendant deprived Mr. Floyd of this right, you must find the following:

(1) That Mr. Floyd had an objectively serious medical need, which, when unaddressed, exposed him to a substantial risk of serious harm;

(2) That the defendant actually knew that Mr. Floyd had a serious medical need; and

(3) That the defendant disregarded that medical need by failing to take reasonable measures to address it.

A serious medical need is one that has been diagnosed by a medical professional as requiring treatment or one that is so obvious that even people with no formal medical training would recognize that care is required. This inquiry asks whether a reasonable person would view Mr. Floyd's medical needs as sufficiently serious based on all of the circumstances that existed. This inquiry does not consider a particular defendant's state of mind.

In deciding whether a defendant actually knew that Mr. Floyd had an objectively serious medical need, you may consider all the facts and circumstances, including whether the defendant had an opportunity to hear Mr. Floyd's complaints (and/or complaints that others made on his behalf), if any; whether the defendant had an opportunity to observe Mr. Floyd's condition or symptoms; and whether any condition or symptoms Mr. Floyd may have had were obviously serious; and

39

You may conclude that a defendant knew of an objectively serious medical need from the very fact that the medical need or risk to Mr. Floyd's health was obvious. Mere negligence or inadvertence (the unintentional absence of attention or care) does not constitute deliberate indifference. A defendant may show that the obviousness of a medical need or risk escaped him; however, a defendant's actions are unlawful if you conclude that a defendant refused to verify underlying facts that he strongly suspected to be true, or declined to confirm a medical need or risk that he strongly suspected to exist.

The government does not have to prove that a defendant *intended* to inflict harm on Mr. Floyd in order to prove that a defendant was deliberately indifferent to Mr. Floyd's medical needs. Again, you must consider the evidence separately as to each defendant. If you find that the government has proven these facts beyond a reasonable doubt as to a defendant, then you may find that the second element of the offense charged in Count Three is satisfied as to that defendant.

**Authorities**:

Model Civ. Jury Instr. 8th Cir. 4.23 (2019) (Deliberate Indifference).

Model Civ. Jury Instr. 8th Cir. 4.22 (2019) (Serious Medical Need).

Model Civ. Jury Instr. 8th Cir. 4.43 (2019) (Denial of Medical Care).

*Standard*

DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety . . . . [An] affirmative duty to protect arises . . . .").

Ivey v. Audrain Cty., Missouri, 968 F.3d 845, 848 (8th Cir. 2020) (holding, in case involving pretrial detainees, that officials "violate the Due Process Clause of the Fourteenth Amendment when they show deliberate indifference" to an "objectively serious medical [need]" and explaining that, "[t]o succeed on this kind of claim, a plaintiff must demonstrate that [he] had an objectively serious medical need that the defendants knew of and yet deliberately disregarded.").

Bailey v. Feltmann, 810 F.3d 589, 593 (8th Cir. 2016) (holding that it is "clearly established . . . that a pretrial detainee (or an arrestee) has a right to be free from deliberately indifferent denials of emergency medical care") (internal citations omitted).

Barton v. Taber, 820 F.3d 958, 964-65 (8th Cir. 2016) (applying standard that an officer is liable for deliberate indifference where (1) the arrestee had an objectively serious medical need, and (2) the officer actually knew the arrestee needed medical care and disregarded a known risk to the arrestee's health).

Barton, 820 F.3d at 965 (holding that deliberate-indifference complaint "stated sufficient facts to show that [an arrestee] was experiencing a medical need so obvious that a layperson would recognize that he needed prompt medical attention," where arrestee fell down, could not walk, and became unresponsive).

Barton, 820 F.3d at 958, 966-67 & n.3 (explaining that although the source of an arrestee's right to be free from deliberately-indifferent denials of emergency medical care is the Fourteenth Amendment, the Eighth Circuit applies the Eighth Amendment deliberate indifference standard to analyze it).

Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012) ("[A]ny distinction between a 'pretrial detainee' and an 'arrestee' does not affect the [deliberate-indifference] analysis.").

United States v. Gonzales, 436 F.3d 560, 573 (5th Cir. 2006) ("Deliberate indifference. . . requires both that the government official have subjective knowledge of a substantial risk of serious harm to a pretrial detainee and that the government official respond with deliberate indifference to that risk. . . if this due process right is willfully violated, and if bodily injury results, then the offender is guilty of a felony under section 242") (internal quotations and citations omitted).

