```
 1              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
 2
      ------------------------------------------------------------
 3                                )
       United States of America,  )  File No. 21-cr-108
 4                                )               (PAM/TNL)
              Plaintiff,          )
 5                                )
       v.                         )
 6                                )
       Tou Thao(2),               )  Courtroom 7D
 7     J. Alexander Kueng(3), and )  St. Paul, Minnesota
       Thomas Kiernan Lane(4),    )  Tuesday, January 11, 2022
 8                                )  1:03 p.m.
              Defendants.         )
 9                                )
      ------------------------------------------------------------
10

11

12            BEFORE THE HONORABLE PAUL A. MAGNUSON
          UNITED STATES DISTRICT COURT SENIOR JUDGE
13

              (FINAL PRETRIAL CONFERENCE)
14

15

16

17

18

19

20

21

22

23

24
          Proceedings recorded by mechanical stenography;
25     transcript produced by computer.
```

RENEE A. ROGGE, RMR-CRR
(612)664-5107

```
 1    APPEARANCES:

 2      For Plaintiff:          U.S. ATTORNEY'S OFFICE
                                BY:  ALLEN A. SLAUGHTER, JR.
 3                                   LEEANN K. BELL
                                     MANDA M. SERTICH
 4                              300 South 4th Street, #600
                                Minneapolis, MN 55415
 5
                                DEPARTMENT OF JUSTICE
 6                              CIVIL RIGHTS DIVISION
                                BY:  SAMANTHA TREPEL
 7                              150 M Street NE
                                Washington, D.C. 20530
 8
        For Defendant           ROBERT M. PAULE, PA
 9      Tou Thao:               BY:  ROBERT M. PAULE
                                920 2nd Avenue South, #975
10                              Minneapolis, MN 55402

11                              PAULA LAW PLLC
                                BY:  NATALIE PAULE
12                              5100 West 36th Street
                                P.O. Box 16589
13                              Minneapolis, MN 55416

14      For Defendant           LAW OFFICE OF THOMAS C. PLUNKETT
        J. Alexander Kueng:     BY:  THOMAS C. PLUNKETT
15                              101 East 5th Street, #1500
                                St. Paul, MN 55101
16
        For Defendant           EARL GRAY DEFENSE
17      Thomas Kiernan Lane:    BY:  EARL P. GRAY
                                332 Minnesota Street, #W1610
18                              St Paul, MN 55101

19      Court Reporter:         RENEE A. ROGGE, RMR-CRR
                                United States District Courthouse
20                              300 South 4th Street, Box 1005
                                Minneapolis, MN 55415
21

22

23

24

25
```

3

**P R O C E E D I N G S**

**IN OPEN COURT**

1

2

3      THE COURT:  Good afternoon, everyone.

4      We have the matter of United States versus Thao,

5  Kueng and Lane for a pretrial status conference this

6  afternoon.

7      Counsel, because many of us have not met one

8  another before, I think we maybe should start out by having

9  some introductions.

10     And, Ms. Bell, I see you in the first seat over

11  there, so let's find out who is here from the U.S.A.

12     MS. BELL:  Very good, Your Honor.  LeeAnn Bell

13  appearing on behalf of the United States.  Seated at counsel

14  table with me are Samantha Trepel, Manda Sertich and Allen

15  Slaughter, who are all attorneys for the government.

16     THE COURT:  Okay.  Back off.  You are going too

17  fast for me.

18     MS. BELL:  Okay.  Directly to my right, the

19  court's left, would be Samantha Trepel, followed by Manda

20  Sertich, then Allen Slaughter, all attorneys for the

21  government.  And then also at counsel table, Your Honor, is

22  Blake Hofstetter with the FBI, who is one of our case

23  agents.

24     THE COURT:  Okay.  Thank you.  Now, as I

25  understand, Ms. Bell, there are some other individuals with

1    you.  Are they in the U.S. Attorney's Office or are they --

2    what's the relationship?

3              MS. BELL:  Your Honor, there are folks here both

4    from the U.S. Attorney's Office and also folks

5    representing and some of the victim families in the case.

6              THE COURT:  Okay.  Okay.  Thank you.  None of

7    which are appearing?

