UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-108 (PAM/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) GOVERNMENT'S MOTION TO |
| v. | ) CLARIFY OR RECONSIDER |
| | ) CERTAIN PRETRIAL RULINGS |
| 2.  TOU THAO, | ) |
| 3.  J. ALEXANDER KUENG, and | ) |
| 4.  THOMAS KIERNAN LANE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

The United States of America, by and through its undersigned attorneys, moves the Court to clarify or reconsider two pretrial rulings in its January 11, 2022, Memorandum and Order (the "Order"). ECF No. 195. The Court suggested that it may preclude the testimony of (1) medical witnesses essential to prove the elements of the crimes; and (2) an eyewitness to the crimes charged in this case. These rulings would deprive the government of its ability to present essential evidence to prove its case, and thus deprive the government of its right to a fair trial. At the hearing on this matter, the Court asked the government for additional briefing. Accordingly, by this motion the government respectfully requests clarification or reconsideration of the portions of its Order described in greater detail below.

The Court has expressed concern that the government will call witnesses whose testimony will be cumulative or will unnecessarily prolong the trial. To be clear, the government has no intention of calling cumulative witnesses. As experienced trial

attorneys, counsel for the government are well aware of the diminishing returns of putting unnecessary witnesses before a jury. That said, the government must put on—and has a right to put on—sufficient proof to meet each element of the crimes charged. Some of the Court's rulings could jeopardize the government's ability to meet its heavy burden of proof beyond a reasonable doubt for each of the charged offenses.

The government shares the Court's desire to avoid unnecessarily prolonging this trial and recognizes that a lengthy trial could increase the chance of a COVID-related delay. Accordingly, the government has fashioned its case to move efficiently. That said, the pursuit of justice should not become a subordinate interest to brevity here. This case involves constitutional violations by sworn law enforcement officers that resulted in the death of a man, and neither COVID nor concerns about security should limit the government or the defense from presenting its case.

**I.     The Court Should Admit Non-Cumulative Medical Testimony, Including Medical Experts in Addition to the Medical Examiner.**

To satisfy its burden, the government must prove among other things: (a) that Derek Chauvin's excessive force resulted in Mr. Floyd's death (Count 2); and (b) that the defendants' failure to render medical aid resulted in Mr. Floyd's death (Count 3). Defendant Kueng's claim that the testimony of a single witness, Hennepin County Medical Examiner, Dr. Andrew Baker, is sufficient to meet the government's burden is simply not true. Below, as directed by the Court, the government sets forth a synopsis of the non-cumulative medical testimony the government would elicit at trial.

Dr. Baker is a medical examiner and, quite simply, only treats the dead. Medical specialties are distinct and specialized. It is the norm, rather than the exception, for medical experts to opine only within the bounds of their specialty while deferring to other specialties to fill in necessary gaps. Indeed, it would be improper to ask an expert to opine on issues outside his or her areas of expertise. By Dr. Baker's own acknowledgment,[1] his area of expertise is limited, and in this case he has specifically advised the government to consult with additional experts on matters pertinent to the government's case. For example, he cannot opine in detail as an expert as to any of the following:

- the effect that compression of Mr. Floyd's airway and torso would have on Mr. Floyd's ability to fully expand and contract the lungs, and the resultant impact on his ability to obtain sufficient oxygen to maintain life;

- resuscitation or other medical efforts that could have saved Mr. Floyd's life; or

- the specific effects of fentanyl and methamphetamine on a living person or how those drugs would interact.

At this time, the government intends to call **two** outside medical experts[2] who will testify to fill in the gaps in Dr. Baker's expertise, to rebut the expected defense in this case, and to address critical areas that go to the very core of the government's case, including

---

[1] *See also* ECF No. 188 at 21-27 (Government Response to Motion *in Limine* to Limit Expert Testimony, where the government explains in detail why its experts are not cumulative and the limits of Dr. Baker's testimony).

[2] Multiple doctors were included on the witness list and disclosed to the defense in part to create some redundancies in the face of the uncertainties caused by the global pandemic, such as the unavailability or illness of physician experts who regularly treat patients with COVID. At the time of expert disclosures, the government informed defense counsel of these contingencies and the fact that it did not intend to call multiple physicians relating to any given specialty.

whether Mr. Floyd's drug use or heart conditions were causes of his of death.[3]  A very brief summary of this relevant testimony[4] and how it relates to the required elements of the charged offenses are explained below.

