UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-108 (PAM/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>4.   THOMAS KIERNAN LANE, )<br>)<br>Defendant. ) | GOVERNMENT'S MOTION TO EXCLUDE DEFENSE EXPERT GREG MEYER |

The United States of America, by and through its undersigned attorneys, Charles J. Kovats, Jr., Acting United States Attorney for the District of Minnesota; LeeAnn K. Bell, Assistant U.S. Attorney; and Samantha Trepel, Special Litigation Counsel for the Civil Rights Division, moves to exclude Defendant Thomas Kiernan Lane's police practices and use of force expert, Greg Meyer.  Meyer's report is unhelpful to the jury because his opinions are not based on, and his report is devoid of, any discernable methodology, standards, or stated knowledge of policing practices. Meyer's opinions are riddled with plainly impermissible legal conclusions that simply tell the jury what result to reach. Meyer's report—and likely his trial testimony—amounts to a closing argument to the jury because it consists of legal conclusions and identifies "facts" they should find to support those conclusions. Finally, Meyer's report offers a discussion about the self-evident limitations of video evidence that the jury will require no assistance to understand, and includes a medical opinion that he is unqualified to provide. As such, Meyer's opinions

and subsequent testimony are irrelevant because they are unhelpful to the jury. The government moves to exclude Meyer's testimony at trial.

## I. Introduction

The parties disclosed expert materials pursuant to the Court's Order. ECF No. 137. On December 20, 2021, Defendant Lane disclosed Greg Meyer (Meyer), a former Los Angeles Police Department captain and officer, as an expert in police practices and the use of force. On January 3, 2022, Defendant Lane disclosed Meyer's expert report. *See* Exhibit ("Ex.") 1, Expert Witness Report to Defense by Defense Expert Greg Meyer (the "Meyer Report")1. In his Report, Meyer states, *inter alia*, his "opinions are based on [his] analysis of the documentation and evidence in this case, then applying [his] knowledge and understanding of generally accepted professional standards and practices in law enforcement." Ex. 1 at 2. Meyer also states he "does not offer legal conclusions." Ex. 1 at 3. Further, Meyer notes, "There may be factual disputes among the parties and witnesses regarding their memories of specific events during the incident. I do not make determinations of the credibility of parties and witnesses, for that is the purview of the trier of fact." Ex. 1 at 4.

Despite the aforementioned caveats in his report, Meyer provides the following legal conclusions, factual determinations, and credibility assessments disguised as opinions:[2]

---

1 For the Court's convenience, the Government will separately provide the Meyer Report (Ex. 1).

[2] The key language indicating an improper conclusion, determination, or assessment is

1. "Officer Lane **expressed concerns for Mr. Floyd's well-being when** Officer Lane made several attempts to determine what was causing Mr. Floyd's **bizarre behavior**." Ex. 1 at 5;

2. "**Officer Lane addressed Mr. Floyd's medical needs when** Mr. Floyd complained that he suffered from claustrophobia as the officers were attempting to overcome his active resistance and secure him in the back seat of the police vehicle; Officer Lane **attempted to mitigate Mr. Floyd's concerns** about claustrophobia when he said he would roll down the windows, when he said he would turn on the air conditioning, and when he said he would sit in the back seat with Mr. Floyd when Mr. Floyd asked him to "Stay with me, man," and Officer Lane answered, "I will. I will." Ex. 1 at 6;

3. "**Officer Lane addressed Mr. Floyd's medical needs when** Mr. Floyd specifically requested multiple times that the officers let him lay on the ground instead of being in the back seat of the police vehicle." Ex. 1 at 7;

4. "Officer Lane initiated an effort to use the hobble restraint on Mr. Floyd to better control Mr. Floyd's active resistance, which if successfully applied according to approved training would have led to rolling Mr. Floyd onto his side." – Meyer Report at 7;

5. "**Officer Lane addressed Mr. Floyd's medical needs when** he used his radio to request an ambulance after Officer Lane observed Mr. Floyd to be bleeding from the mouth because of an injury that apparently occurred during the struggle inside the police vehicle, and when Officer Lane later suggested that the ambulance be "stepped up" (to Code-3, i.e., lights and siren)." Ex. 1 at 8;

6. "Officer Lane did not place any weight on Mr. Floyd's back." Ex. 1 at 9;

7. "**Officer Lane addressed Mr. Floyd's medical needs when** Officer Lane <u>twice</u> asked Officer Chauvin, "Roll him over on his side?" after Mr. Floyd was under control while prone and also when he told Officer Chauvin that he was worried "about Excited Delirium." Ex. 1 at 9;

8. "**Officer Lane addressed Mr. Floyd's medical needs when** Officer Lane adjusted his control efforts to use proportionately less force on Mr. Floyd's lower legs and feet." Ex. 1 at 11;

---

bolded in each example. The government also objects to the factual assertions in "opinions" 4 and 6 because they are simply statements of fact that the jury will need no assistance to determine.

