# Ballard Spahr
#### LLP

– – – – – – – – – – – – – – – – – –

2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2119
TEL 612.371.3211
FAX 612.371.3207
www.ballardspahr.com

Leita Walker
Tel: 612.371.6222
Fax: 612.371.3207
walkerl@ballardspahr.com

January 25, 2022

*VIA ECF*

The Honorable Paul A. Magnuson
Senior Judge
U.S. District Court, District of Minnesota
316 N. Robert Street
St. Paul, MN 55101

**Re:**     **Permission to file Motion for Reconsideration**

Dear Judge Magnuson:

Pursuant to D. Minn. Local Rule. 7.1, I write to request permission to file a motion for reconsideration of the Court's January 24, 2022, order denying the Media Coalition's Motion Objecting to Closure of the Courtroom.[1] The Court explained in the text-only order that it "cancelled the hearing" at issue "and the Motion is therefore moot." *See* Dkt. 219.

Respectfully, the Coalition's Motion did not just object to exclusion of the press and public from a court proceeding.[2] It also explicitly requested immediate access to any transcript of the proceeding. *See* Dkt. 217 at 6. After denying the Coalition's Motion as moot, the Court subsequently acknowledged that such transcript exists but sealed it, "pending further order of the Court," citing only broadly "the interests of justice and of a fair trial." Dkt. 222.

---

[1]  As you know, I submitted the Motion via email to your chambers at approximately 9:42 a.m. on Friday morning, though the Motion did not appear on PACER until later that day. Attached to this letter as Exhibit A is the transmission email.

[2]  Moreover, the Coalition notes that although the Court purported to cancel what it referred to as a "hearing," it did go forward with some sort of proceeding that, although conducted on the record and attended by counsel for all parties, was closed to the press and public. *See* Dkt. 216.

DMFIRM #401550498 v1

The Honorable Paul A. Magnuson
January 25, 2022
Page 2

Because the Media Coalition's Motion requested access to any transcript of the meeting and because a transcript does indeed exist, the Motion was not moot as of January 24, and it is not moot today. The Court did however, effectively deny that request on the merits when it sealed the transcript.[3]

As the Media Coalition has previously explained both in its Motion and in a January 17 letter to Your Honor,[4] there is a presumptive, contemporaneous First Amendment right of access to criminal court proceedings, exhibits, transcripts and other court records. The right is not absolute, but can be restricted only if the Court gives the press and public a chance to be heard and then makes on-the-record findings of fact and conclusions of law that secrecy is needed to safeguard a compelling government interest and that no alternatives will adequately protect the threatened interest.

Because the Court did not apply the requisite procedural safeguards before sealing the transcript of Friday's proceeding, the Media Coalition respectfully requests that it be heard on its right of access to the transcript. As for the exclusion of the press and public from the proceeding itself: that exclusion caused irreparable harm that cannot be fully undone by providing access to a transcript of the proceeding.  However, we believe it would be productive for the Media Coalition to have an opportunity to address with the Court how further closures can be avoided during what remains of this important trial.

Respectfully,

*s/ Leita Walker*

Leita Walker

---

[3]  But for the sealing, the transcript would be available for purchase pursuant to the Media Guidance Document, which I have attached hereto as Exhibit B.

[4]  I have enclosed this letter as Exhibit C and your response to it as Exhibit D.

# EXHIBIV'C

**Simon, Kimberly (Minn)**

| | |
|---|---|
| **From:** | Walker, Leita (Minn) |
| **Sent:** | Friday, January 21, 2022 9:42 AM |
| **To:** | magnuson_chambers@mnd.uscourts.gov |
| **Cc:** | Rebeccah Parks; Thomas C. Plunkett; Earl Gray; Simon, Kimberly (Minn); Parsons, Emmy (DC) |
| **Subject:** | Media motion objecting to courtroom closure |
| **Attachments:** | 401499376_1.pdf |

Dear Judge Magnuson,

In the interest of time I am emailing the attached motion to your chambers. My assistant will be filing it on the docket shortly. I don't have email addresses at my fingertips for all counsel of record but have copied Mr. Plunkett and Mr. Gray and assume other counsel of record will receive the motion once it's on file.

