UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-108 (PAM/TNL)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S MEMORANDUM |
| v. | ) | IN CLARIFICATION |
| | ) | |
| 2.  TOU THAO, | ) | |
| 3.  J. ALEXANDER KUENG, and | ) | |
| 4.  THOMAS KIERNAN LANE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The United States of America, by and through its undersigned attorneys, files the

following memorandum to clarify its purpose in seeking to admit certain evidence.   On

February 1, 2022, Defendant Lane objected to the testimony of Christopher Douglas, who

provided use-of-force training to Defendant Lane prior to Lane's employment at the

Minneapolis Police Department ("MPD").   Specifically, Defendant Lane objected to the

testimony as irrelevant.   Tr. at 1557-58.   Although the Court ultimately overruled the

objection, to the extent that additional witnesses will be called to discuss training, whether

at MPD or prior to any of the defendants' employment with the MPD, the United States

submits the following memorandum in clarification.

## I.     Willfulness in Count 3 (Deliberate Indifference) (Thao, Kueng, Lane)

Count 3 charges all three defendants with being deliberately indifferent to Mr.

Floyd's serious medical needs.   As described below, one of the elements of Count 3

requires the government to prove that each defendant acted willfully.   The elements of

Count 3 are as follows:

**First**:   That the defendant acted under color of law;

**Second**:   That the defendant deprived Mr. Floyd of the right to be free from a police officer's deliberate indifference to his serious medical needs, meaning:

> **2(a)**   Mr. Floyd had an objectively serious medical need, which, when unaddressed, exposed him to a substantial risk of serious harm;
>
> **2(b)**   The defendant actually knew that Mr. Floyd had a serious medical need; and
>
> **2(c)**   The defendant disregarded that medical need by failing to take reasonable measures to address it;

**Third**:   *That the defendant committed the acts or omissions willfully*; and

**Fourth**:   That bodily injury and/or death resulted from the offense.

To conclude that a defendant acted "willfully" as to Count 3, the jury must find that the defendant intentionally failed to aid Mr. Floyd, knowing that Mr. Floyd had a serious medical need and that, as an officer, he was required to take reasonable measures to render medical aid.[1]   Willfulness, like other states of mind, is proved through circumstantial evidence.[2]   That is because there is no way of reading the human mind to reveal precisely what someone was thinking at any given moment.   Therefore, a defendant's state of mind can be proved indirectly from the surrounding circumstances that include, among other things: what a defendant did or failed to do; the manner and duration of the defendant's

---

[1] *See United States v. Gonzalez*, 436 F.3d 560, 573 (5th Cir. 2006) (defining deliberate indifference under § 242); *cf. United States v. Proano*, 912 F.3d 431, 442 (7th Cir. 2019) (affirming district court's jury instructions as to "willfulness" in § 242 prosecution).

[2] *United States v. Morris*, 723 F.3d 934, 941 (8th Cir. 2013) ("[W[illfulness can be demonstrated circumstantially.").

acts or omissions; the defendant's training; the defendant's experience; any statements the defendant made during or after the incident; and any other facts or circumstances in evidence that show what was in the defendant's mind.[3]

In order to prove willfulness as to Count 3, the government has and will continue to seek to admit evidence that proves what each defendant knew about their duties to render medical aid.  *See* Gov. Trial Brief, ECF No. 180, at 17-18, 21 (explaining how and why the government would seek to introduce training evidence to establish willfulness).   That evidence includes any and all training each defendant had about what is a serious medical need and what are the necessary and reasonable steps they are required to take under certain circumstances.   Training—regardless of whether the defendants underwent it while working at the MPD or at another facility or department—is evidence of what was in each of the defendant's minds at the time of the death of Mr. Floyd.

This sort of proof of willfulness is common.   For example, in prosecuting tax fraud by a tax preparer at XYZ Tax Co., the government would put on evidence that not only did the defendant receive training at XYZ Tax Co. on policies about the lawful filing of tax returns, but that the defendant also took a tax class in law school addressing similar expectations about filing tax returns.   The fact that the tax preparer took the law school class before his employment at XYZ Tax Co. does not render the law school training irrelevant; to the contrary, the law school training establishes that the defendant had ***even***

---

[3] *See Screws v. United States*, 325 U.S. 91, 107 (1945) (holding that, in determining whether a defendant acted willfully, the jury is "entitled to consider all the attendant circumstance").

*more* knowledge, or even more deeply-ingrained knowledge, of the tax requirements.

