UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-108 (PAM/TNL)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S RESPONSE IN |
| v. | ) | OPPOSITION TO DEFENDANTS' |
| | ) | MOTIONS UNDER RULE 29 |
| 2. TOU THAO, | ) | SEEKING JUDGMENT OF |
| 3. J. ALEXANDER KUENG, and | ) | ACQUITTAL |
| 4. THOMAS KIERNAN LANE, | ) | |
| | ) | |
| Defendants. | ) | |

The government has presented evidence as to each element of the charged counts. The Rule 29 motions, therefore, must be denied, and the jury should be permitted to return a verdict.

## I.    The Rule 29 standard requires that the evidence be viewed in the light most favorable to the government.

Federal Rule of Criminal Procedure Rule 29(a) provides that a district court "must enter a judgment of acquittal if the evidence presented at trial is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "The standard for determining whether evidence is insufficient is very strict, requiring acquittal only where there is 'no interpretation of the evidence' that would allow a reasonable jury or finder of fact to find the defendant 'guilty beyond a reasonable doubt.'" *United States v. Kuhnel*, No. CR 17-158 (JRT/BRT), 2020 WL 5849329, at *1 (D. Minn. Oct. 1, 2020) (quoting *United States v. Gomez*,

165 F.3d. 650, 654 (8th Cir. 1999)).  The court makes this determination "with very limited latitude." *United States v. Johnson*, 474 F.3d 1044, 1048 (8th Cir. 2007).

"The role of the district court is not to weigh evidence or consider the credibility of the witnesses, but rather to determine whether the Government has presented evidence on each element sufficient to support a jury verdict." *United States v. Chavez*, 230 F.3d 1089, 1091 (8th Cir. 2000); *see United States v. Kirk*, 528 F.3d 1102, 1111 (8th Cir. 2008) ("We may not assess the credibility of witnesses or weigh conflicting evidence, as these tasks are exclusively for the jury.").  In doing so, the court must view the "evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Lewis*, 895 F.3d 1004, 1008 (8th Cir. 2018) (citation and internal quotations omitted).  The Supreme Court has emphasized that "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam).  Thus, if there are competing views of the evidence, this Court must resolve them in favor of the government.  *See id.* at 7 (citing *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)).

Further, Rule 29(b) confirms that a judgment of acquittal should rarely be granted at this stage in the proceedings.  Although Rule 29(a) authorizes

courts to grant a judgment of acquittal before a case is submitted to the jury, Rule 29(b) allows the court to "reserve decision on the motion, proceed with the trial . . . , submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict." Fed. R. Crim. P. 29(b). When the court reserves ruling on the motion under Rule 29(b), it later "decide[s] the motion on the basis of the evidence at the time the ruling was reserved." *Id.*

The Advisory Committee Notes explain that the procedure of reserving ruling was added to "remove the dilemma in those close cases in which the court would feel pressured into making an immediate, and possibly erroneous, decision. . . ." *Id.* 1994 Comm. Notes. The rule is intended to balance the defendants' interest in immediate resolution of the motion with the government's interest in proceeding to a verdict. *Id.* Because the rule instructs courts to decide the motion at the time the court reserved its ruling, defendants are not presented with a Hobson's choice of presenting evidence that possibly supports the verdict or not presenting any evidence at all. *See id.* In that way, Rule 29(b) animates the Constitution's deep commitment to trial by jury where the jury, not the court, sits as the arbiter of facts.

## II.    Count 2: Defendants Tou Thao and J. Alexander Kueng—Deprivation of Rights Under Color of Law (*Failure To Intervene*).

Count Two alleges that Defendants Kueng and Thao were aware that former officer Derek Chauvin was holding his knee across George Floyd's neck as Mr. Floyd lay handcuffed and unresisting, and that Mr. Chauvin continued to hold Mr. Floyd to the ground even after Mr. Floyd became unresponsive, and Defendants Kueng and Thao willfully failed to intervene to stop Chauvin's use of unreasonable force.  Count Two further alleges that this offense resulted in bodily injury to, and the death of, George Floyd.