***Serious Medical Need, Defined***

Jones v. Minn. Dep't. of Corr., 512 F.3d 478, 481 (8th Cir. 2008) ("An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize" it) (internal quotation marks omitted).

### *Circumstantial and Other Evidence Permissible*

Farmer v. Brennan, 511 U.S. 825, 843, n.8 (1994) (explaining that whether an official "had the requisite knowledge of substantial risk is a question of fact subject to demonstration in the usual ways, including the inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

Farmer, 511 U.S. at 843, n.8 (1994) ("While the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him, he would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist . . . .").

Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (explaining that prison guards' intentional delay in provision of medical treatment would constitute deliberate indifference "regardless of how evidenced").

Barton v. Taber, 820 F.3d 958, 965 (8th Cir. 2016) ("We determine whether an objectively serious medical need exists based on the attendant circumstances, irrespective of what the officer believes the cause to be.").

Krout v. Goemmer, 583 F.3d 557, 567 (8th Cir. 2009) ("[T]he obvious inadequacy of a response to a risk may support an inference that the officer recognized the inappropriateness of his conduct.").

Hinojosa v. Livingston, 807 F.3d 657, 665 (5th Cir. 2015) ("Furthermore, whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.") (internal quotations, citations, and alteration omitted).

Estate of Booker v. Gomez, 745 F.3d 405, 432 (10th Cir. 2014) ("A brief delay in care is particularly problematic when, as here, the Defendants were responsible for placing [a person] in his vulnerable state and engaged in activity that could produce foreseeable, rapid, and deadly consequences.").

<u>Parrish ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 303 (4th Cir. 2004) (explaining that deliberate indifference may be proven where "the official's response to a perceived risk was so patently inadequate as to justify an inference that the official actually recognized that his response to the risk was inappropriate under the circumstances").

### GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 25
### INSTRUCTIONS FOR COUNTS TWO AND THREE: 18 U.S.C. § 242
### DEPRIVATION OF RIGHTS UNDER COLOR OF LAW
### THIRD ELEMENT: WILLFULNESS

The third element of Counts Two and Three requires the government to prove beyond a reasonable doubt that the defendant acted willfully. A defendant acts willfully if, when he acts or fails to act, he does so with a bad purpose or improper motive to disobey or disregard the law, meaning that he specifically intends to do what the law forbids, or to fail to do what the law requires.

As to Count Two, the law requires a police officer to intervene to protect a person from unreasonable force. Accordingly, to conclude that a defendant acted "willfully" as to Count Two, you must find that the defendant intentionally failed to intervene to protect Mr. Floyd from unreasonable force, knowing that the law required him to intervene. As to Count Three, the law requires a police officer to aid a person whom the officers knows is in custody and has a serious medical need. Accordingly, to conclude that a defendant acted "willfully" as to Count Three, you must find that the defendant intentionally failed to aid Mr. Floyd, knowing that Mr. Floyd had a serious medical need and that, as an officer, he was required to try to help.

To find that a defendant was acting willfully, it is not necessary for you to find that the defendant knew the specific constitutional provision or federal law that his conduct violated. You may find that the defendant acted willfully even if you find that he had no real familiarity with the Constitution or with the particular constitutional right involved. But the defendant must have had a specific intent to do that which the Constitution or federal law prohibits, or to fail to do that which the Constitution or federal law requires.

Willfulness, like other states of mind, is often proved through circumstantial evidence. This is because there is no way of reading the human mind to reveal precisely what someone was thinking at any given moment. Therefore, a defendant's state of mind can be proved indirectly from the surrounding circumstances. In determining whether a defendant acted willfully, you may consider any facts or circumstances in evidence that shed light on what was going through the defendant's mind at the time of the charged offense. This may include, among other things, what a defendant did or failed to do; the manner and duration of the defendant's acts or omissions; the defendant's training; the defendant's experience; any statements the defendant made during or after the incident; and any other facts or circumstances in evidence that show what was in the defendant's mind.

44

You may infer that a defendant intended to do what that the law forbids, or to fail to do what the law requires, if you find that the defendant engaged in blatantly wrongful conduct that did, in fact, cause a deprivation of constitutional right. You may also infer that a person intends the natural and probable consequences of any acts he knowingly takes or knowingly fails to take.

**Authorities:**

Model Crim. Jury Instr. 8th Cir. § 6.18.242 (2020) (Deprivation of Civil Rights) (18 U.S.C. § 242).