8              MS. BELL:  No, Your Honor.

9              THE COURT:  Okay.  Very well.  Thank you.

10             Okay.  Let's turn over to the defense side.

11             MR. GRAY:  Good afternoon, Your Honor.  Earl Gray.

12   I think we met before.  This is Thomas Lane next to me.

13             THE COURT:  Okay.  Very well.  Thank you.

14             MR. PLUNKETT:  Good afternoon, Your Honor.  Thomas

15   Plunkett on behalf of Mr. Kueng, who is seated to my left.

16             THE COURT:  Mr. Kueng, do you pronounce it just

17   like a king?

18             DEFENDANT KUENG:  Yes, Your Honor.

19             THE COURT:  Okay.  Very well.  Thank you very

20   much.

21             MR. ROBERT PAULE:  Good afternoon, Your Honor.

22   I'm Robert Paule.  I'm representing Mr. Thao, which is the

23   proper pronunciation of his last name.  He is to my left.

24   And then also here is Natalie Paule, who is also assisting

25   me in representing Mr. Thao.

1              THE COURT:  Okay.  Very well.

2          Thank you, everybody.  As I indicated, I think

3      this is the first time many of us have seen one another, and

4      it is good just to get to at least put a face with things.

5          Let me talk just a minute about masking world.

6      We're going to get into more of this probably at the end of

7      this conference today because of the severe COVID situation

8      that exists, but in the interim let me say that you will see

9      that I wear a mask into the room, but immediately removed

10     it.  Now, this is applicable to me and that is simply

11     because I do have a lung condition.  Breathing through a

12     mask is something I just can't do.  And so you will find me

13     in the courtroom, quote, unquote, socially distanced, the

14     word of the day, but you will find me in the courtroom not

15     wearing a mask.  It's for that reason.

16         In addition to that, I'm going to ask that not

17     only of myself, but of you and that is that anytime that you

18     speak in the courtroom please, number one, use the

19     microphone, but, number two, remove your mask.  There is

20     just a hard reality that people cannot understand one

21     another when you speak through a mask.  And of all places

22     this is important that your words be understood.  So please

23     remove your mask.

24         Now -- well, I'm going to stop at that point.  I

25     don't think we need to go any farther, and I'll talk some

1      more about the COVID situation later.

2              Counsel, there are a whole bunch of motions in

3      limine out here.  I'm going to give you some one-word

4      rulings with respect to these, but advise you that I do

5      reserve the right because this is an -- this is an exercise

6      in process.  And I hate to say that I'm giving advisory

7      opinions, because you don't want to do that, but I think

8      it's -- it's good for you to know where I'm leaning with

9      respect to all of these, and yet at the same time I am

10     reserving the right because sometimes they take a little

11     more research, a little more work than -- we got them, we

12     got the responses sometime yesterday afternoon, and so the

13     time frame here has been pretty short.

14             Is something going on?

15             COURTROOM DEPUTY:  I was wondering if your mic is

16     on.

17             THE COURT:  Yeah, it is.  I don't know if you are

18     hearing me or not.  Crank me up.

19             COURTROOM DEPUTY:  Mm-hmm.

20             THE COURT:  Dial me up or whatever you are

21     supposed to say.  I don't know.

22             Okay.  On the motions in limine, first motion.

23     The government has made a motion in limine to preclude the

24     defendants from inviting jury nullification.  Obviously,

25     that's granted.  We can't invite jury nullification, we know

1    that, but that does not mean -- so I grant it in part,

2    because clearly at the same token the defense are entitled

3    to introduce their clients and represent their clients in a

4    zealous advocacy.  And so jury nullification is out, but

5    introductions are permitted.

6         Then there's motions by more than one defendant.

7    Mr. Kueng and Mr. Lane have asked for additional peremptory

8    challenges.  That's denied.  We don't need them.

9         And I will do a little explanation here.  We have

10    several hundred jurors that have responded to a very complex

11    questionnaire that I think the lawyers stipulated to and you

12    agreed to be sent out.  These have been returned.  They have

13    been forwarded to you.  And there have been a very large

14    number of cause challenges that have been granted in this

15    process.  So the numbers are greatly reduced that are out

16    there, and I think that's a matter of pretty solid

17    knowledge.  At this point I think we get down to the rules,

18    and the rules provide for 10 strikes for the defense, 6

19    strikes for the government, and then 3 apiece on the 6

20    alternates that will be picked.