One of the two medical experts the government anticipates calling specializes in pulmonology and critical care.   This expert will testify regarding the following facts:

- the effects of insufficient breathing when Mr. Floyd's ability to expand and contract his chest was limited; namely, that Mr. Floyd died from asphyxiation;

- the respiratory indicators that Mr. Floyd was not about to suffer an overdose and that fentanyl was not causing Mr. Floyd's inability to breathe;

- the evidence that COVID-19 did not play a role in Mr. Floyd's death; and

- the effect medical aid, *e.g.*, moving Mr. Floyd into a position where he could breathe effectively or providing CPR, would have had on his oxygen levels, and how and when that aid could have averted Mr. Floyd's death at different points during his restraint.

This evidence is necessary to prove essential elements of the crimes charged:  (1) that Officer Chauvin's actions resulted in Mr. Floyd's death (because his actions caused the low oxygen) (Count 2), and (2) that the defendants' failure to render medical aid resulted in his death (because they failed to take any action that would have allowed Mr. Floyd to breathe sufficiently or to resuscitate him after his heart stopped) (Count 3).

---

[3]  In addition, the responses to juror questionnaires indicate that many potential jurors have preconceived and inaccurate views regarding Mr. Floyd's cause of death, including that he died from a "heart attack" or drug overdose.

[4] The government is of course willing to supply the full expert reports to the Court upon request.   While some of the topics covered by the experts may overlap in the reports, the government will endeavor to refrain from presenting unnecessarily cumulative evidence.

The second expert the government anticipates calling specializes in emergency room medicine and toxicology. This expert will testify regarding the following facts[5]:

- the numerous indicators that Mr. Floyd's death was not the result of a "heart attack" or other primary cardiac event;

- the numerous indicators that Mr. Floyd was not suffering from excited delirium or an overdose; and

- from an emergency care/resuscitation perspective, the potential for averting Mr. Floyd's death if the defendants had rendered medical aid to Mr. Floyd.

This evidence is essential to prove beyond a reasonable doubt that the defendants' failure to render medical aid resulted in Mr. Floyd's death (Count 3) and that various underlying conditions were not the but-for cause of Mr. Floyd's death (Counts 2 and 3). Notably, the defendants have not stipulated to any of these facts, as is their right, and are holding the government to its burden of proof.

In light of these submissions, the government respectfully requests that the Court permit it to call the witnesses necessary to prove each and every element of its case beyond a reasonable doubt.

## II. The Court Should Allow the Government To Present J.R.'s Testimony.

The Order presently prohibits the government from calling J.R., a (now) 10-year-old witness, because "the testimony of this witness is unnecessary and likely only offered to elicit sympathy." ECF No. 195 at 7. To the contrary, the government offers this testimony in support of its required proof of Count 3. As an element of Count 3, the

---

[5] It should be noted that the government sought dual-certified experts in specialties specifically to **avoid** calling a large number of expert witnesses.

government must prove beyond a reasonable doubt that Mr. Floyd had an objectively serious medical need, meaning one that is so obvious that even people with no formal medical training would recognize that care is required.  Viewed through this lens, it is significant that a then-9-year-old observed and immediately understood that Mr. Floyd needed medical attention.  The testimony of witnesses in their late teens or older[6] does not similarly convey to a jury the true obviousness of the medical need as does the testimony of someone who is many years younger.

As the Court already noted, "the exclusion of a witness merely because the witness is a juvenile" would not be proper.  ECF No. 195 at 7.  Further, no one has raised any issues about the competency of J.R. to testify.

In light of these submissions, the government respectfully requests that the Court reconsider its earlier decision and permit the government to call J.R. so that the government may exercise its discretion in determining how to prove its case beyond a reasonable doubt.  As in any case where a crime is committed in front of an eyewitness, such witnesses must be permitted to testify.

---

[6] As stated during the status conference, the government does not intend to call all of the witnesses listed on its exhibit list.  The same is true for the bystander witnesses—as the government noted in its trial brief, ECF No. 180 at 16, the government intends to call some, but not all, of the bystanders.

### III.  Conclusion

WHEREFORE, the government respectfully requests the Court to clarify its ruling regarding the government's medical experts, and reconsider its ruling precluding the presentation of witnesses necessary to the government's case.

Dated: January 12, 2022                               Respectfully submitted,


CHARLES J. KOVATS, JR.                         KRISTEN CLARKE
Acting United States Attorney                      Assistant Attorney General
                                                                     Civil Rights Division
*/s/ LeeAnn Bell*
BY:   LEEANN K. BELL                             */s/ Samantha Trepel*
Assistant U.S. Attorney                               BY:   SAMANTHA TREPEL
Attorney ID No. 0318334                           Special Litigation Counsel
                                                                     Attorney ID No. 992377 DC