3

9. "**Officer Lane addressed Mr. Floyd's medical needs when** Officer Lane watched Mr. Floyd to ensure that he was breathing." Ex. 1 at 11;

10. "**Officer Lane addressed Mr. Floyd's medical needs when** he asked Officer Kueng if Mr. Floyd had a pulse." Ex. 1 at 11;

11. "**Officer Lane addressed Mr. Floyd's medical needs when** Officer Lane took several actions to assist the paramedics with caring for Mr. Floyd, including Officer Lane personally giving CPR to Mr. Floyd while the paramedics were preparing to deploy special CPR equipment." – Meyer Report at 12;

12. "**Officer Lane was a rookie officer who had no authority to override senior Officer Chauvin's decisions to not apply the hobble to Mr. Floyd, and not turn Mr. Floyd onto his side, yet Officer Lane still did everything he could in conformance with his training to address Mr. Floyd's medical needs**." Ex. 1 at 13;

13. "**The Chief of Police and the Medical Examiner were both supportive of Officer Lane's positioning** on Mr. Floyd's lower legs and feet when Mr. Floyd was being restrained on the ground, which **indicates to me that Officer Lane's positioning did not exacerbate Mr. Floyd's medical situation**." Ex. 1 at 14; and

14. "Based upon all of the above, **rookie Officer Lane's** actions and words consisted on multiple efforts **to address Mr. Floyd's medical needs**, thus it is my Opinion that Officer Lane **was not deliberately indifferent to Mr. Floyd's serious medical needs**." Ex. 1 at 14.

## II. Legal Standards

Admissibility of expert testimony is governed by Fed. R. Evid. 702. Under Rule 702, expert testimony will be allowed if it meets the following requirements: (1) the proposed scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact at issue; (2) the testimony is based upon sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the witness has applied the principles and methods reliably to the facts of the case. The proponent of the testimony is required to show, by a preponderance of the evidence,

4

that the testimony is admissible under Rule 702. *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001).

The Court's "gatekeeping" function applies to all types of expert testimony. *Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (8th Cir. 2003). One "touchstone for admitting [expert testimony] is assistance to the trier of fact." *Somnis v. County Mut. Ins. Co.*, 840 F. Supp. 2d 1166, 1170 (D. Minn. 2012) (citing *Lee v. Anderson,* 616 F.3d 803, 808 (8th Cir. 2010)). An expert's testimony should be excluded "when the testimony 'can offer no assistance to the jury.'" *Somnis*, 840 F. Supp. 2d at 1170 (quoting *United States v. Finch,* 630 F.3d 1057, 1062 (8th Cir. 2011)). "[A]n expert who simply 'draws inferences or reaches conclusions within the jury's competence" does not provide 'helpful' testimony under Rule 702." *Somnis*, F. Supp. 2d at 1173 (quoting *Nichols v. Am. Nat'l Ins. Co.,* 154 F.3d 875, 883 (8th Cir. 1998)). The requirement that the expert's testimony must "help the trier of fact" is primarily a relevance bar. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993).

Given these principles, statements of mere legal conclusion—or what result to reach—do not aid the jury in understanding evidence or determining facts and are thus irrelevant and inadmissible. *See Estes v. Moore*, 993 F.2d 161, 163 (8th Cir. 1993). As an opinion disguised as a "legal conclusion" or an ultimate issue of law does not assist the jury, experts in cases where the jury must determine whether an officer acted reasonably have been precluded from testifying to the reasonableness of police behavior in light of Fourth Amendment standards. *See, e.g.*, *Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009) (upholding district court's exclusion of expert opinions regarding the

5

reasonableness of police evidence collection and strip search procedures as impermissible legal conclusions); *see also Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2006) (question of excessive force is so fact-intensive, the jury will often be "in as good a position as the experts" to decide whether the officer's conduct was "objectively reasonable"); *Rollins v. Smith*, 106 F. App'x 513, 514 (8th Cir. 2004) (upholding district court's exclusion of expert opinions regarding propriety of officer conduct and use of force as compared to Eighth Circuit precedent); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995); *Estes*, 993 F.2d at 163-164 (finding that because the ultimate conclusion on probable cause is a question of law, expert's opinion on whether probable cause existed was an inadmissible "legal conclusion").