The Media Coalition requests an opportunity to be heard before any closure of the court today or going forward.

Sincerely,


**Leita Walker**

## Ballard Spahr
LLP

2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2119
612.371.6222 DIRECT
612.371.3207 FAX

walkerl@ballardspahr.com

---------------------------------
www.ballardspahr.com

# EXHIBIV'D



# Media Guidance Document

USA v. Thao, et al.
21-cr-00108

Trial start date: January 20, 2022

Contact
Rebeccah Parks
Public Information Officer
Rebeccah_Parks@mnd.uscourts.gov
(612) 664-5124

*Media Guide Version 1/18/22*



## Contents

Purpose of the Media Guidance Document ..............................................................................................3

Court Staff Contact Information ..............................................................................................................3

Relevant Policies ...................................................................................................................................3

Case Description ...................................................................................................................................3

Court Documents ..................................................................................................................................3

Evidence ...............................................................................................................................................4

Transcripts ............................................................................................................................................4

Trial Timeline & Juror Information .........................................................................................................4

Location & Hours ..................................................................................................................................4

Parking .................................................................................................................................................4

Media Staging Area ..............................................................................................................................5

Courthouse Security .............................................................................................................................6

Electronic Device Policy & Live Streaming ...........................................................................................6

Courtroom & Overflow Seating for Media .............................................................................................7

Overflow Seating for General Public .....................................................................................................8



**Purpose of the Media Guidance Document**
The purpose of this guide is to provide key information to members of the media regarding the *United States v. Thao, et al.* (21cr108) case. The court reserves the right to update this document at any time.

**Court Staff Contact Information**
All media inquiries concerning this case should be directed to Rebeccah Parks, Public Information Officer, at Rebeccah_Parks@mnd.uscourts.gov or 612-664-5124. The preferred initial method of contact is email.

Media should not contact Judge Paul A. Magnuson or his judicial staff with any questions during the trial.

**Relevant Policies**
Media will need to adhere to the following rules and policies when covering this case:
- Federal Rules of Criminal Procedure, which prohibit broadcasting of criminal proceedings in any form. This means that streaming, either live or after the fact, photography, or audio recording are prohibited, including virtual and in-person proceedings.
- Electronic devices, including cellphones, will be allowed in Courtroom 7D for credentialed media who obtain a seat via the lottery but must be disconnected from WiFi or internet while in the courtroom.

Additionally, media should submit the two relevant forms needed to cover cases within the U.S. District Court for the District of Minnesota no later than 12:00pm CST on January 18, 2022:
- U.S. District Court ECF Media Account Application, this allows for an Electronic Case Filing (ECF) account, which is used to view all public entries on the case docket.
  - Guide to using ECF Media Account
- U.S. District Court for the District of Minnesota Media Credentialing Application, this grants media the ability to observe from the overflow room, to receive news releases from the court, and to use electronic devices in the designated overflow spaces.

**Case Description**
Tou Thao, J. Alexander Kueng, and Thomas Kiernan Lane have all been charged with deprivation of rights under color of law.

**Court Documents**
Public documents filed in this case are available in the court's Electronic Case Filing (ECF) system with an approved ECF Media Account. Media can sign up to receive updates when new information or documents are posted to the case webpage. Steps on setting up alerts in a case can be found at Guide to using ECF Media Account.



**Evidence**
The Court will make any determination regarding what evidence can be provided to the media after jury deliberations are complete.

**Transcripts**
Official transcripts may be purchased on a daily basis from the attending Court Reporter, Renee Rogge, by submitting the Transcript Request Form to the ECF Help Desk email and cc-ing Renee_Rogge@mnd.uscourts.gov. Additional information on ordering a transcript, including the per page cost for a copy of a daily transcript, can be found on the court's website.

**Trial Timeline & Juror Information**
The trial is scheduled to begin on Thursday, January 20, 2022. Court will generally be held from 9:30am to 5:00pm each day, Monday through Friday.