Further, this evidence of willfulness is not needlessly cumulative.   The defense has indicated that a main defense is that Kueng and Lane were "rookies" and did not have sufficient training to commit their acts and omissions willfully.   To establish willfulness, the government must put on multiple law enforcement witnesses; such evidence is not a "needless" presentation of "cumulative evidence," Fed. R. Evid. 403, because it is material to willfulness and the witnesses will speak to different training phases and sources.   *See* 1 Fed. Evid. § 4:15 (3d ed.) ("When proof offered on a point is different in character or persuasive impact from other proof, the former is not merely cumulative of the latter."). That training was repeated by multiple entities or in different subject matter areas within the same entity demonstrates that it was so ingrained in a defendant's mind that a jury may conclude that he was aware it at the time of the incident and willfully disregarded it.[4]

## II.   Reasonableness in Count 3 (Deliberate Indifference) (Thao, Kueng, Lane)

A separate element of Count 3 requires the government to prove that each defendant failed to take "reasonable measures" to address Mr. Floyd's serious medical need.   During the discussion about the admissibility of Mr. Douglas' testimony, the Court commented that Defendant Lane "tried to," or made an "attempt" to, roll Mr. Floyd onto his side.   Tr. at 1558-59.   It is possible the Court was referring to the MPD duty-to-intervene policy,

---

[4] *See United States v. Proano*, 912 F.3d 431, 442 (7th Cir. 2019) (collecting cases and explaining that, "[i]f, as here, an officer has been trained that officers should not do several things when confronted with tense situations, yet he does those things anyway, the fact that he broke from his training could make it more likely that he acted willfully").

which requires an officer to "stop or attempt to stop another sworn employee when force is being inappropriately applied or is no longer required."   Gov. Ex. 46 at 5964; *see also* Trial Testimony of Inspector Katie Blackwell on Direct Examination, Tr. at 881 ("It shall be the duty of every sworn employee present at any scene where physical force is being applied *to either stop or attempt to stop* another sworn employee when force is being inappropriately applied or is no longer required.").

As the Court is aware, Defendant Lane is not charged with failing to intervene in Count 2.   Defendant Lane is charged with deliberate indifference in Count 3.   The question for the jury as to Defendant Lane is not whether he made an "attempt," but whether he disregarded an obvious and known serious medical need by failing to take ***reasonable measures*** to address it.   The government will argue that CPR-certified Defendant Lane's failure to take any action—including his failure to do or say *anything* for almost 3 minutes after Officer Kueng reported he could not find a pulse—establishes that he failed to take "reasonable measures" to address Mr. Floyd's serious medical need.   The training evidence supports this argument.   For example, because Lane was CPR-certified and trained to provide CPR immediately if officers cannot find a pulse, the jury can find that the provision of CPR during the 3 minutes that Mr. Floyd remained on the ground would have been a "reasonable measure," and that Lane failed to take it.   (In contrast, because Lane was not trained or certified in using a chest-compression LUCAS device, and did not have one available to him during the restraint, the use of a LUCAS device after Kueng could not find a pulse is not a "reasonable measure" that Lane failed to take.)   The defense will undoubtedly argue that Lane's two questions, "Should we roll him on his

5

side?" constitute "reasonable measures" to address Mr. Floyd's serious medical need.   It

is for the jury to determine (a) what Defendant Lane did or did not do; and (b) whether

what Defendant Lane did or did not do constituted reasonable measures.   *See, e.g.*, *Greene*

*v. Werven*, 275 F.2d 134, 141 (8th Cir. 1960) ("The ultimate jury question is whether the

conduct . . . was reasonable.").

### III.   <u>Willfulness in Count 2 (Failure to Intervene) (Thao, Kueng)</u>

Finally, as the Court is aware, Count 2 charges Defendants Thao and Kueng with

failing to intervene in Officer Chauvin's excessive force.   In the same way that Count 3

requires proof of willfulness, as described below, Count 2 also requires the government to

prove that Defendants Thao and Kueng acted willfully.   The elements of Count 2 are as

follows:

**First**:   That the defendant acted under color of law;

**Second**:   That the defendant deprived Mr. Floyd of the right to be free from a police
officer's use of unreasonable force, meaning:

**2(a)**   Former officer Chauvin used objectively unreasonable force
against Mr. Floyd;

**2(b)**   The defendant observed or otherwise knew that unreasonable
force was being used against Mr. Floyd;

**2(c)**   The defendant had the opportunity and means to intervene to stop
the unreasonable force; and

**2(d)**   The defendant failed to take reasonable steps to do so;

**Third**:   *That the defendant committed the acts or omissions willfully*; and

**Fourth**:   That bodily injury and/or death resulted from the offense.

As with the defendants' medical training, the repeated training the defendants

6

received regarding a duty to intervene in another officer's unreasonable force, whether it

happened during training with the MPD or elsewhere, is relevant to the defendants'

willfulness.   Thus, the United States has and will continue to adduce evidence of prior

training in order to address the element of willfulness in both Counts 2 and 3.


Dated: February 5, 2022                                          Respectfully submitted,


CHARLES J. KOVATS, JR.                          KRISTEN CLARKE
Acting United States Attorney                        Assistant Attorney General
                                                                   Civil Rights Division


*/s/ LeeAnn Bell*                                          */s/ Samantha Trepel*
BY:   LEEANN K. BELL                             BY:   SAMANTHA TREPEL
Assistant U.S. Attorney                               Special Litigation Counsel
Attorney ID No. 0318334                            Attorney ID No. 992377 DC