To assess the defendants' Rule 29 motion, the Court must consider whether the government presented evidence as to each element of the offense, which include:

| Element | Deprivation of Rights Under Color of Law: 18 U.S.C. § 242 |
|---|---|
| 1 | The defendant acted under color of law |
| 2 | The defendant deprived Mr. Floyd of the right to be free from a police officer's use of unreasonable force, meaning: |
| | **2(a)** Former officer Chauvin used objectively unreasonable force against Mr. Floyd; |
| | **2(b)** The defendant observed or otherwise knew that unreasonable force was being used against Mr. Floyd; |
| | **2(c)** The defendant had the opportunity and means to intervene to stop the unreasonable force; |
| | **2(d)** The defendant failed to take reasonable steps to do so |

| 3 | The defendant committed the acts or omissions willfully |
| 4 | Bodily injury and/or death resulted from the offense |

Defendants do not challenge there is sufficient evidence to submit Count 2 to the jury as to elements *1* (that the defendant acted under color of law), *2(a)* (that Chauvin used objectively unreasonable force), and *4* (that bodily injury and/or death resulted from the offense). The government agrees and so will focus on the elements on which the defendants claim evidence is lacking.

As to the remaining elements, the attached chart provides both the evidence and citations to the trial transcript and/or government exhibits that support the elements for each of the defendants. Exhibit 1 at 1-14. In summary, Defendants Thao and Kueng knew that unreasonable force was being used against Mr. Floyd. Body-worn camera, Milestone video, and bystander cell-phone recordings show that Thao stood directly next to Chauvin and Mr. Floyd for the first 6 minutes that Chauvin held his knee on Mr. Floyd's neck, including after Mr. Floyd lost consciousness; that Mr. Floyd told Thao directly that he could not breathe because of the knee on his neck; that Thao repeatedly looked back at Chauvin holding his knee on Mr. Floyd's neck for the remaining 3 minutes and 20 seconds of restraint; and that Thao heard— because he responded to them—bystanders beg him to check Mr. Floyd's pulse and warn him that Floyd was unresponsive. As to Defendant Kueng, the video evidence shows that he was positioned directly next to Chauvin and had his

knees and a hand on Mr. Floyd's body throughout Chauvin's restraint; that he could hear Lane ask if they should roll Mr. Floyd over and could hear Lane observe that Mr. Floyd had lost consciousness; that he could hear Lane ask if Mr. Floyd had a pulse; that he twice checked for a pulse and twice said that he could not find one; and that he remained directly next to Chauvin as Chauvin continued to hold his knee on Mr. Floyd's neck for 2 minutes and 44 seconds after Kueng said he could not find a pulse.

Defendants Thao and Kueng had the opportunity and means to intervene to stop the unreasonable force. The video evidence shows that neither was forced to make a split-second decision; they had minute after minute throughout Chauvin's 9 minute and 29 second restraint to do something. Bystanders did not gather in number and vocalize until near midway through the restraint, and they begged Thao to do the very thing that the law required him to do: intervene to get Chauvin off of Mr. Floyd's neck. For his part, Defendant Kueng was the closest officer to Chauvin, and did not move from his position throughout Chauvin's restraint.

Defendants Thao and Kueng failed to take reasonable steps to intervene because they failed to take *any* steps. The video evidence shows that neither defendant did or said *anything* to intervene to stop or attempt to stop Chauvin's use of unreasonable force. Inspector Blackwell and Lieutenant Zimmerman testified that, based on their review of the video evidence, neither defendant

6

did anything to intervene to stop or attempt to stop Chauvin's use of unreasonable force.

Finally, Defendants Thao and Kueng's failure to intervene was willful: each defendant knew that, as an officer, he was required to intervene, and each intentionally failed to do so.  The training and policy evidence establishes that both defendants were repeatedly trained and knew that an officer's use of force is no longer permitted after a subject is under control and has stopped resisting; that it is counter to MPD policy and training, and unnecessary, to apply bodyweight to a prone, handcuffed, and unresisting person's neck; that once a prone arrestee is handcuffed and compliant, officers are to move the arrestee into a side recovery or a seated position to help the arrestee breathe; and that, regardless of rank or seniority, an officer who sees a fellow officer using unlawful force has a duty to intervene to stop or attempt to stop that officer.  In addition, Kueng's statements to Sgt. Pleoger and Lt. Zimmerman—omitting how long the restraint lasted; that Chauvin held his knee on Mr. Floyd's neck; and that officers could not find a pulse—further support willfulness because they show that Kueng knew that his failure to intervene was wrong.