Model Crim. Jury Instr. 8th Cir. § 7.02 (2020) (Consideration of Mental State) ("Willfully").

Screws v. United States, 325 U.S. 91, 101 (1945) ("[W]illfully" means "a purpose to deprive a person of a specific constitutional right").

Screws, 325 U.S. at 106 ("The fact that the defendants may not have been thinking in constitutional terms is not material where their aim was not to enforce local law but to deprive a citizen of a right and that right was protected by the Constitution. When they so act they at least act in reckless disregard of constitutional prohibitions or guarantees.").

United States v. Boone, 828 F.3d 705, 711 (8th Cir. 2016) ("Evidence of Boone's use of unreasonable force . . . was relevant to prove that Boone acted willfully when he deprived Hill of his right to be free from unreasonable force. To prove willfulness, the government was required to show that Boone acted with specific intent to deprive Hill of his constitutional rights.").

United States v. Harrison, 671 F.2d 1159, 1161-62 (8th Cir. 1982) (approving jury instruction that "defendants could be convicted [under § 242] only if they had an intent to willfully subject the victim to the deprivation of a constitutional right," and noting that "[t]he court was correct in [instructing the jury] that excessive force can evidence intent").

United States v. Proano, 912 F.3d 431, 442 (7th Cir. 2019) (affirming district court's jury instructions as to "willfulness" in § 242 unreasonable force government, which stated that, to act willfully, a defendant must "kn[o]w [that the] force [i]s not reasonable and use[] it anyway").

United States. v. Brugman, 364 F.3d 613, 616 (5th Cir. 2004) (holding that "[w]illfulness, as defined within the context of section 242, requires the jury to find that a defendant acted in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite") (internal quotations and citations omitted).

United States v. Mohr, 318 F.3d 613, 619 (4th Cir. 2003) ("willfulness" in § 242 government means acting with "the particular purpose of violating a protected right" or "recklessly disregarding the risk" of violating that right) (internal citations omitted).

United States v. Johnstone,107 F.3d 200, 209 (3d Cir. 1997) (approving instruction: "I instruct you that an act is done willfully if it is done voluntarily and intentionally, and with a specific intent to do something the law forbids, that is, as relevant here, with an intent to violate a protected right.").

United States v. Palkowitsch, Case No. 0:19-cr-00013-WMW-DTS, Dkt. No. 104 at 9 (D. Minn. Nov. 26, 2019) (instructing jury in § 242 unreasonable force government that the defendant acted willfully "if he used force knowing that the force he used was more than what a reasonable officer would have used under the circumstances").

### *Permissive Inference and Circumstantial Evidence*

Model Crim. Jury Instr. 8th Cir. § 1.04 (2020) (Direct and Circumstantial Evidence).

Francis v. Franklin, 471 U.S. 307, 314-15 (1985) ("A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion. . . . A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.").

Sandstrom v. Montana, 442 U.S. 510, 514-15 (1979) (prohibiting mandatory presumptions in jury instructions but allowing permissive inferences).

Williams v. United States, 341 U.S. 97, 102 n.* (1951) (reciting, with approval, trial court's instructions that in determining willfulness the jury was "'entitled to consider all the attendant circumstances: the malice, if any, of the defendants toward these men; the weapon used in the assault, if any; and the character and duration of the investigation, if any, of the assault, if any, and the time and manner in which it was carried out. All these facts and circumstances may be taken into consideration from the evidence that has been submitted for the purpose of determining whether the acts of the defendants were willful

and for the deliberate and willful purpose of depriving these men of their Constitutional rights. . .'").

<u>Screws v. United States</u>, 325 U.S. 91, 107 (1945) ("To convict it was necessary for them to find that petitioners had the purpose to deprive the prisoner of a constitutional right . . . .  And in determining whether that requisite bad purpose was present the jury would be entitled to consider all the attendant circumstance—the malice of petitioners, the weapons used in the assault, its character and duration, the provocation, if any, and the like.").

<u>United States v. Morris</u>, 723 F.3d 934, 941 (8th Cir. 2013) (holding in criminal tax case that "willfulness can be demonstrated circumstantially.").

<u>United States v. Martin</u>, 772 F.2d 1442, 1445-46 (8th Cir. 1985) (approving jury instruction—"You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done.  In the final analysis it is up to you as individual jurors, and collectively as a jury, to decide what the intent of defendants was under the evidence in this case."—and holding, in particular, that the instruction "did not shift the burden of proof, nor did it impose a conclusive presumption").