21         We then turn to Mr. Kueng and Mr. Lane asked to

22    strike surplusage from the indictment.  That is denied.  I

23    think the indictment as written is basically truthful.

24    There may be subsequent and additional information that

25    becomes appropriate either from testimony or from court

1    instructions, and the court will deal with that appropriate

2    in due time.

3            Now, Mr. Kueng has made motions to, one, strike

4    the speculative testimony.  Obviously, it's not a good idea

5    to speculate in a court of law, and the court will tend to

6    grant that.  But this says -- this is very specifically.

7    This is what other officers would have done.  I don't -- I

8    don't see where that's particularly relevant.

9            There's also a motion to strike paramedic

10   testimony.  That's denied.  Paramedics can testify.

11           Then we get into the non-expert use-of-force

12   testimony.  There I basically will deny in the sense that a

13   non-expert pursuant to the rules can in certain

14   circumstances with proper foundation give opinion testimony,

15   but I caution that the foundation has to be very, very

16   thorough with respect to that.

17           And then also a motion to strike cumulative

18   medical testimony.  I'm going to grant that motion.  We have

19   way too many witnesses in this case, but I'm not sure just

20   exactly what I'm granting.  I have not at this point had

21   opportunity to see any synopsis of any witness, much less

22   the expert witnesses.  And it just strikes me that it

23   doesn't take that many medical experts, but just precisely

24   what I'm saying by that is it's going to have to be deferred

25   to a later time, but we don't want cumulative testimony.

1          We then get to the subject of video evidence.

2     There I totally, totally reserve ruling.  I have not seen

3     one word of -- or one picture, I guess I should say that,

4     of the videos.  I've got to see those.  I'm asking that they

5     be supplied to the court in a format that the court can

6     readily review, and we will come to grips with that, but I

7     have also seen the exhibit list, and I strongly question the

8     necessity of duplicative evidence over and over.

9          Then we get to Mr. Thao's motions.  Improper

10    use-of-force testimony.  There, again, the court will deny

11    the motion without prejudice, but be very, very conscious

12    that use-of-force testimony is testimony that has to be

13    covered very, very carefully with foundation.

14         And then a motion to limit the expert testimony.

15    There I grant the motion, as I indicated earlier.  The

16    experts got to stay in their own field.  They can't come in

17    and talk about anything they feel like.

18         Next motion is on impeachment evidence.  That's

19    denied as moot, because the government has indicated they

20    will not call the challenge witness.

21         The court will grant the motion on witnesses'

22    emotional response.  But be very careful there, counsel,

23    because some of the issues that are involved in the case or

24    witnesses that are involved in the case will be emotional

25    people.  I don't want you asking questions to elicit an

1    emotional response, but I do understand that there may be

2    some emotion indicated by people, but -- well, in a case

3    before a jury emotional responses can be harmful and

4    prejudicial, so we have to be very careful of that.

5          And then you're also requesting to extend time for

6    additional motions in limine.  Well, I'm not surprised.

7    I'll deny without prejudice, but we'll see if we get more

8    motions than that in that area.

9          Again, there's a request for attorney-conducted

10   voir dire.  That's denied.  The court will do the voir dire.

11         Mr. Lane has brought another motion to exclude

12   government witness.  I'm a little confused right here, and

13   I'm not going to take the time to look up.  There is a

14   9-year-old witness or 10-year-old witness.  That witness is

15   excluded, period.  There are other young witnesses,

16   teenagers, et cetera, and there's information about them

17   that I simply don't have any information at all, and I need

18   to know about them, and I need to know whether or not that

19   might be cumulative, but somewhere I read, I think, that,

20   for instance, one of those taking video is 16 years old.

21   Well, obviously, a person 16 years old can operate an

22   iPhone, and so I would anticipate in all probability that

23   that person would testify, but that's all anticipation.  I

24   just don't know that much about what we're talking about.