However, the Supreme Court has held "an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true," *Williams v. Illinois,* 567 U.S. 50, 57 (2012), and that it then becomes the responsibility of the party calling the expert "to introduce other evidence establishing the facts assumed by the expert." *Id*.; *see also Thomas v. Barze*, 57 F. Supp. 3d 1040, 1059 (D. Minn. 2014).

One case from a district court in this Circuit is equally instructive on the limits of expert testimony in police misconduct cases. *See Peters v. Woodbury County, Iowa*, 979 F.Supp.2d 901 (N.D. Iowa 2013). First, *Peters* adopts the methodology espoused in *United States v. Perkins*, 470 F.3d 150, 156-160 (4th Cir. 2006): "(1) an expert may provide opinions that are phrased in such a manner as to avoid the baseline legal conclusion, for example, the "reasonableness" of the force used, []; (2) an expert may also respond to *hypothetical* or *abstract questions* about the reasonableness of the force used in stated

6

circumstances, []; (3) an expert may also offer a *personal* assessment of the use of force, such as that the expert did or did not see any reason for the force used in the incident in question, []; but (4) an expert may *not* opine that the conduct in question transgressed the applicable *legal* standard, such as "objective reasonableness." *Peters*, 979 F. Supp. 2d at 924.

Applying the methodology, the *Peters* court advised:

> With these principles in mind, *assuming that [expert witness] is properly qualified and that proper disclosures of his opinions have been made,* [expert witness] would and would not be allowed to testify to the following matters in this case. First, [expert witness] *would not* be allowed to opine on a *factual* matter on which the jurors are entirely capable of making a determination—such as what force was used by the officers, *see Lee,* 616 F.3d at 809; [*Westcott v. Crinklaw,* 68 F.3d 1073, 1076 (8th Cir. 1995)], nor would he be allowed to base his opinion on what he believes the correct version of the facts to be. *Westcott,* 68 F.3d at 1076. On the other hand, if he is properly qualified, [expert witness] would be allowed to explain the *kind* of force applied, such as whether or not [individual] actually applied a "mandibular angle restraint[]"[…] and [expert witness] would be allowed to respond to *abstract* or *hypothetical* questions by opining that the force described was or was not reasonable in the circumstances described in the question, and would even be permitted to opine as to whether he *personally* believed that the force used against Peters was reasonable under the circumstances, but he would *not* be allowed to opine that the use of force satisfied the *legal* standard of "reasonableness."

*Id.* at 924–25 (emphasis in original).

### III. Argument

Meyer's Report and opinions—and thus anticipated trial testimony—are entirely devoid of any reference to a methodology. Meyer's Report also does not appear to be based on "scientific, technical, or other specialized knowledge" or standards, such as

7

generally accepted policing principles or even Mr. Meyer's own experience and training. Instead, he recounts the facts (as determined by him) that support his conclusions, untethered to any standards or policing principles. Further, his opinions consist of impermissible legal conclusions, factual determinations, and/or credibility determinations that invade the province of the jury and instruct the jury on what result to reach, which witnesses to believe, and the weight to apply to (presumably) admitted evidence. Last, Meyer's anticipated testimony includes a discussion about the reliability or limitations of video testimony, a topic about which the jury needs no assistance to evaluate. Ex. 1 at 14-15. Such testimony is wholly inappropriate and does not aid the jury in reaching a verdict. As such, Meyer's opinions and subsequent testimony are irrelevant, and the government moves to exclude Meyer's testimony at trial.

> 1. **Meyer's opinions are unhelpful to the jury because they are not based on any stated methodology or accepted policing practices.**

Meyer's opinions—and presumed testimony—fails the methodological test envisioned in *Peters* and *Perkins*. First, and most significantly, Meyer's opinions are untethered to any reliable principles or methodology. As such, Meyer's opinions provide no assistance to the trier of fact. Indeed, they can best be described as a closing argument—Meyer tells the jury the conclusion it should reach, and then recites the facts that he believes support that conclusion. What he does not do is ground his opinions in any generally accepted principles of policing or even his own experience. The *only parts of* his entire 17-page report where he bases his opinions on his policing experience in a manner that might assist the jury are the following:

1. "It is appropriate police procedure for an officer to attempt to identify the cause of the problem so that appropriate medical care can be provided subsequent to arrest." Ex. 1 at 5 (part of basis for Opinion 1).