Jury selection (also known as voir dire) starts on January 20, 2022. Opening statements in the trial will begin no earlier than January 24, 2022. During each day of the trial, there will be a morning and afternoon break, and a break for lunch. Judge Magnuson may, or may not, clarify each day's schedule in advance.

**Location & Hours**
The trial will be in courtroom 7D of the Warren E. Burger Federal Building and U.S. Courthouse, located 316 N. Robert Street, St. Paul, MN 55101.  No hearings or trials in other cases will be scheduled at the Warren E. Burger Federal Building and U.S. Courthouse during the trial.  Due to the COVID pandemic, the Jury Assembly Room (JAR) will be used as a media only overflow room. The courthouse is open for credentialed media from 8:00am until 30 minutes after the close of court for the day, or 4:30pm, whichever is later. Media may be allowed to work from the overflow space for up to one hour after the close of court.

Access to the courthouse will be limited to credentialed trial participants, U.S. District Court-approved staff, and credentialed media.  Please see more in the section on Courtroom Seating for Media and Overflow Seating for the General Public for additional information.

The skyway to and from the courthouse will likely be closed during trial.

**Parking**
There is no public or media parking in any U.S. District Courthouse within the District of Minnesota. Parking meters near the courthouse have varying time restrictions and rates. Time restrictions and rates are posted at each metered space. City owned and privately owned parking ramps are in downtown St. Paul, with varying rates, that can be used by media not taking public transit.



Parking for media vans should be coordinated with the St. Paul Police Department.

| Steve Linders | St. Paul PD (PIO) | 651-216-5052 | steve.linders@ci.stpaul.mn.us |
|---|---|---|---|

**Media Staging Area**

The outdoor plaza of the courthouse will be fenced off and not open to media or public. At no time will camera set-ups on adjacent corners be allowed to impede the flow of pedestrian traffic.

Two staging areas on the first level of the courthouse will be available for media to conduct live shoots and pre-arranged interviews with case participants (noted in green X below). **Camera angles in this area must not capture the security screening equipment.** Camera personnel must wear a U.S. District Court credentialed badge to enter the staging area. Pathways, stairs, and elevators are to remain clear from obstructions or interfering with any individuals' movement to leave the space.



Credentialed media/cameras are not to approach security officers regarding the media policy. Questions should be referred to Rebeccah Parks.

Audio feeds from the overflow room cannot be streamed to this staging area and, due to the limited size of this space, media are encouraged to coordinate their own video pool system. The U.S. District Court will play no role in arranging or coordinating any news conferences associated with the trial.

No video recording of any kind, including via a cell phone, will be allowed past the security screening area. Media may make audio-only phone calls from the area outside of the Jury Assembly Room but must go outside of security to make video or FaceTime calls.

**Courthouse Security**

All persons entering the Warren E. Burger Federal Building and U.S. Courthouse must pass through metal detectors (like those at airports and other government buildings). Under federal law, it is a crime for a person in a courthouse to possess a dangerous weapon, ammunition, or explosives.

A wristband system will be used to award daily access to the courthouse for media and the public. The forty (40) seats of the overflow media space are allotted on a first come, first served basis, and require no pre-registration beyond being credentialed with the court. The overflow room is established to expand access for the media due to the COVID pandemic and should not be considered a production workspace. Organizations should consider limiting access to the room to one representative; the Court will adjust as necessary to best ensure access for all media.  The sixth-floor media room normally available to credentialed media will be closed during the trial.

**Electronic Device Policy & Live Streaming**

Per the court's Electronic Device Policy, no person may use an electronic device, such as cell phone, to photograph or record any part of any court proceeding, courtroom, court office, or court staff member, or to broadcast or otherwise transmit any part of any court proceeding.

Proceedings held in the Court are subject to the rules mandated by the U.S. Judicial Conference, which prohibit broadcasting in any form. This means that streaming, either live or after the fact, photography, or audio recording are prohibited, including in virtual proceedings.