The evidence is sufficient as to Count 2 and defendants' motion should be denied.

III.   **Count 3: Defendants Tou Thao, J. Alexander Kueng, and Thomas Lane—Deprivation of Rights Under Color of Law (*Deliberate Indifference to Serious Medical Needs*)**

Count Three charges that Defendants Tou Thao, J. Alexander Kueng, and Thomas Lane, while acting under color of law, willfully deprived George Floyd of the right, secured and protected by the Constitution and laws of the United States, not to be deprived of liberty without due process of law, which includes an arrestee's right to be free from a police officer's deliberate indifference to his serious medical needs.  Specifically, Count Three alleges that the defendants saw George Floyd lying on the ground in clear need of medical care, and willfully failed to aid Mr. Floyd, thereby acting with deliberate indifference to a substantial risk of harm to Mr. Floyd.  Count Three charges that this offense resulted in bodily injury to, and the death of, George Floyd.  The deliberate-indifference elements are:

| Element | Deprivation of Rights Under Color of Law: 18 U.S.C. § 242 |
|---|---|
| 1 | The defendant acted under color of law |
| 2 | The defendant deprived Mr. Floyd of the right to be free from a police officer's deliberate indifference to his serious medical needs, meaning: |
|  | **2(a)** Mr. Floyd had an objectively serious medical need, which, when unaddressed, exposed him to a substantial risk of serious harm; |
|  | **2(b)** The defendant actually knew that Mr. Floyd had a serious medical need; |
|  | **2(c)** The defendant disregarded that medical need by failing to take reasonable measures to address it |

| 3 | The defendant committed the acts or omissions willfully |
| 4 | Bodily injury and/or death resulted from the offense |

Defendants do not challenge there is sufficient evidence to submit Count 2 to the jury as to elements *1* (that the defendant acted under color of law), *2(a)* (that Mr. Floyd had an objectively serious medical need), and *4* (bodily injury and/or death resulted from the offense). The government agrees and so will focus on the elements on which the defendants claim evidence is lacking.

As to the remaining elements, the attached chart provides both the evidence and citations to the trial transcript and/or government exhibits that support the elements for each of the defendants. Exhibit 1 at 15-34. In summary, the defendants actually knew that Mr. Floyd had a serious medical need. The same evidence, noted above, that establishes that Defendants Thao and Kueng knew that Chauvin was using objectively unreasonable force also establishes that they knew that Mr. Floyd had a serious medical need. Defendant Lane's own statements—asking about rolling Mr. Floyd on his side, observing that he had lost consciousness, and asking if he had a pulse— establish that he knew that Mr. Floyd had a serious medical need.

The defendants failed to take reasonable measures to address Mr. Floyd's serious medical need. Each of the three defendants failed to take reasonable measures because each failed to take *any* measures to render aid.

The video evidence establishes that they failed to take any measures, and MPD medical trainer Nicole MacKenzie, Dr. David Systrom, and Dr. Vik Bebarta all testified to this effect. They testified that Defendant Lane's questions—asking about rolling Mr. Floyd on his side and if Mr. Floyd had a pulse—were not medical aid of any kind. Nor were Defendants Kueng and Lane's pulse checks medical aid. Officer MacKenzie, Dr. Systrom, and Dr. Bebarta explained that questions and pulse checks, or assessments, are separate from medical aid; as trainer McKenzie explained, "Just merely offering a suggestion will not pump blood throughout your system." Tr. at 2052. Here, the video evidence establishes that none of the defendants took any steps to render medical aid on the ground, despite the fact that they were not forced to make a split-second decision; they had minute after minute to do something. In particular, Mr. Floyd was on the ground pleading for help and saying that he could not breathe for 4 minutes and 45 seconds; silent on the ground for 4 minutes and 48 seconds; unconscious on the ground for 4 minutes and 1 second; and, as Defendants Kueng and Lane were aware, without an ascertainable pulse on the ground for 2 minutes and 48 seconds. Thao's failure to do anything, and Kueng and Lane's failure to transition from assessment to aid under these circumstances, was not reasonable. As Officer MacKenzie, Dr. Systrom, and Dr. Bebarta explained, minutes and even seconds are critical when a person is having trouble breathing, and especially when a person has no pulse.