<u>United States v. Hash</u>, 688 F.2d 49, 51 (8th Cir. 1982) (approving instruction that "[y]ou may consider it reasonable to draw the inference in that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted").

<u>United States v. Cowden</u>, 882 F.3d 464, 474 (4th Cir. 2018) ("Willfulness [in a § 242 case] may be shown by circumstantial evidence, provided that the defendant's purpose reasonably may be inferred from all the connected circumstances.").

## GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 26
## INSTRUCTIONS FOR COUNTS TWO AND THREE: 18 U.S.C. § 242
## DEPRIVATION OF RIGHTS UNDER COLOR OF LAW
## FOURTH ELEMENT—BODILY INJURY AND/OR DEATH RESULTING

The fourth and final element of Counts Two and Three requires the government to prove beyond a reasonable doubt that the offense resulted in bodily injury to and/or the death of Mr. Floyd.

Counts Two and Three charge both that the offense resulted in bodily injury to Mr. Floyd and that the offense resulted in Mr. Floyd's death. However, the government does not have to prove both of those things. Proof beyond a reasonable doubt of one or the other factor—bodily injury or death resulting—is enough to prove the fourth element of Counts Two and Three. In order to return a guilty verdict on the count at issue, all twelve of you must agree that the same factor or factors in the fourth element has or have been proven. You must then specify your verdict on these factors on the verdict form as directed.

For Count Two, the government must prove that a police officer's unreasonable force—not a defendant's failure to intervene to stop that unreasonable force—resulted in Mr. Floyd's bodily injury and/or death. For Count Three, the government must prove that a defendant's deliberate indifference to Mr. Floyd's serious medical needs resulted in Mr. Floyd's bodily injury and/or death. Again, you must consider the evidence separately as to each defendant. You may find that bodily injury and/or death resulted from the acts and omissions charged in Count Two, Count Three, both, or neither.

"Bodily injury" means (A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of a function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary. The government need not prove that a defendant intended for Mr. Floyd to suffer injury.

To prove that Mr. Floyd's death resulted from the offense as charged in a count, the government must prove beyond a reasonable doubt that Mr. Floyd died as a result of the conduct as charged in that count. Death "results from" a defendant's conduct where Mr. Floyd's death was a foreseeable result of the defendant's conduct, and where, but for the defendant's conduct, Mr. Floyd would not have died. The defendant's conduct need not be the *only* cause of Mr. Floyd's death. Proof that—no matter how slight its cumulative effect—the defendant's conduct, combined with other factors, caused Mr. Floyd's death is sufficient, so long as the other factors alone would not have caused Mr. Floyd's death. The government need not prove that a defendant intended for Mr. Floyd to die.

**Authorities**:

Model Crim. Jury Instr. 8th Cir. § 6.18.242 (2020) (Deprivation of Civil Rights) (18 U.S.C. § 242).

***Bodily Injury***

18 U.S.C. § 831(f)(5) (defining "bodily injury" to mean "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of a function of a bodily member, organ or mental faculty; or (E) any other injury to the body, no matter how temporary").

18 U.S.C. § 1365(h)(4) (same).

18 U.S.C. § 1515(a)(5) (same).

18 U.S.C. § 1864 (d)(2) (same).

United States v. Perry, 401 F. App'x 56, 65 (6th Cir. 2010) ("The term bodily injury means: 1) a cut, abrasion, bruise, burn, or disfigurement; 2) physical pain; 3) illness; 4) the impairment of the function of a bodily member, organ, or mental faculty; or 5) any other injury to the body, no matter how temporary.").

United States v. DiSantis, 565 F.3d 354, 362 (7th Cir. 2009) (upholding instruction; noting that § 242 does not define bodily injury but noting that jury instructions "track[ed] the language of several criminal statutes that define bodily injury as "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of a function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary" and that the "remaining portion of the instruction is similar to the definition of bodily injury provided by the Sentencing Guidelines").

United States v. Perkins, 470 F.3d 150, 161 (4th Cir. 2006) ("Although the statute does not define 'bodily injury,' the term is defined identically in four other provisions of Title 18. . . . All of these provisions define 'bodily injury' as "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of [a/the] function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary.") (internal citation omitted).

United States v. Gonzalez, 436 F.3d 560, 575 (5th Cir. 2006) (adopting, in § 242 case, definition of bodily injury set forth in 18 U.S.C. §§ 831 (f)(5), 1365(h)(4), 1515(a)(5), & 1864 (d)(2)).