25         And then Mr. Kueng has filed a motion that I'm a

1    little confused about, but talking about Mr. Floyd's

2    complaint of being claustrophobic.  Then he uses two

3    examples, one where he says he's claustrophobic, one where

4    he says he isn't.  I think we will just keep that out.

5    There's no reason to get into it.

6              And, finally, I'm going to withhold ruling on the

7    issue of Mr. Lane dealing with another individual at a

8    different time and place.  That is evidence that probably

9    normally is not admissible, but I want to hear the

10   foundation that he would be trying to lay with respect to

11   that to determine whether that would happen or not.

12             And then, finally, there's a motion out here by

13   the City of Minneapolis, and I understand the Minneapolis

14   City Attorney is present in the courtroom, to quash a

15   subpoena.  I'm going to grant the motion without prejudice.

16   Why in the world we need to get into all this kind of detail

17   is completely beyond me, but I guess there's a lot in this

18   world I don't know.

19             There has been, I think, some discussion about the

20   potentiality of a protective order, because these are

21   witnesses that go both ways, government witnesses and

22   defense witnesses.  There's some discussion about a

23   protective order.  If the protective order comes into being,

24   we'll deal with it, and then we'll deal with whether or not

25   they're appropriate witnesses for the case.

1          I think that's about all I can say about these

2     various and sundry motions in limine.

3          I do have -- counsel, are there any stipulations

4     in the works on your preparing a stipulation for color of

5     law element for the defense or has that not been discussed?

6     I just don't know.  It's an area that I would encourage a

7     stipulation, if it can be arranged, but I don't know if it's

8     out there or not.

9          MS. BELL:  It is not out there yet, Your Honor.

10    We will talk about it after the hearing.

11         THE COURT:  Okay.  Okay.  And then, frankly, if

12    there are any other stipulations -- by the way, I'm doing

13    something here I shouldn't -- I forgot to do.  I just

14    charged ahead.

15         Ms. Magee, if you'd be kind enough to pass this

16    around here.  That's the agenda for today.  And here's

17    another one.

18         This is what we propose to have as the jurors'

19    speeches during voir dire, where we ask them to stand up and

20    reintroduce themselves.  I don't think there's anything on

21    there that hasn't been covered in the questionnaire, but you

22    will need the opportunity to hear them articulate language.

23         Okay.  I think we have communicated to you to see

24    if there is a -- prepared a redacted indictment in the

25    matter.  Has that happened or not?

1          MS. BELL:  I have not done that yet, Your Honor,

2     but I will submit one to the court consistent with --

3          THE COURT:  Okay.  I would encourage that.

4     Obviously, Mr. Chauvin is no longer involved, and he's been

5     charged in this indictment in an entirely separate crime.

6     That needs to be out of -- that needs to be out of sight and

7     out of mind.  And, otherwise, it's usually better to have a

8     redacted indictment with a little more colloquial language.

9          On the subject of voir dire or voir dire -- I've

10    been flipping back and forth on that word.  Excuse me.  Just

11    before I came into court today, I was reading the obituary

12    of my good friend Judge Hodges from the Middle District of

13    Florida.  And, of course, if Judge Hodges were here, it

14    would be voir dire, but that's because he's from Florida.

15    And pretty much I say voir dire.  Nevertheless, we will put

16    a series of voir dire questions together.

17         Mr. Thao, you are asking for question 64, and my

18    memory doesn't even cover 64 at this time.  I will look it

19    up and see what it is.  But as you get the list of potential

20    jurors, please let me know which of these jurors that you

21    wish to have me ask specifically about that.  And otherwise,

22    generally speaking, that will be asked -- re-asked of jurors

23    across the board.  And we will on the morning of jury

24    selection, we'll give you a copy of the voir dire.

25         Now, let's get down to picking a jury.  We will

1    first be concerned with 18 potential jurors in this entire

2    case, 12 of which will be the impaneled 12-member jury, 6 of

3    which will be alternate jurors.

4            In the room when we select jurors on a week from

5    Thursday there will be 36 jurors brought in the room.  They

6    will fill the 18 chairs that you see up here, and then they

7    will fill 18 chairs in the audience section.  There will be

8    no one in the audience other than a couple of media

9    representatives and -- because we just don't have room.