2. "Based on my knowledge, education and training, officers are taught that prolonged active resistance is medically compromising." Ex. 1 at 7 (part of basis for Opinion 7).

3. "In recent decades, police officers (including MPD officers like Officer Lane) have been trained about the supposed potential dangers of prone positioning of a resisting subject who has been handcuffed and subdued (which is exactly why Officer Lane wanted to roll Mr. Floyd onto his side, as trained)." Ex. 1 at 9 (part of basis for Opinion 6).

Absent those three bases, Meyer's report is a recitation of facts the jury can see for themselves in the video or learn from the testimony of fact witnesses, and draw their own conclusions as to the law. For example, "opinions" 4 and 6 consist entirely of facts that are undisputed and that the jury will require no assistance to understand. *See* Meyer Report at 7 and 9 (noting that had the defendants applied the hobble correctly, training would dictate them moving Mr. Floyd into the side recovery position; and defendant Lane did not place weight on Mr. Floyd's back). His report sheds no other light for the jury about policing methodology and practices. It is thus unhelpful and irrelevant, and should be excluded on that basis alone.

### 2. Meyer's opinions are legal conclusions that direct the jury about what result to reach.

Here, the jury will be charged to resolve, *inter alia*, the following legal issues regarding the defendants' guilt or innocence: (1) whether or not a particular use of force was lawful, reasonable, or appropriate under the Fourth Amendment; (2) whether or not a defendant did or did not willfully fail to intervene; and (3) whether or not a defendant was

deliberately indifferent to Mr. Floyd's serious medical needs, or whether or not a defendant took reasonable measures to address a serious medical need. Testimony which directs or tells the jury what result to reach in each instance would constitute impermissible legal conclusions.

Meyer's report and opinions impermissibly tell the jury exactly what conclusion to draw from the evidence, and what evidence supports that conclusion, as to each of these issues. For example, opinion 14 states a legal conclusion: "it is my Opinion that Officer Lane was not deliberately indifferent to Mr. Floyd's serious medical needs." Opinions 2, 3, 5, 7, 8, 9, 10, 11, and 12 all likewise state a legal conclusion: that defendant Lane "addressed Mr. Floyd's medical needs," *i.e.*, that defendant Lane was not deliberately indifferent. Meyer bases each of these opinions on the facts provided to him by the defense. Under Eighth Circuit and this Court's precedent explaining that an expert cannot base his opinion on what he believes the correct version of facts to be, nor opine on a factual matter the jurors are capable of determining for themselves, Meyer's opinions and testimony are therefore inadmissible. *See Peters*, 979 F. Supp. 2d at 924-25 (explaining what an expert may and may not testify to); *see also Johnson v. McCarver*, Civ. No. 16-872 (PAM/SER), 2017 WL 9618354, at * 4-6 (D. Minn. Dec. 21, 2017) (overruled on other grounds, *Johnson v. McCarver*, 942 F.3d 405 (8th Cir. 2019)) (excluding testimony of police-practices expert that "officers had probable cause to arrest" because it was a legal conclusion "for the jury alone to determine"); *Walls v. Mohammad*, No. 12-CV-2623 PAM/SER, 2014 WL 1281994, at *1-2 (D. Minn. Mar. 28, 2014) (excluding police-practices expert's proposed testimony in its entirety because "it consists of a recitation of facts derived from material

provided to [the expert] by [counsel] and improper legal conclusions) . Because the law is clear that expert testimony consisting of legal conclusions based on facts as provided to the expert by a party are inadmissible, Meyer should be precluded from offering his opinions.[3]

### 3. Meyer's opinions improperly evaluate witness credibility.

It is well-recognized that "expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702." *Nimely v. Ciy of New York*, 414 F.3d 381, 398 (2d Cir. 2005) (citing *Westcott*, 68 F.3d at 1076-77 (additional citations omitted)). "[A]n expert [may not] pass judgment on a witness' truthfulness in the guise of a professional opinion." *Westcott*, 68 F.3d at 1076 (citation omitted). Such credibility determinations are similarly inadmissible under Rule 403. *See Nimely*, 414 F.3d at 398 (testimony which "undertakes to tell the jury what result to reach," and "attempts to substitute the expert's judgment for the jury's," does not "assist the trier of fact[.]"); *see also U.S. v. Kime*, 99 F.3d 870, 884 (8th Cir. 1996). "[T]here is a critical distinction between an expert testifying that a disputed