Credentialed media who are given a seat in the overflow space (JAR) will be allowed to use laptops and cell phones to conduct normal business while covering the trial. Laptop cameras must be covered via a commercial webcam cover product, paper and tape, or a combination thereof approved by the Court. Streaming or recording by case participants and members of the media is strictly prohibited. **Violation of this policy will result in revocation of media credentials and may result in court-issued sanctions.**

**Courtroom & Overflow Seating for Media**

A lottery system will be used to award seats in courtroom 7D from January 20 to February 18, 2022. Additional dates, if needed, will be awarded on February 16, 2022. The forty (40) seats in the Jury Assembly Room for media are first come, first served each day of trial.

Media organizations who wish to be considered for a pool seat in courtroom 7D must email Rebeccah Parks by 8:00am CST on Tuesday, January 18, 2022 with the subject line "Media Pool Opt In" and indicate which of the four media categories — local print, national print, local broadcast, and national broadcast — they wish to be included in.  Only one category can be indicated.

A daily schedule of pool seats for January 20 to February 18 will be available at 5:00pm CST on Tuesday, January 18, 2022. If a media organization cannot attend the proceedings on a day where they were chosen via the lottery, they should contact Rebeccah Parks so a replacement name can be chosen using the lottery system again.

Voir Dire Lottery:

The lottery system will be conducted to allow two (2) seats in courtroom 7D for each day of jury selection for credentialed media. Seats in 7D will be allocated to one (1) print media outlet and one (1) broadcast media outlet. No sketch artist will be allowed in the courtroom during jury selection.  If voir dire continues into the week of January 24, the court will draw between the two names noted below to identify the one (1) broadcast media outlet representative and the one (1) print media outlet that will be allocated to 7D.

Post Voir Dire Lottery:

The lottery system will be conducted to allow five (5) seats in courtroom 7D for each day of trial for credentialed media. Seats in 7D will be allocated to one (1) local print media outlet, one (1) national print outlet, one (1) local broadcast media outlet, one (1) national broadcast outlet, and one (1) sketch artist each day of trial.

**The lottery system is organization specific, but all media must be individually credentialed by 12:00pm on Tuesday, January 18, 2022.**

The court **requires** the sharing of notes by media who receive a seat in courtroom 7D and will provide a daily list of email addresses of all credentialed media.



Note for sketch artists: no drawings of the jurors will be allowed.  The sketch artist may use a tablet for sketching but will not be allowed to transmit drawings, post on social media, or transmit any other data from the 7D courtroom.

**Overflow Seating for General Public**
The Devitt courtroom on the first floor of the courthouse will be reserved for the public. There are forty (40) seats that are available on a first come, first served basis each day of trial. Wristbands will be given to the first forty (40) people each day and wristbands are good for one day only.  General public will be encouraged to turn their wristband in to the Clerk's Office personnel if they leave before proceedings are concluded so another member of the public can be admitted.

The public seated in the Devitt courtroom will be required to power down all electronic devices, including cell phones, before entering.

Thank you for your cooperation.

# EXHIBIV'E

# Ballard Spahr
### LLP

2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2119
TEL 612.371.3211
FAX 612.371.3207
www.ballardspahr.com

Leita Walker
Tel: 612.371.6222
Fax: 612.371.3207
walkerl@ballardspahr.com

January 17, 2022

*Via E-mail (magnuson_chambers@mnd.uscourts.gov)*

The Honorable Paul A. Magnuson
Senior Judge
U.S. District Court, District of Minnesota
316 N. Robert Street
St. Paul, MN 55101

Re:    <u>Unconstitutional closure of trial</u>

Dear Judge Magnuson:

This law firm represents the undersigned organizations (the "Media Coalition"). We write on their behalf to express disappointment and dismay over the Court's plan to conduct the criminal trial of Defendants Thomas Lane, Alexander Kueng, and Tou Thao for the death of George Floyd in what amounts to a closed courtroom, in violation of the First Amendment to the U.S. Constitution. The Media Coalition respectfully requests that the Court take immediate steps to rectify the situation.