10

Finally, the defendants' deliberate indifference was willful: each defendant knew that, as an officer, he was required to try to aid Mr. Floyd, and each intentionally failed to do so. The training and policy evidence establishes that all three CPR-certified defendants were repeatedly trained and knew that MPD policy requires officers to render aid while awaiting EMS; that a person who is prone, handcuffed, and no longer resisting must be placed in the side recovery position; that keeping a person restrained in the prone position presents a risk of positional asphyxia; that if a person is suspected of using drugs, there is increased medical danger that also requires moving the person into the side recovery position; that a person who is unconscious requires immediate medical aid; that a person who fails to regain consciousness requires immediate medical aid; and that a person who has no ascertainable pulse requires immediate medical aid and CPR. In addition, Kueng and Lane's statements to Sgt. Pleoger and Lt. Zimmerman—omitting: how long the restraint lasted; that Chauvin held his knee on Mr. Floyd's neck; and that officers could not find a pulse—further support willfulness because they show that each knew that his failure to render aid was wrong.

The evidence is sufficient and defendants' motion should be denied.

## IV.   The defendants' arguments do not merit judgment of acquittal.

Each defendant asks this Court to enter a judgment of acquittal on factual questions that should be submitted to the jury. The evidence in the

light most favorable to the government requires this Court to deny their motions. The defendants' motions disregard the overwhelming evidence presented in the government's case-in-chief (as summarized in Exhibit 1) and disregard the standard applicable to a motion for judgment of acquittal. A Rule 29 motion for judgment of acquittal should only be granted "if there is <u>no</u> interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Dupont*, 672 F.3d 580, 582 (8th Cir. 2012) (per curiam) (quotation omitted) (emphasis added). The defendants' arguments provide *an* interpretation of the evidence, but – as summarized below – the government has offered at oral argument and in Exhibit 1 another interpretation from which a reasonable jury could convict the defendants. That alternative interpretation suffices to overcome a judgment of acquittal. The government offered evidence on each element of the offenses charged, and the defendants' Rule 29 motions should be denied.

### A.   Defendant Thao

In particular, as to Count Two, Defendant Thao suggests that he did not have the opportunity and means to intervene, element 2(c), because he had "positioned himself in the area of a traffic cone to prove [the other officers] cover." Tr. at 2983. Nevertheless, the video evidence shows that for the first 6 minutes of Chauvin's restraint, including after Mr. Floyd lost consciousness, Thao stood directly next to Mr. Floyd and Chauvin, staring down at them. For

the remaining 3 minutes and 20 seconds of the restraint, Thao was merely steps away. A reasonable jury could find that Thao had the opportunity and means to intervene.

Defendant Thao also argues that he did not "willfully" fail to intervene, element 3, because he suggested using a hobble, which "would have physically required" Mr. Floyd to be moved "out of a prone position and potentially saving him." ECF No. 266 at 7. Thao's question as to whether officers had a hobble with them—a question that he asked 5 seconds in to Chauvin's restraint, GX 9 at 20:19:19—is irrelevant to whether Thao's failure to intervene throughout the following 8-9 minutes was willful. In any event, it was Thao who suggested that officers forego the hobble, "because if we hobble him the sergeant's going to have to come in." GX 9 at 20:20:32. A reasonable jury could find that, based on his training and knowledge of Chauvin's force, Thao's failure to intervene was willful.

As to Count Three, Defendant Thao argues that he took reasonable measures to render aid, element 2(c), by radioing for EMS code 3; asking about a hobble; and telling firefighters "the correct address of the ambulance . . . when he was not required to." ECF No. 266 at 9. None of these actions— Thao's upgrading the EMS request at 2 minutes and 9 seconds in to the restraint; his asking about and then suggesting officers forego the use of a hobble at the beginning of the restraint; and his telling firefighters, after Mr.

Floyd was loaded into the ambulance and the ambulance drove away, "I guess they need you guys at Park and 36," GX 9 at 20:34:38—constitutes a measure, let alone a reasonable one, to address Mr. Floyd's medical needs. A reasonable jury could find that Defendant Thao failed to take reasonable measures to address Mr. Floyd's serious medical needs.