United States v. Bailey, 405 F.3d 102, 111 (1st Cir. 2005) (same).

United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir.), aff'd in part, 518 U.S. 81 (1996) ("[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.  In these cases, the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows.").

United States v. Palkowitsch, Case No. 0:19-cr-00013-WMW-DTS, Dkt. No. 104 at 9 (D. Minn. Nov. 26, 2019) (jury instructions on the bodily injury element of 18 U.S.C. § 242 violation).

### *Death Resulting*

Model Crim. Jury Instr. 8th Cir. § 6.18.242 (2020) (Deprivation of Civil Rights) (18 U.S.C. § 242).

Bostock v. Clayton Cty., Ga., 140 S. Ct. 1731, 1739 (2020) (explaining that "[o]ften, events have multiple but-for causes," and thus "a defendant cannot avoid liability just by citing some *other* factor").

Burrage v. United States, 571 U.S. 204, 211, 216 (2014) (analyzing 21 U.S.C. § 841(b)(1)(C), which provides for enhanced penalties "if death or serious bodily injury results from" the use of a controlled substance that has been unlawfully distributed by a defendant, and holding that by using the "results from" operator in this statute, Congress deliberately chose to "use language that imports but-for causality").

Burrage, 571 U.S. at 211 ("[W]here A shoots B, who is hit and dies, we can say that A [actually] caused B's death, since but for A's conduct B would not have died.  The same conclusion follows if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so—if, so to speak, it was the straw that broke the camel's back.  Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived.").

United States v. Meyers, 965 F.3d 933, 937-38 (8th Cir. 2020) ("Causation can be proven 'if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so.'") (quoting Burrage, 571 U.S. at 211).

United States v. Seals, 915 F.3d 1203, 1205-06 (8th Cir. 2019) (rejecting defendant's argument that government had to exclude possibility that acetyl-fentanyl was independently sufficient to cause death in order for jury to conclude that heroin was a but-for cause of death, because "[t]his reading of Burrage is strained and conflicts with our longstanding legal principle that, although the evidence must be consistent with guilt, it need not be inconsistent with every other reasonable hypothesis") (internal alteration and quotation marks omitted).

Roundtree v. United States, 885 F.3d 1095, 1098 (8th Cir. 2018) (concluding that where an expert testified that heroin and alcohol had worked together "synergistically" to cause death and where alcohol was not enough by itself to cause death, no reasonable jury could find that the heroin was merely a contributory factor, as opposed to a but-for cause).

United States v. Feldman, 936 F.3d 1288, 1312-15 (11th Cir. 2019) (applying Burrage to various multi-drug use hypotheticals and emphasizing that "whether a factor is a but-for cause turns only on whether the result would have occurred without it; that is, whether that individual factor made a difference to the outcome").

United States v. Volkman, 797 F.3d 377, 392-93 n.2 (6th Cir. 2015) (holding that similar "death resulting" instruction given in unlawful distribution of a controlled substance leading to death prosecution was a correct statement of the law, in light of Burrage v. United States, 571 U.S. 204 (2014)).

United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir.), aff'd in part, 518 U.S. 81 (1996) ("[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.  In these cases, the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows.").

United States v. Hayes, 589 F.2d 811, 821 (5th Cir. 1979) ("When Congress provided that any deprivation of defined rights under color of law resulting in death may be punished by life imprisonment, we must consider it to have been fully cognizant of the principles of legal causation . . . . No matter how you slice it, 'if death results' does not mean 'if death was intended.'  To hold otherwise would make a mockery of the statute.").

**GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 27**
**LIMITING INSTRUCTION FOR TRAINING EVIDENCE**

You have heard evidence of the training that the defendants received at the Minneapolis Police Department. This evidence has been admitted for a limited purpose. You may consider it only to determine whether each defendant acted willfully, as I have defined that term for you. In other words, if you determine that the defendant acted inconsistently with his training, then you may, but are not required to, conclude that the defendant knew what he was doing was wrong and chose to do it anyway, and therefore that he acted "willfully."

It is possible for an officer to violate the Constitution without violating his training, and vice versa. For that reason, you should not consider training evidence in determining whether the defendants violated the Constitution.

**Authorities**:

United States v. Palkowitsch, Case No. 0:19-cr-00013-WMW-DTS, Dkt. No. 104 (D. Minn. Nov. 26, 2019) (giving similar limiting instruction, in § 242 prosecution, instructing the jury that it may consider training evidence "only on the question of whether the Defendant acted willfully, as I defined that term for you earlier. It may not be considered for any other purpose").