10   Streaming will take place downstairs in the Devitt room for

11   the public and the jury assembly room for the media with

12   respect to the jury selection.

13           We will obviously inquire of all the jurors in the

14   room.  When we have completed that, I will turn to you to

15   come to me with any requested additional voir dire that has

16   not been covered, and I will in turn ask those questions of

17   the 36 jurors that are in the room.

18           At the point that we've covered all of them and

19   that whoever is left in the room has been passed for cause,

20   those jurors will then be excused and we will bring back in

21   another panel of 36 jurors on next Thursday morning and

22   inquire of them in the same manner as the original ones.

23           At the conclusion of that we will see how many

24   people have been passed for cause.  We will need 40 passed

25   for cause in order to select the jury, and we'll just see

1    how many we have from the first two groups.  If we don't

2    have 40 jurors passed for cause, we will then in the

3    afternoon start over again with another 36 in the early

4    afternoon and in the late afternoon another 36.  And

5    hopefully we won't have a problem of reaching 40 by that

6    time; but should we fail that, we will come back again on

7    Friday morning and continue to work on jury selection.

8              Now, for seating at the trial, there are about 20

9    seats in the gallery section.  I'm going to ask each of you

10   to please get to us as soon as you can how many seats you

11   actually need in the gallery section.  I'm thinking that we

12   will have five media representatives in the courtroom during

13   the trial, and then that will be four actual media and one

14   sketch artist.  And then in addition to that, obviously,

15   attorneys that are appearing, but don't have room at the

16   counsel table will be in the courtroom.  And then the

17   balance of the seats will be allocated through some type of

18   a selection system based upon the requests that you make.

19             Opening statements.  I don't know who is going to

20   give the opening for the government, but I'm wondering how

21   long do you think it's going to take.

22             MS. BELL:  Your Honor, I'd approximate between a

23   half hour and 40 minutes.

24             THE COURT:  Okay.  That's fine.

25             And on the defense side.  If you're going to give

1   an opening statement.  Obviously, you can defer if you want

2   to, but --

3           MR. GRAY:  Well, Your Honor, I -- Earl Gray -- I

4   would probably do about 40 minutes, 30, 40 minutes.

5           THE COURT:  Okay.

6           MR. PLUNKETT:  Your Honor, Tom Plunkett.  I would

7   estimate mine would be about that length as well.

8           THE COURT:  Okay.  Mr. Paule.

9           MR. ROBERT PAULE:  Your Honor, Robert Paule.  I

10   would estimate about 30 minutes or less.

11           THE COURT:  Okay.  Fine.

12           That sort of dictates to us that we will take part

13   of the opening statements in the morning, have a lunch break

14   and then come back in the afternoon to finish the opening

15   statements on the first day of trial, which I think would be

16   the following Monday.  And I would guess that we will start

17   testimony that first afternoon, unless something unforeseen

18   happens.

19           Trial schedule.  You folks know that I'm old.  I

20   don't want to work too hard.  I anticipate court will

21   convene in the morning at either 9:30 or 10 o'clock each

22   day, that we will have a time set aside before the jury is

23   brought in the room for any pretrial or motions or

24   discussions or housekeeping that we may need to work on.

25   We'll break for lunch at about, usually at about 12:30 and

1    come back at about 2, again, gathering before that for a few

2    minutes for any discussion we need to have out of the

3    hearing of the jury.  And then we'll adjourn for the day in

4    the area of 4:30 or 5 in the afternoon.

5            I do encourage you to complete witnesses, if

6    that's at all possible; and if that's not possible, then to

7    at least complete direct before the cross or something of

8    that nature.  But, finally, if -- I leave that more, the

9    adjournment time, more in your hands than in mine because

10   you can control that timing pretty well, but know that we

11   will not be running beyond 5 o'clock.  And I guess obviously

12   there will be morning and afternoon recesses.

13           Verdict form.  I haven't had a chance to look at

14   it.  I saw the government submitted a proposed verdict form.