---

[3] Expert witnesses instead may offer opinions regarding specific factual building blocks which support ultimate legal conclusions such as reasonableness and willfulness. *Cf., e.g.*, *Perkins*, 470 F.3d at 156. This may include testimony as to whether a defendant's conduct was consistent or inconsistent with MPD policy and training and generally accepted police practices. *See, e.g.*, *S. Pine Helicopters, Inc. v. Phoenix Aviation Mgrs, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) (expert testimony on "industry practice or standards may often be relevant"); *K.W.P. v. Kansas City Pub. Sch.*, 296 F. Supp. 3d 1121, 1127 (W.D. Mo. 2017) (permitting expert testimony "about the appropriateness of the handcuffing under the circumstances in light of his law enforcement training experience"); *Barze*, 57 F. Supp. 3d at 1059 (explaining an expert "can testify to his opinion about whether a certain action by [a defendant-officer] in a certain circumstance, assuming those are the facts, would be consistent with police practices"). However, Meyer's opinions fail to fit into these carefully crafted categories.

fact actually occurred or that one witness is more credible than another and an expert giving an opinion based upon factual assumptions, the validity of which are for the jury to determine. The former is manifestly improper, the latter is not." *Barze*, 57 F. Supp. 3d at 1059 (quoting *Richman v. Sheahan,* 415 F. Supp. 2d 929, 942 (N.D. Ill. 2006)).

Portions of Meyer's opinions rest on credibility determinations and the unqualified acceptance of certain statements and facts that follow those determinations. For example, opinion 13 is based on a credibility determination of the "Chief of Police and Medical Examiner's" statements.[4] In doing so, Meyer has again invaded the province of the jury and his testimony is wholly unhelpful.  As a gatekeeper of expert testimony, the Court should exclude any opinion which includes, in full or part, a credibility determination of testifying fact witnesses and/or evidence.

### 4. Meyer should not be permitted to testify about the limitations of video and medical evidence because it will not aid the jury.

Last, Meyer's Report includes a section entitled "**POTENTIAL LIMITATIONS OF VIDEO EVIDENCE**." Ex. 1 at 15-16. In pertinent part, Meyer's report reads:

> This case involves video evidence. My training and experience are that video evidence of a police use of force incident is generally valuable to an investigation, but it has several significant, potential limitations that investigators and adjudicators must be aware of[.]

Meyer Report at 15. This section does not purport to be opinion, but instead provides Meyer's non-expert discussion regarding the weight a jury should allocate to video

---

[4] These out-of-court statements are also inadmissible hearsay, and therefore Meyer cannot testify to them.

evidence in this case. Such testimony should be wholly disallowed. A jury is capable of determining for itself whether the admitted videos aid in rendering a verdict; the defense can also make this point in argument. Likewise, Meyer is not a medical expert and is therefore not qualified to opine, as he does in his report, "that Officer Lane's positioning did not exacerbate Mr. Floyd's medical situation." Meyer Report at 14. As such, Meyer's proposed testimony on both video and medical issues would not assist the jury. *See, e.g.*, *Andersen*, 616 F.3d at 809 (holding trial court properly excluded expert testimony about video images where jury was capable of analyzing the images); *see also Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008) ("the proposed witness must be qualified to assist the finder of fact") (internal quotation marks omitted); *Redd v. Abla-Reyes*, Civil No. 12-465 (MJD/JSM)*,* 2013 WL 6036697, at *2 (excluding expert's opinion of surveillance video where expert used no special expertise in forming opinion and ability to discern video images was within jury's knowledge or experience); *Shannon v. Koehler*, No. C 08–4059–MWB, 2011 WL 10483363, at *31 (N.D. Iowa Sept. 16, 2011).

### III.  Conclusion

WHEREFORE, the government moves the Court to exclude Defendant Lane's expert witness, Greg Meyer, from testifying at trial. Meyer's opinions and prospective testimony will not assist the jury because they are untethered to any methodology or experience; and invade the province of the jury because they are impermissible legal conclusions, improper determinations of fact and witness credibility, or a combination of both.

Dated: January 13, 2022

CHARLES J. KOVATS, JR.
Acting United States Attorney

*s/*
BY: LeeAnn K. Bell
Assistant United States Attorney
Attorney No.: 0318334

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

*s/*
BY: Samantha Trepel
Special Litigation Counsel
Attorney No.: 992377 DC