We do not need to explain to this Court the gravity of the trial, the impact Mr. Floyd's death had on the Twin Cities and the world, or the public's ongoing and intense concern for how the criminal justice system deals with those accused of killing him. As a result, ensuring the trial (which begins January 20) is open to the press and public is imperative. As the Supreme Court has recognized, where a "trial has been concealed from public view an unexpected outcome can cause a reaction that the system at best has failed and at worst has been corrupted. To work effectively, it is important that society's criminal process 'satisfy the appearance of justice,' and the appearance of justice can best be provided by allowing people to observe it." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) (quoting *Offutt v. United States*, 348 U. S. 11, 14 (1954)).

In recognition of this unassailable principle, "the right to attend criminal trials is implicit in the guarantees of the First Amendment," *id.* at 580, and "[w]hat transpires in the court room is public property," *Craig v. Harney*, 331 U.S. 367, 374 (1947). Or as the Eighth Circuit has stated, "We have an open government, and secret trials are inimical to the spirit of a republic, especially when a citizen's liberty is at stake. The public, in a way, is necessarily a party to every criminal case." *United States v. Thunder*, 438 F.3d 866, 867 (8th Cir. 2006).

The Honorable Paul A. Magnuson
January 17, 2022
Page 2

The right of access is not a merely a token or theoretical right. That is, pandemic or no, the First Amendment is not satisfied if but a few members of the press and the public are able to observe a trial. Rather, the First Amendment right of access is a right of *meaningful* access, and "[t]rial courts are obligated *to take every reasonable measure* to accommodate public attendance." *Presley v. Georgia*, 558 U.S. 209, 210 (2010) (per curiam) (emphasis added).

In *Presley*, for example, this meant that the trial court violated the Constitution when it excluded the defendant's uncle from *voir dire* on the basis that 42 potential jurors would be sitting throughout the courtroom and "[t]here just isn't space for [the public] to sit in the audience." *Id.* at 210. Likewise, in *Davis v. United States*, the Eighth Circuit concluded that allowing only 25 members of the public to attend a trial when the courtroom could hold 100 spectators was reversible error. 247 F. 394, 395, 398-99 (8th Cir. 1917) (per curiam).

Importantly, the right of access includes not just the right to observe criminal proceedings but also a *contemporaneous* right to access *and copy* exhibits and other criminal court records. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1987) ("It is clear that the courts of this country recognize a general right to inspect and copy … judicial records and documents."); *see also In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 572-73 (8th Cir. 1988) (holding that First Amendment right of access extends even to pre-trial materials such as search warrants); *In re NBC*, 635 F.2d 945, 952 (2d Cir. 1980) (recognizing right to inspect and copy "any item entered into evidence at a public session of a trial.").

Indeed, "[o]nce the evidence has become known to the members of the public, including representatives of the press, through their attendance at a public session of court, it would take the most extraordinary circumstances to justify restrictions on the opportunity of those not physically in attendance at the courtroom to see and hear the evidence, when it is in a form that readily permits sight and sound reproduction." *In re NBC*, 635 F.2d at 952; *see also In re CBS*, 828 F.2d 958, 959 (2d Cir. 1987) ("common law right to inspect and copy judicial records applies to videotaped depositions of witnesses"); *Valley Broad. Co. v. U.S. Dist. Ct.*, 798 F.2d 1289, 1293–97 (9th Cir. 1986) (granting request by the press to make copies of audio and video tapes introduced into evidence at the close of each day of trial); *United States v. Peters*, 754 F.2d 753, 755 (7th Cir. 1985) (vacating order of trial court that excluded journalist from accessing admitted exhibits during the pendency of trial); *United States v. Criden*, 648 F.2d 814, 819 (3d Cir. 1981) ("[T]here is a significant public interest in affording that opportunity contemporaneously with the introduction of the tapes into evidence in the courtroom, when public attention is alerted to the ongoing trial.").

Despite these well-established principles, the media understands that access to the trial of Messrs. Lane, Kueng, and Thao will be limited as follows:

- During *voir dire* the only people in the courtroom will be trial participants (i.e., defendants, attorneys, and court staff), potential jurors, and just two

The Honorable Paul A. Magnuson
January 17, 2022
Page 3

      members of the media. No member of the public will be admitted, not even
      members of the defendants' or George Floyd's family. No sketch artist will
      be admitted.