### B.   Defendant Kueng

As to Count Two, Defendant Kueng argues that his omissions were not "willful," element 3, because "[t]he government hasn't produced any evidence to that effect," apart from "some policies . . . this and that." Tr. at 2985. The "this and that" that the government has produced includes evidence that Defendant Kueng was repeatedly trained on MPD's use of force policy, including the duty to intervene policy GX 46 (policy); GX 74 (Academy Use of Force PPT at 13); GX 130 (Academy Manual) ("[Y]ou will be responsible . . . for the actions of your partner and others," and "You will be held responsible for your actions and inactions"); he was repeatedly trained that a neck restraint may not be used against a person who is only passively resisting, GX 46 at 5-311 II.C, GX 73 at 41; GX 74 at 4, 8, 12, 17, 21; and he was repeatedly trained that a person should be placed in the side recovery position to help them breathe, GX 46 at 5-316 III; GX 73 at 56; GX 74 at 31-32.

Defendant Kueng also suggests that he believed that Lane's questions about rolling Mr. Floyd on his side somehow satisfied Kueng's duty to

14

intervene.  Tr. at 2986.  Not so.  Kueng had an independent duty to intervene.
*See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) ("The number of officers present and able to intervene . . . in no way correlates with any one officer's duty to intercede.  Each police officer present has an independent duty to act.").  Further, Kueng was trained that he had an independent duty to intervene.  GX 46 at 5-303.01 ("It shall be the duty *of every sworn employee* present at any scene where physical force is being applied to either stop or attempt to stop another sworn employee when force is being inappropriately applied or is no longer required.") (emphasis added).  Not only did Kueng fail in his own duty to intervene, but he also rejected multiple suggestions by Lane.  *See, e.g.*, GX 5 at 2:20:40 (Lane: "Here should we get his legs up or is this good?" Kueng: "Just leave him."); *id.* at 20:23:49 (Lane: "Should we roll him on his side?" Kueng: "No.  Just leave him.").  A reasonable jury could find that Kueng willfully failed to intervene.

As to Count Three, Defendant Kueng argues that he did not know Mr. Floyd had an objectively serious medical need, element 2(b), because "he only had a short amount of time to define or discern this need," and because he could not see what was seen by "two officers that are quite senior, 10 or 8 years and 19 years, [who] are in a position to actually make the observations."  Tr. at 2989.  To the contrary, Kueng had more than 9 minutes—as Mr. Floyd repeated that he could not breathe before he gradually stopped talking,

stopped moving, lost consciousness, and lost a pulse—to discern the need, and, as the officer closest to Chauvin, with his knees and hand on Mr. Floyd, he had "a front row seat to what was going on." Tr. at 1771-72 (testimony of Dr. Systrom). A reasonable jury could find that Kueng knew that Mr. Floyd had a serious medical need.

Defendant Kueng also argues that he took reasonable measures to render aid, element 2(c), by checking Mr. Floyd's pulse and saying that he could not find one. Tr. at 2988. Doctors and MPD trainers alike have explained that a pulse check is an assessment, and assessment is not aid. *See, e.g.*, Tr. at 1905-06 (testimony of MPD medical trainer MacKenzie: pulse checks are "an assessment" and "doesn't mean you're rendering any sort of aid"); *see also* Tr. at 1709 (Dr. Systrom testimony); Tr. at 2146, 2278 (Dr. Bebarta testimony). Common sense also dictates that observing that someone does not have a pulse does not help them regain one. In any event, Kueng failed to take reasonable measures to render aid not just during the last several minutes of the encounter, but throughout the entire 9 and a half minutes that Mr. Floyd gradually asphyxiated. A reasonable jury could find that Kueng failed to take reasonable measures to address Mr. Floyd's serious medical needs.