United States v. Brown, 934 F.3d 1278, 1296 (11th Cir. 2019) ("We reject the proposition that we can ever substitute a police department's standards on the use of force for the constitutional standard—even when the policies attempt to mirror the constitutional reasonableness standard. Although the jury may consider a department's policies as relevant evidence, district courts should follow the example here of using limiting instructions to prevent the jury from conflating a violation of departmental policy with a violation of the Constitution.").

United States v. Proano, 912 F.3d 431, 439 (7th Cir. 2019) ("We have before recognized that evidence of departmental policies can be relevant to show intent in § 242 cases. Other circuit courts have as well. Those decisions, expressly or impliedly, acknowledge that an officer's training can help inform his state of mind in certain circumstances. If, for example, an officer has been trained that officers should do certain things when confronted with tense situations, and he does those things, the fact that he acted in accordance with his training could make it less likely that he acted willfully. And vice versa: If, as here, an officer has been trained that officers should not do several things when confronted with

tense situations, yet he does those things anyway, the fact that he broke from his training could make it more likely that he acted willfully.") (citations omitted).

United States v. Brown, 654 F. App'x 896, 904 (10th Cir. 2016) ("The fact that Defendants were present during . . . training sessions . . . shows that Defendants were aware that official protocol limited the use of force to instances when an inmate was acting in a threatening manner. That Defendants disregarded their training on the appropriate use of force is admissible to show that Defendants acted willfully [under §242].").

United States v. Rodella, 804 F.3d 1317, 1338 (10th Cir. 2015) (affirming admission of training evidence, in § 242 government, "to show that [the defendant-officer] knew that his pursuit of [the victim] was unlawful").

United States v. Dise, 763 F.2d 586, 588 (3d Cir. 1985) (ruling that "the jury could have found that [the defendant-officer] knew his conduct was illegal; this conclusion might have been derived from the evidence that . . . he received training as to proper responses to inmate behavior").

United States v. Rodella, No. CR 14-2783 JB, 2014 WL 6634391, at *5 (D.N.M. Nov. 20, 2014) (giving similar limiting instruction, in § 242 prosecution, instructing the jury that it may use training evidence as evidence of the defendant-officer's willfulness).

## GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 28
### REASONABLE DOUBT

Reasonable doubt is doubt based upon reason and common sense, and not doubt based on speculation.   A reasonable doubt may arise from careful and impartial consideration of all the evidence, or from a lack of evidence.   Proof beyond a reasonable doubt is proof of such a convincing character that a reasonable person, after careful consideration, would not hesitate to rely and act upon that proof in life's most important decisions.   Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.   Proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

**Authorities**:

Model Crim. Jury Instr. 8th Cir. § 3.11 (2020).

## GOVERNMENT'S PROPOSED JURY INSTRUCTION No. 29
## ELECTION OF FOREPERSON; DUTY TO DELIBERATE; PUNISHMENT NOT A FACTOR; COMMUNICATIONS WITH COURT; CAUTIONARY; VERDICT FORM

In conducting your deliberations and returning your verdict, there are certain rules you must follow.  I will list those rules for you now.

First, when you go to the jury room, you must select one of your members as your foreperson.  That person will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury room.  You should try to reach agreement if you can do so without violence to individual judgment, because a verdict—whether guilty or not guilty—must be unanimous.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors.  Do not be afraid to change your opinions if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict.

Third, if a defendant is found guilty, the sentence to be imposed is my responsibility.  You may not consider punishment in any way in deciding whether the government has proved its case beyond a reasonable doubt.

Fourth, if you need to communicate with me during your deliberations, you may send a note to me through the court security officer, signed by one or more jurors.  I will respond as soon as possible either in writing or orally in open court.  Remember that you should not tell anyone—including me—how your votes stand numerically.

Fifth, your verdict must be based solely on the evidence and on the law which I have given to you in my instructions.  The verdict whether guilty or not guilty must be unanimous.  Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decision that you reach in this case. I will read the form to you now. [The Court will read the verdict form.]

You will take this form to the jury room, and when each of you has agreed on the verdict, your foreperson will fill in the form, sign and date it, and advise the court security officer that you are ready to return to the courtroom.

**<u>Authorities</u>**:

Model Crim. Jury Instr. 8th Cir. § 3.12 (2020).