15   I don't know if anybody else has.  In civil cases I'm very

16   demanding of that, but not in criminal, but it is a good

17   idea if we can figure out in advance to the degree that we

18   can what the verdict forms are going to look like.  It helps

19   you, because then you know the case that you need to try and

20   what you need to look at with respect to it.  And the powers

21   that be have given us some instructions recently that may

22   have changed the verdict form process a little bit, so we

23   need to deal with that as they are.

24           Jury instructions.  All of you know that I don't

25   get particularly excited about jury instructions until the

1    case is underway; and while the case is underway, that's

2    when I'll work on jury instructions.  You can anticipate at

3    the close of the testimony we will have a charge conference

4    where I will give you a proposed set of instructions, give

5    you some time to review that, go over those off the record

6    for any constructive criticisms you might have and that type

7    of thing, and then go on the record and hear your formal

8    motions and so forth that are applicable to it.

9         At the conclusion of all of that, jury

10   instructions will be prepared.  You will have a copy of the

11   instructions to use in your arguments.  I don't ad lib on

12   instructions; and you can know that if it says it, I'm going

13   to read it.  At the conclusion of the case, I will give a

14   copy of the written instructions to each of the jurors to

15   take to the jury deliberation room.

16        Okay.  Now we get down to the COVID issue.  I will

17   tell you, counsel, that I'm very concerned about this

18   pandemic, COVID, that's out there.  It's rampant.  Well,

19   actually, I told a lot of people how far it covers.  It

20   covers everywhere from my oldest 33-year-old granddaughter

21   who's down with COVID to my 1-year-old grandson who's down

22   with COVID.  I mean, it's everywhere.  And I'm sure all of

23   you are experiencing it.

24        There is some essentials in the room.  You are

25   essential.  The parties are essential.  I don't know if I'm

1     essential or not, but I'm not very fungible, so I suppose I

2     am.  We just have to hope and pray that none of us get it.

3     That's what it boils down to.

4            I think many of the other people that are

5     involved -- and there's a very large number of people that

6     are involved in the process, but I think in virtually all of

7     the administrative side of it there are backup people

8     available.

9            We then turn to the process of jurors.  If jurors

10    are exposed, if jurors get sick, whatever it might be, we're

11    obviously going to excuse any jurors that get sick.  I think

12    exposure is going to be dependent on the circumstances of

13    the exposure.  And I think that's probably about it.

14           Witnesses.  We'll talk some more about witnesses

15    in the future, but I think witnesses will tend to be

16    expected to testify; but obviously if they're sick, they're

17    not going to.  And it then gets down to, Can the witness be

18    taken out of order at a later time or that type of thing,

19    and we'll just have to deal individually with each and every

20    one of those circumstances that come along.  I guess that's

21    probably about it.

22           I have taken the position in the past in cases

23    that because jurors are socially distanced that if they are

24    vaccinated they don't have to mask; if they are not

25    vaccinated, they do have to mask.  I think I may change that

1    depending a little bit on what we find that we have to

2    require masking; but I also say if you got people with lung

3    conditions like mine, you will probably find some exception

4    to it.

5           Witnesses will not be wearing a mask when they

6    testify.  We have to hear them, just as when you're

7    questioning the witness, you will not be wearing a mask at

8    that point.

9           We do have to ask that you do use the podium at

10   all times that you're speaking in the courtroom other than,

11   you know, evidentiary-objection type things.

12          I think I will stop there.

13          Okay.  Now, let's go with your questions and your

14   suggestions and whatever else you have.  Ms. Bell.

15          MS. BELL:  Your Honor, I did want to -- I wanted

16   to carefully approach the podium.  A couple of things.  We

17   will provide the court with a copy of the side-by-side

18   videos, basically the two videos.

19          And to be clear, Your Honor, we put together a

20   real long and comprehensive exhibit list.  I anticipate --

21          THE COURT:  You certainly did.

22          MS. BELL:  -- some of those will go away, but the

23   speed and work that we're doing this at, we are always

24   over-inclusive.  And we are working with counsel, as we've

25   said, to preadmit some things.  And so we will continue to

1    do that.

2              I also wanted to raise, with respect to the

3    cumulative medical motion, I'd like to ask the court to take

4    a careful look at that, because Dr. Baker is not qualified

5    to opine in several areas, including resuscitation.