- During the trial itself, four members of the media plus a sketch artist will be admitted to the courtroom. The defendants and the Government will also have seats reserved for family members and others. Again, no members of the general public will be admitted.

- A closed-circuit feed of the proceedings will be streamed to two overflow rooms—one for the media and one for the general public. Due to social distancing, only about 40 people will be admitted into each overflow room. Spectators in the overflow rooms will watch the proceedings via monitors divided into four quadrants: one showing the lectern (which attorneys may or may remember to approach before speaking), one showing the witness stand, one showing the bench, and one showing the evidence. The cameras will not pan or zoom. The Court is not able to guarantee that the display of the evidence will be legible. Further, as currently configured, the camera showing the lectern will not show counsel tables, meaning that no one in the overflow room will ever lay eyes on any one of the defendants throughout the entire trial.[1] Likewise, no one in the overflow rooms will be able to observe the jurors because no camera will be trained on them even though the closed-circuit nature of the feed all but eliminates any concerns for their privacy.

- The Court has so far refused requests to make trial exhibits accessible to the Media Coalition during the trial.

To borrow words from The Honorable Judge Peter Cahill, who oversaw the state court prosecution of Derek Chauvin, "[i]t would be farcical to say that this arrangement"— the draconian restrictions on courtroom access (especially during *voir dire*), a closed-circuit feed that comes nowhere close to replicating the courtroom experience, overflow rooms that cannot possibly accommodate the number of people interested in observing this trial,[2] and

---

[1] Although the Court has offered to widen the angle shot by this camera so that the lectern and multiple counsel tables can be viewed simultaneously, it has warned that this picture is grainy and shot from so far away that it is hard to tell who is speaking, much less discern facial expressions and body language.

[2] For point of reference, at least 23.2 million Americans watched as the verdict was read in Derek Chauvin's state court trial in April 2021. Associated Press, *Nielsen: at least 23.2 million watched Chauvin verdict*, ABCNews.com (Apr. 22, 2021),

The Honorable Paul A. Magnuson
January 17, 2022
Page 4

the *de facto* sealing of trial exhibits during the pendency of trial—"provides meaningful access to the public or the press or vindicates the defendants' right to a public trial." *Order Denying Motion to Reconsider and Amend Order Allowing Audio and Video Coverage of Trial* at 3, *State v. Chauvin*, No. 27-cr-20-12646 (Henn Cnty. Dec. 18, 2020), https://mncourts.gov/mncourtsgov/media/High-Profile-Cases/27-CR-20-12646/Order12182020.pdf.[3]

Judge Cahill dealt with the challenges of the pandemic by permitting livestreaming of Mr. Chauvin's trial. The Media Coalition understands that this Court may not feel at liberty, given Judicial Conference rules, to make a similar accommodation—though it notes that even the U.S. Supreme Court has been livestreaming audio of oral arguments.[4] But notwithstanding rules prohibiting camera coverage, and with all due respect, the Media Coalition does not believe the Court has taken "every reasonable measure," *see Presley*, 558 U.S. a 210, to accommodate the press and public's ability to monitor this trial. Rather, it is effectively closing the courtroom doors in violation of the U.S. Constitution.

There are various routes to a more open trial. For example, the Court could move *voir dire* (or even the entire trial) to a larger venue and/or reduce the number of potential jurors brought in for questioning as a group so that more than two members of the media can be in the room. Likewise, it can and should improve the closed-circuit feed to the overflow rooms so members of the press and public can actually see the three men who are on trial without sacrificing their ability to follow who is speaking and what that person is saying. And it can and should ensure contemporaneous access to all trial exhibits so that journalists can review those exhibits at the end of each day as they finalize their news reports.

It is in the best interest of all involved for the media coverage of this trial to be fair and accurate and to enhance public understanding of the federal judicial system, including understanding of how juries reach their verdicts. The best way to ensure such coverage is to

---

https://abcnews.go.com/Entertainment/wireStory/nielsen-228-million-watched-chauvin-verdict-77251987.