## C.   Defendant Lane

First, Defendant Lane argues that his questions or suggestions constituted reasonable measures, or attempts, to address Mr. Floyd's serious

16

medical needs, element 2(c).  ECF No. 264 at 12-14.  The question for the jury as to Defendant Lane is not whether he made an "attempt," but whether he disregarded an obvious and known serious medical need by failing to take *reasonable measures* to address it.  Whether those attempts were reasonable under the circumstances is quintessentially a jury question.  *See, e.g.*, *Hawkins v. City of Farmington*, 189 F.3d 695, 702 (8th Cir. 1999) ("[T]he district court shall submit to a jury the questions of whether, under the facts and circumstances of this case, a seizure occurred and whether the seizure was reasonable under the standard established by the Supreme Court."); *Sloman v. Tadlock*, 21 F.3d 1462, 1468 (9th Cir. 1994) (regarding discussion of qualified immunity, "On the contrary, evaluating the reasonableness of human conduct is undeniably within the core area of jury competence. Just as the judge can most effectively determine whether a given constitutional right was 'clearly established' at a particular point in time, the jury is best suited to determine the reasonableness of an officer's conduct in light of the factual context in which it takes place.").

On the facts, a jury could easily conclude that Defendant Lane's conduct was not a reasonable measure.  Indeed, CPR-certified Defendant Lane's failure to take *any* action—including his failure to do or say anything for almost 3 minutes after Kueng reported he could not find a pulse—establishes that he failed to take "reasonable measures" to address Mr. Floyd's serious medical

need. The training evidence supports this argument. For example, because Lane was CPR-certified and trained to provide CPR immediately if officers could not find a pulse, the jury can find that the provision of CPR during the 3 minutes that Mr. Floyd remained on the ground would have been a "reasonable measure," and that Lane failed to take it. (In contrast, because Lane was not trained or certified in using a chest-compression LUCAS device, and did not have one available to him during the restraint, the use of a LUCAS device after Kueng could not find a pulse is not a "reasonable measure" that Lane failed to take.)

Defendant Lane argues that he was absolved of the obligation to take reasonable measures to render aid for the time period after he heard ambulance sirens. Not so. MPD policy requires officers to render medical aid "while awaiting EMS." GX 48, 7-350 at II.A.1. Furthermore, as Derek Smith testified, the paramedics had no idea, on arrival, that Mr. Floyd had been unconscious for 4 minutes and without an ascertainable pulse for almost 3 minutes. Tr. at 596. The only people with that information were the defendants, and they never communicated it. Paramedic Smith testified that it is *not* the case that paramedics automatically "take over the scene" on arrival: "I wasn't sure what was going on. I was trying to gather information. I didn't necessarily take over the scene." Tr. at 648. The evidence, and common sense, supports the conclusion that officers are not absolved of their duty to

18

render aid because sirens can be heard or because paramedics are collecting information on scene. *See* Testimony of Lt. Zimmerman, Tr. at 2532 ("[I]n the CPR training that I've went through for 40 years, 41 years, is you continue CPR until somebody relieves you by continuing the CPR. You don't just not do it."). Contrary to Lane's argument, the video evidence shows that Paramedic Smith did not tell officers to get out of the way when he arrived; rather, he said so when attempting to move Mr. Floyd onto the stretcher. *See also* Tr. at 648 ("I told them to get out of the way when we were loading him."). Given this evidence, the jury could reasonably find that Lane had a duty to render aid throughout the entire time period that Mr. Floyd was on the ground.

Second, Defendant Lane argues that his doing CPR in the ambulance when the paramedic told him to constituted a reasonable measure to address Mr. Floyd's serious medical needs, element 2(c). ECF No. 264 at 13-14. After Lane got into the ambulance, Paramedic Smith told him: "Alright, you do CPR." Gov. Exhibit 5 at 20:30:25. Four minutes and 49 seconds after Kueng said he could not find a pulse, Lane began CPR in the ambulance when the paramedic told him to do so. A reasonable jury can find that such a belated measure—from an officer who is CPR-certified and trained that seconds matter when a person loses a pulse—is unreasonable and in violation of Section 242.

Third, Defendant Lane argues that his failure to render aid was not willful, element 3, because he relied on and deferred to Chauvin, who "said no

twice to Lane when Lane requested putting Floyd on his side." ECF No. 264 at 14. This statement is factually incorrect: Chauvin did not say *anything* the second time Lane asked about rolling Mr. Floyd on his side. GX 5 at 20:25:38. Indeed, no officer said "no," or shot down Lane's second question.