6              THE COURT:  Well, counsel, I read your brief on

7    the subject.

8              MS. BELL:  Yeah.

9              THE COURT:  My problem is I don't know anything

10   about any of the other witnesses.  I don't know what they're

11   here for.  I don't know what's going on with them.

12             MS. BELL:  I understand.  And so I think we tried

13   to explain that in the motion; and if we didn't, Your Honor,

14   what we can do is put together what those witnesses would

15   talk about because I think that might be confusing.

16             THE COURT:  Yeah, give me a synopsis.  That's what

17   I'm looking for.

18             MS. BELL:  Okay.  Great.  We will take care of

19   that, Your Honor.

20             Also, I wasn't sure if the court ruled on

21   Docket 162, which was the issue about the clothing being

22   worn by witnesses, and maybe you did and I just missed it.

23             THE COURT:  I'm sorry.  I did skip that.

24             MS. BELL:  Okay.

25             THE COURT:  And my apologies.  Let me give you

1    kind of a different ruling on that, or I'll say it and we'll

2    get to it later.  If the person is appearing in their

3    official function, if you will, they are permitted to be in

4    uniform.  But I think a perfect example is the one that's

5    contained within the briefing of this, and that is the woman

6    that was apparently an off-duty firefighter that came up to

7    offer something.  That should be -- that person should not

8    be in uniform because they are off duty.  I think it's

9    unfair to present such a witness with the infra matter of

10   the uniform.  And so we will deal individually with anything

11   like that.  I don't think it probably isn't much of a

12   situation, but thank you for bringing it up.  I did skip

13   that.  I apologize.

14          MS. BELL:  No problem, Your Honor.  I wasn't sure

15   if I missed it, so --

16          Last, I would just like to put on the record,

17   after conferring with defense counsel, pursuant to *Frye* and

18   *Lafler*, we would put on the record that there was no formal

19   plea offer made to any of the defendants in this case.  The

20   government was willing to engage in some initial plea

21   negotiations and discussions with each defendant and had

22   some initial discussions with counsel, but in each instance

23   the defendants decided that they did not want to engage in

24   any further discussions.  And so I'm just simply putting

25   that on the record.  There's nothing for the court to do or

1    not do with that, but I just wanted to take the opportunity

2    consistent with the Supreme Court rulings.

3              THE COURT:  In plain English what you're really

4    telling me is that's none of my business.

5              MS. BELL:  I would never say such a thing, Your

6    Honor.

7              THE COURT:  Thank you.

8              MS. BELL:  Thank you, Your Honor.

9              THE COURT:  Okay.  From the defense standpoint.

10             MR. GRAY:  Well --

11             THE COURT:  Mr. Gray.

12             MR. GRAY:  Your Honor, I suppose I can discuss

13   this with the prosecutors.  But will we be getting a daily

14   list before the witnesses?  Like on Monday, do we get the

15   list for Tuesday?  Because there are a lot of witnesses.

16             THE COURT:  Yeah.  I didn't go into that simply

17   because I thought I'd been talking too long up here, to

18   start with.  The reality is, yes, you all will be expected

19   to notify opposing counsel at least a day and usually two

20   days in advance of testimony so that people don't have to

21   prepare for more than what's anticipated.  Trial of a

22   lawsuit is hard work, and it's tough enough if you know who

23   is coming.