[3] *See also Order Denying Motion to Reconsider November 4, 2020 Order Allowing Audio and Video Coverage of Trial*, *State v. Lane et al.*, Nos. 27-CR-20-12949, 27-CR-20-12951, 27-CR-20-12953 (Henn. Cnty. Jan. 11, 2022), https://mncourts.gov/mncourtsgov/media/High-Profile-Cases/27-CR-20-12951-TKL/Order.pdf; *Order Granting A/V Coverage of Trial*, *State v. Potter*, No. 27-CR-21-7460 (Henn Cnty. Nov. 9, 2021), https://mncourts.gov/mncourtsgov/media/High-Profile-Cases/27-CR-21-7460/Order-Regarding-Audio-Video-Coverage_1.pdf.

[4] Press Release, U.S. Supreme Court (Apr. 13, 2020), https://www.supremecourt.gov/publicinfo/press/pressreleases/pr_04-13-20.

The Honorable Paul A. Magnuson
January 17, 2022
Page 5

provide to the media unfettered access to the trial and the evidence it involves. For this and all the reasons discussed above, we ask that the Court adjust plans for the trial. The Media Coalition is standing by to assist in any way it can.

Sincerely,

*s/Leita Walker*

Leita Walker

On behalf of:

American Public Media Group
Association of Minnesota
  Public Educational Radio
  Stations
The Associated Press
Cable News Network, Inc.
CBS Broadcasting Inc.
Court TV Media LLC
Fox/UTV Holdings, LLC

Gannett Satellite
  Information Network,
  LLC
Hubbard Broadcasting, Inc.
Minnesota Coalition on
  Government Information
National Public Radio
NBCUniversal Media,
  LLC
The New York Times

Sahan Journal
The Silha Center for the
  Study of Media Ethics
  and Law
Star Tribune Media
  Company LLC
TEGNA, Inc.
WP Company LLC

cc:    The Honorable John R. Tunheim

# EXHIBIV'F



# UNITED STATES DISTRICT COURT

**DISTRICT OF MINNESOTA**
**734 WARREN E. BURGER FEDERAL BUILDING**
**316 NORTH ROBERT STREET**
**ST. PAUL, MINNESOTA 55101-1461**

CHAMBERS OF
**PAUL A. MAGNUSON**
JUDGE

Telephone (651) 848-1150
FAX (651) 848-1152
E-mail: Magnuson_Chambers@mnd.uscourts.gov

Wednesday, January 19, 2022

Leita Walker
BALLARD SPAHR
2000 IDS Center
80 South 8th Street
Minneapolis, MN  55402

      Re:    **<u>United States v. Thao, et al.</u>**
             21-CR-108 (PAM/TNL)

Dear Ms. Walker,

      I am in receipt of your letter dated January 17, 2022, expressing concern regarding the public's access to the upcoming trial in this matter.  I have carefully considered your arguments and suggestions, and I have concluded that the trial will go forward with the restrictions currently in place.

      As you are undoubtedly aware, the current spread of the omicron variant has created an unprecedented situation for our court system.  We must keep the jurors we have invited to the courthouse as safe as possible, and science dictates that restricting the number of people in the courtroom is the best way to do that. I appreciate the parties' willingness to accommodate Covid best practices and to forego their usual right to have their families in attendance throughout the trial, and especially their agreement to preclude family and friends from the courtroom during jury selection so that members of the media may attend the selection in person.

Letter to Leita Walker
Wednesday, January 19, 2022
Page Two

Finally, in this Circuit, the right of access to judicial records is "not absolute."  United States v. Webbe, 791 F.2d 103, 106 (8th Cir. 1986).  Indeed, the decision whether to allow the public and media to access exhibits in a case is left to my discretion.  I will make that decision at the end of the case, considering factors such as Defendants' right to a fair trial in their upcoming state-court proceeding, as well as the fact that the public and media will have access to those exhibits as they are presented in Court, and will have access to transcripts of the proceedings.

I appreciate your concerns, but I do not share them.  I believe that the media and the public will have as much access to these proceedings as is possible in this time of high Covid transmission.

Very truly yours,

United States District Court Judge