This argument is also unavailing in light of the extensive training Lane received on positional asphyxia during and even before his employment at MPD. *See* Henn. Co. Juvenile Det. Ctr. Positional asphyxia training, Gov. Exhibit 96, at 79158 ("How can we avoid Positional Asphyxia? . . . . Once restraints are applied, position the subject in a position that doesn't restrict breathing. This should be done right away."); at 79170 ("It is critical that when a subject all of a sudden becomes quiet and still that staff check for responsiveness and vital signs. The transition from restraint to medical assistance must be quick. Staff should provide first aid . . . right away."). As Defendant Lane acknowledges, "If you're worried about excited delirium, the appropriate response, from a medical training standpoint, when the person is already handcuffed, would be putting the person in the side recovery position." ECF No. 264 at 5. Defendant Lane's training, his statements on scene, and his statements to paramedics and supervisors *after* the incident—omitting: how long the restraint lasted; that Chauvin held his knee on Mr. Floyd's neck; and that officers could not find a pulse—all support willfulness. A reasonable jury

could find that Lane's failure to take reasonable measures to address Mr. Floyd's serious medical need was willful.[1]

Finally, Defendant Lane argues that "there is no possibility Lane was aware that Floyd was suffering from a serious medical need," element 2(b). ECF No. 264 at 15. Lane's own statements during the incident—asking about rolling Mr. Floyd on his side, noting a concern about excited delirium, observing that Mr. Floyd had lost consciousness, and asking if Mr. Floyd had a pulse—demonstrate both the absurdity of this argument and that he was aware of the risk to Mr. Floyd's health and life. "While the obviousness of a risk is not conclusive and a[n officer] may show that the obvious escaped him, he would not escape liability if the evidence showed that he merely refused to

---

[1] The case law cited in Defendant Lane's motion, ECF No. 264 at 8-11, further supports denial of the defendants' Rule 29 motions. *See, e.g.*, *United States v. Gray*, 692 F.3d 514, 517 (6th Cir. 2012) (affirming district court's denial of motion for judgment of acquittal in Section 242 deliberate indifference case, and noting evidence that, in a report after the incident, the defendant-officer did not "mention[] the restraint hold or that [the victim] went unconscious as a result of the hold"); *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 479-80 (8th Cir. 2008) (affirming district court's holding that inmate did not have an objectively serious medical need that was so obvious that a layperson would recognize it where the inmate "mumbl[ed] and exhibit[ed] a blank stare," "had an unpleasant body odor," had "chapp[ed] lips," a normal pulse rate, and normal respiration rate); *United States v. Gonzales*, 436 F.3d 560, 574 (5th Cir. 2006) (affirming Section 242 deliberate indifference conviction and highlighting evidence that defendant-officers left victim in a prone position despite their training that, "due to the risk of potentially fatal asphyxiation, those pepper sprayed should be continually monitored and placed upright, never in a prone position, particularly if handcuffed").

verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Farmer v. Brennan*, 511 U.S. 825, 843, n.8 (1994). The evidence is overwhelming that Lane knew that Mr. Floyd had a serious medical need.

Defendant Lane's statements show that he knew Mr. Floyd had a serious medical need; the video evidence shows that he did not render aid while Mr. Floyd was on the ground; and Lane's training and subsequent statements show that he knew that, as an officer, he was required to try to render medical aid, but that he failed to do it anyway. "The ultimate jury question is whether the conduct . . . was reasonable." *See, e.g.*, *Greene v. Werven*, 275 F.2d 134, 141 (8th Cir. 1960). Given the evidence, attached in Exhibit 1 and construed in the light most favorable to the government, the jury should be permitted to make that determination here.

Accordingly, the government requests this Court deny the defendants' motions under Rule 29 seeking judgment of acquittal.

Dated: February 25, 2022                    Respectfully submitted,

CHARLES J. KOVATS, JR.                  KRISTEN CLARKE
Acting United States Attorney            Assistant Attorney General
                                        Civil Rights Division

*/s/ LeeAnn Bell*
BY:  LEEANN K. BELL                      */s/ Samantha Trepel*
Assistant U.S. Attorney                  BY:  SAMANTHA TREPEL
Attorney ID No. 0318334                  Special Litigation Counsel
                                        Attorney ID No. 992377 DC

22