24             MR. GRAY:  Yes.  Thank you, judge.

25             THE COURT:  So that will happen.

```
 1              MR. GRAY:  Thanks.

 2              THE COURT:  Anything else?

 3              MR. PLUNKETT:  Tom Plunkett on behalf of

 4    Mr. Kueng.  I have nothing further, Your Honor.

 5              THE COURT:  Okay.  Anything, Mr. Paule?

 6              MR. ROBERT PAULE:  Robert Paule, Your Honor.  With

 7    regard to the court I think made inquiry about the

 8    additional questions, the proposed voir dire, I think given

 9    what the court has already said we would like the court just

10    simply to inquire of the jurors, the ones who didn't

11    affirmatively answer, that they could follow the law and

12    rule upon this case only on the evidence, if the court would

13    follow up additionally with each of the jurors who was less

14    than certain about that.

15              THE COURT:  I will do the best we can.

16              MR. ROBERT PAULE:  Thank you.  Nothing further.

17              THE COURT:  I might kind of throw the monkey back

18    on you.  You will have a list of numbers.  Give me a check

19    on those numbers, if you would, on that morning so that I

20    don't have to search through it myself.

21              MR. ROBERT PAULE:  Absolutely, Your Honor.

22              THE COURT:  Okay.

23              MR. ROBERT PAULE:  All right.  Thank you.

24              THE COURT:  Okay.  Counsel, I think we're coming

25    towards the conclusion of today's proceedings.  I recognize,
```

1    as I close this big book, there's a lot of work that's been

2    done.  There's a lot more work that will be done.  We're

3    very fortunate in this case, I know, to have very good

4    lawyers working on it and I respect you highly.

5         I am deeply concerned that this case is getting

6    out of proportion, and I mean that in a very direct way.

7    There's many -- about 48 witnesses by the government.

8         MS. BELL:  Your Honor, I can assuage your concerns

9    right now.  We do not intend to call 48 witnesses.  That is

10   simply the big picture of the witness list.  So I want you

11   to know I would not presume to call 48 witnesses in this

12   trial.

13        THE COURT:  Okay.  And I accept that, because I

14   also know what the rules are.  That's if you don't have that

15   name on that list, you can't call them then.

16        But I say that kind of as an introductory thing,

17   but, you know, counsel, we're dealing with two big issues, I

18   think, that has nothing to do with this case.  One is this

19   COVID situation.  None of us have ever been involved in

20   anything of this nature before, but the most primal of

21   society, the motion, this fear, people are just scared to

22   death of this COVID situation, but -- and that's one side of

23   the coin.  The second side of the coin is security concerns.

24   I ask that there be assistance in the security side.

25   Anarchy cannot exist.  It will not be permitted to exist,

1    but again that rests on the subject of fear.  These two

2    fears are very, very concerning to me.  They are concerning

3    to me because I don't really care what or how those issues

4    are or exist or lack thereof.  The rule of law must prevail.

5    We have got to have fair and impartial juries that

6    impartially decide cases, period.

7             Now, there are some things that can be done with

8    respect to this, I think.  There has been a huge amount of

9    taxpayer dollars invested in this case already.  I think it

10   would scare anyone and everyone if they really knew how much

11   taxpayer money is invested in this particular case.

12            It seems to me that good lawyers doing good work

13   can do good things to bring that into perspective.  And I

14   think it needs to be done, because I'm very, very concerned

15   that perspective may have been lost.  Now, that is said

16   without any intent to prejudice anybody that is in the

17   courtroom, but it's said with intent to try to make sure

18   that we're providing justice as appropriate.

19            Along the same lines, I don't know -- because I

20   know the bar that's in front of me right now, and I have

21   great respect for it -- I don't know the degree to which

22   there are outside pressures from central locations with

23   respect to this matter.  Hopefully, that is not interfering

24   in the good judgment of the lawyers that need to present the

25   case.  That is a genuine concern that I do have.

1          With all of that, counsel, what I'm really

2     encouraging is the good, hard work by good lawyers to see if

3     you can't bring it into more definitive perspective, move

4     the case along and get it tried in a much shorter time,

5     because the longer we're in this courtroom, the more

6     potentiality of exposure to COVID; and if we get to that

7     point that we don't have 12 people sitting here, we all know

8     what happens.  We all go home.  We don't want that to

9     happen.

10          With those cautionary remarks and I meant in a

11     truly constructive way, I wish you the best.  We will see

12     you a week from Thursday.  And if future communications are

13     needed, I will be around.  Thank you.

14          (Court adjourned at 1:49 p.m., 01-11-2022.)

15                              *   *   *

16          I, Renee A. Rogge, certify that the foregoing is a

17     correct transcript from the record of proceedings in the

18     above-entitled matter.

19                    Certified by:   /s/Renee A. Rogge
                                      Renee A. Rogge, RMR-CRR
20

21

22

23

24

25