II.    **Count 2: Defendants Tou Thao and J. Alexander Kueng—Deprivation of Rights Under Color of Law (*Failure To Intervene*).**

| 2(b).  The defendant observed or otherwise knew that unreasonable force was being used against Mr. Floyd. | |
|---|---|
| **Defendant Thao:   Evidence** | **Source** |
| Stood directly next to Chauvin and Mr. Floyd for first 6 minutes that Chauvin held his knee on Mr. Floyd's neck:<br><br>  -   Entirety of time that Mr. Floyd repeated that he could not breathe and begged for help<br><br>  -   Including after Mr. Floyd stopped speaking (at 20:23:59)<br><br>  -   Including after Mr. Floyd lost consciousness (at or around 20:24:46) | GE 9 (Thao BWC) at 20:19:14-20:25:21;<br><br>GE 27 (Thao/ Milestone video) at 20:19:14-20:25:21 |
| Heard directly from Mr. Floyd that Floyd could not breathe because of the knee in his neck | GE 9 at 20:21:53 (Floyd to Thao: "I can't breathe! Please, a knee in my neck, I can't breathe") |
| Repeatedly looked back at Chauvin holding his knee on Mr. Floyd's neck for remaining 3 minutes and 20 seconds of restraint | GE 27 (Thao/ Milestone video) and GE 14 (Milestone video) at 20:25:21-20:28:43<br><br>GE 17 (Frazier video) at 4:29-7:53<br><br>GE 19 (Hansen video) at 0:00-3:34 |

**Attachment 1**

| | |
|---|---|
| Heard from bystanders that Chauvin was stopping Mr. Floyd's breathing | GE 9 at 20:23:36 (Bystander: "A jujitsu move bro? You're trapping his breathing right there"; Thao: "We're done. Okay. Okay.");<br><br>At 20:27:18 (Bystander: "He's still on the ground? You're still on him? Get the fuck off him! He's like dying, bro! What are you doing? He's dying!") |
| Heard from bystanders that Mr. Floyd lost consciousness | *E.g.*, GE 9 at 20:25:30 ("He's not responsive right now!"); ("Look at him!");<br><br>At 20:24:44 (Bystander: "He's about to pass out"; Thao: "That's what happens layin' on the ground") |
| Bystanders, including off-duty firefighter, begged him to check pulse or ask other officers to do so | *E.g.*, GE 9 at 20:25:42 ("Check him for a pulse. Please. Check for a pulse. Check for a pulse!"); 20:26:20 ("Thao, check his pulse!") |
| We know that he heard bystanders because he responded to them | *E.g.*, GE 9 at 20:25:58 ("Check his pulse, bro. Bro, check his pulse." Thao: "Don't do drugs, guys.")<br><br>*Id.* at 20:27:05 (Firefighter Hansen: "Do you have a pulse?" Thao: "I'm busy trying to deal with you guys right now." Hansen: "Okay, do *they* have a pulse?") |
| *See also* evidence supporting element 6 (willfulness) | |

| Defendant Kueng:   Evidence | Source |
|---|---|
| Positioned on Mr. Floyd's mid-section, directly next to Chauvin, the entire time that Chauvin held his knee on Mr. Floyd's neck, as Mr. Floyd:<br><br>- Repeated that he could not breathe and begged for help<br><br>- Stopped speaking;<br><br>- Stopped moving;<br><br>- Lost consciousness;<br><br>- And lost a pulse. | GE 7 (Kueng BWC) at 20:19:14-20:30:00;<br><br>Tr. at 1771-72 (testimony of Dr. Systrom: "I think from my review, counsel, respectfully, Mr. Kueng had a front row seat to what was going on"). |
| Could hear Lane ask if they should roll Mr. Floyd on his side and responded to Lane[1] | GE 7 at 20:23:48 (Lane: "Roll him on his side?" Kueng: "Just leave him.") |
| Could hear Lane observe that Mr. Floyd had lost consciousness | GE 7 at 20:24:44 (Lane: "Yeah I think he's passing out.") |
| Could hear Lane ask if Mr. Floyd had a pulse | GE 7 at 20:25:50 (Lane: "You got one?") |
| Twice checked for a pulse and twice said that he could not find one | GE 34 (Kueng and Lane side-by-side BWC with Kueng audio) at 20:25:52 Kueng first pulse check; 20:25:59 Kueng "I can't find one"; 20:26:07 Kueng |

---

[1] *Cf. Jones v. City of Cincinnati*, 507 F. App'x 463, 469 (6th Cir. 2012) ("We also assume that all six officers (1) were aware or could infer that Jones was at risk for positional asphyxia and (2) inferred that Jones was at risk by 6:02:32 a.m. when Officer Slade first asked, 'How 'bout we roll him?'").

| | second pulse check; 20:26:12 Kueng "I can't find one" |
|---|---|
| Remained directly next to Chauvin as Chauvin continued to hold his knee on Mr. Floyd's neck for 2 minutes and 44 seconds after Kueng said he could not find a pulse. | GE 7 at 20:25:59-20:28:43 |
| *See also* evidence supporting element 6 (willfulness) | |

**2(c) The defendant had the opportunity and means to intervene to stop the unreasonable force.**

| Defendant Thao:  Evidence | Source |
|---|---|
| Chauvin held his knee on Mr. Floyd's neck for 9 minutes and 29 seconds. | GE 9 at 20:19:14-20:28:43 |
| Thao stood directly next to Chauvin and Mr. Floyd, looking down at them, for the first 6 minutes. | GE 9 (Thao BWC) at 20:19:14-20:25:21; GE 27 (Thao/ Milestone video) at 20:19:14-20:25:21 |
| For the remaining 3 minutes and 20 seconds of restraint, was only steps away from Chauvin. | GE 27 (Thao/ Milestone video) at 20:25:21-20:28:43 GE 17 (Frazier video) at 4:29-7:53 |
| Bystanders did not gather in number and vocalize until near-midway through the restraint. | GE 27 (Thao/ Milestone video) at 20:19:14-20:28:43 |
| Bystanders were begging Thao to intervene. | GE 9 at, e.g., 20:24:00 ("Bro just get him off the ground. You could get him off the ground."); 20:26:09 ("So you call what he doin' okay?"); 20:27:08 (Firefighter Hansen: "Do *they* have a |

4

| | |
|---|---|
| | pulse? Tell them to check for one. Right now. Tell them to check one, I swear to god."); 20:28:05 ("Thao are you gonna—you're gonna let him keep that like that? You gonna let him kill that man in front of you?") |
| | Tr. at 1121 (Inspector Blackwell testimony: Q: "Did you see anything in the video that you watched that would have prevented Officer Thao from complying with the MPD policy and training on duty to intervene?" A: "I did not."); at 1122 (Q: "So with respect to . . . the bystanders . . . did you observe anything that would have prevented Defendant Thao from complying with the policy…" A: "I did not."); |
| | Tr. at 2474 (Lt. Zimmerman testimony: "Based on what I saw in the video . . . [the bystanders] weren't a threat. They were actually trying to help, with their suggestions, help Mr. Floyd be able to breathe."; at 2475 "[Based on watching this video and listening to what the crowd was saying is they were trying to help the officers to help . . . Mr. Floyd."); |
| | Tr. at 2528 (Lt. Zimmerman testimony: The bystanders were saying "[t]hat Mr. Floyd was dying and that he needed to, you know, let him up and— with what they were saying, it appeared to me that |

| | they were offering more intervention than the police officers were.") |
|---|---|
| **Defendant Kueng:   Evidence** | **Source** |
| Chauvin held his knee on Mr. Floyd's neck for 9 minutes and 29 seconds. | GE 7 at 20:19:14-20:28:43 |
| Was the closest officer to Chauvin; positioned directly next to him throughout the entire 9 minutes and 29 seconds. | GE 7 at 20:19:14-20:28:43 |
| Not otherwise engaged or changing position. | *E.g.*, GE 7 at 20:22:18-20:22:28 (picking gravel out of tire tread); at 20:24:55 (Chauvin: "You guys alright though?" Kueng: "Good so far.")<br><br>Tr. at 1126 (Inspector Blackwell testimony: Q: "What, if anything, did you observe in the video that you watched that would have prevented or could have prevented Mr. Kueng from complying with the MPD policy and training on the duty to intervene?" A: "Nothing.") |

| **2(d)  The defendant failed to take reasonable steps to do so.** | |
|---|---|
| **Defendant Thao:   Evidence** | **Source** |
| Did not do or say *anything* to intervene to stop or attempt to stop Chauvin. | GE 9 at 20:19:14-20:28:43;<br><br>Tr. at 1120-21 (Inspector Blackwell testimony that Thao's actions were inconsistent with duty to |

| | |
|---|---|
| | intervene and that "I didn't see any part of duty to intervene on the video"); |
| | Tr. at 2470-71 (Lt. Zimmerman testimony: "Officer Thao didn't intervene, did not try to put Mr. Floyd in a recovery position, didn't try to do CPR on Mr. Floyd, didn't try to move Chauvin off of . . . his neck. So he did nothing to intervene.") |
| | Tr. at 2523 (Lt. Zimmerman testimony: Q: "Did you see Officer Thao attempt to intervene?" A: "No.") |
| | Tr. at 2818 (Chief Longo testimony: "I think [Thao] acted contrary to generally accepted police practices by not intervening. . . . Because he took no steps to intervene."). |
| **Defendant Kueng:   Evidence** | **Source** |
| Did not do or say *anything* to intervene to stop or attempt to stop Chauvin. | GE 7 at 20:19:14-20:28:43; |
| | Tr. at 1125 (Inspector Blackwell testimony that Kueng's actions were inconsistent with duty to intervene and that she did not see him take any steps to intervene); |
| | Tr. at 2470 (Lt. Zimmerman testimony: "Officer Kueng didn't roll him over, put him in the recovery position, didn't make Chauvin move off of his neck, didn't do anything as far as intervening.") |

| | Tr. at 2523 (Lt. Zimmerman testimony: Q: "Did you see Officer Kueng attempt to intervene?" A: "No.")<br><br>Tr. at 2823 (Chief Longo testimony) ("I believe Mr. Kueng's conduct was contrary to generally accepted policing practices with respect to his duty to intervene. . . . He saw Mr. Floyd pinned to the ground. He helped in that regard."). |
|---|---|

| 3.  The defendant committed the acts or omissions willfully. | |
|---|---|
| For purposes of Count Two: The defendant knew that, as an officer, he was required to intervene, but he intentionally failed to do it. | |
| **Defendant Thao:  Evidence** | **Source** |
| Thao knew he was required to intervene because he repeatedly learned through MPD policy and training that:<br><br>- An officer's use of force is no longer permitted after a subject is under control and has stopped resisting;<br><br>- It is counter to MPD policy and training, and unnecessary, to apply bodyweight to a prone, handcuffed, and unresisting person's neck;<br><br>- Once a prone arrestee is handcuffed and compliant, officers are to move the arrestee into a side recovery or a seated position to help the arrestee breathe; and<br><br>- Regardless of rank or seniority, an officer who sees a fellow officer using unlawful force has a duty to intervene to stop or attempt to stop that officer. | GE 57, 58 (Thao signatures re: responsibility for knowing policies);<br><br>GE 46 (MPD use of force policy) at 5-301.A ("Sanctity of life and the protection of the public shall be the cornerstones of the MPD's use of force policy");<br><br>At 5-301.01 (requirements based on Fourth Amendment "reasonableness" standard);<br><br>At 5-303.01 (Duty to Intervene policy) (A. "Sworn employees have an obligation to protect the public and other employees."; B. "It shall be the duty of every sworn employee present at any scene where physical force is being applied to either stop or attempt to stop another sworn employee when force is being inappropriately applied or is no longer required.");<br><br>At 5-311 II.C. ("Neck restraints shall not be used against subjects who are passively resisting as defined by policy."); |

| | |
|---|---|
| | At 5-316 III ("**Side Recovery Position:** Placing a restrained subject on their side in order to reduce pressure on his/her chest and facilitate breathing"); |
| | GE 59 (Thao training records documenting 1,014 hours of MPD training); |
| | GE 61 (2018 Defensive Tactics PPT) at 8 (proportional force); at 15 (duty to intervene policy); at 53 (neck restraints shall not be used against subjects who are passively resisting); at 58 (side recovery position); at 60 (side recovery position "ASAP"); |
| | GE 62 (2019 Defensive Tactics lesson plans) at 6 (Instructor demonstration: "Breakdown, neck restraint, lower to ground, prone handcuff, sit opponent up, and bring opponent to standing"; "Drill…subject from prone to standing"; "Drill-Prone to standing"); |
| | GE 63 (2019 Defensive Tactics PPT) at 9 (proportional force); at 13 (duty to intervene policy); at 21 (neck restraints shall not be used against subjects who are passively resisting); at 53 (side recovery position "ASAP") |

| | |
|---|---|
| *See also* evidence supporting element 3 (defendant knew that unreasonable force was being used against Mr. Floyd). | |
| **Defendant Kueng:   Evidence** | **Source** |
| Kueng knew he was required to intervene because he repeatedly learned through MPD policy and training that:<br><br>- An officer's use of force is no longer permitted after a subject is under control and has stopped resisting;<br><br>- It is counter to MPD policy and training, and unnecessary, to apply bodyweight to a prone, handcuffed, and unresisting person's neck;<br><br>- Once a prone arrestee is handcuffed and compliant, officers are to move the arrestee into a side recovery or a seated position to help the arrestee breathe; and<br><br>- Regardless of rank or seniority, an officer who sees a fellow officer using unlawful force has a duty to intervene to stop or attempt to stop that officer.[2] | GE 66, 67 (Kueng signatures re: responsibility for knowing policies);<br><br>GE 46 (MPD use of force policy) at 5-301.A ("Sanctity of life and the protection of the public shall be the cornerstones of the MPD's use of force policy");<br><br>At 5-301.01 (requirements based on Fourth Amendment "reasonableness" standard);<br><br>At 5-303.01 (Duty to Intervene policy) (A. "Sworn employees have an obligation to protect the public and other employees."; B. "It shall be the duty *of every sworn employee* present at any scene where physical force is being applied to either stop or attempt to stop another sworn employee when force is being inappropriately applied or is no longer required.") (emphasis added); |

[2] *Cf. Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) ("The number of officers present and able to intervene . . . in no way correlates with any one officer's duty to intercede.  Each police officer present has an independent duty to act."); *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981) ("We conclude although Crowe was a subordinate the evidence is sufficient to hold him jointly liable for failing to intervene if a

| | |
|---|---|
| | Tr. at 2439 (Lt. Zimmerman testimony: Regarding the duty to intervene, "There's no time on the job limit or minimum. The badge that we all wear is the same badge and we all have the same responsibility.")<br><br>Tr. at 2472 (Lt. Zimmerman testimony: "[W]hen we take our oath to be police officers and they pin the badge on us, it doesn't mean that you get a free pass for a day or a week or six months or a year. It means that you're responsible for a person's safety just as much as I would be or as the chief of police would be. We all take the same oath.")<br><br>At 5-311 II.C. ("Neck restraints shall not be used against subjects who are passively resisting as defined by policy.");<br><br>At 5-316 III ("**Side Recovery Position:** Placing a restrained subject on their side in order to reduce pressure on his/her chest and facilitate breathing");<br><br>GE 103 (Kueng Henn. Tech. Transcript);<br><br>GE 68 (Kueng training records); |

_____

fellow officer, albeit his superior, was using excessive force and otherwise was unlawfully punishing the prisoner.").

12

| | GE 130 (Academy Manual) at 25, 26 ("As a Police Officer you will be responsible not only for your actions but also for the actions of your partner and others. . . . You will be held responsible for your actions and inactions."); at 36 (use of force policy); at 43 (neck restraint policy); |
| | GE 73 (Academy Use of Force PPT) at 13 (duty to intervene policy); at 41 (neck restraints shall not be used against subjects who are passively resisting); at 56 (side recovery position); |
| | GE 74 (Academy Defense Tactics Lesson Plans) at 4 ("Do not continue to apply the . . . neck restraint after you are aware that they have completely passed out."); at 8 (neck restraints shall not be used against persons passively resisting); at *id.* ("If unconsciousness occurred, request EMS immediately…loosen clothing & jewelry around the SUB's neck area, check airway & breathing—start CPR if needed"); at 12 (same); at 17 (do not apply neck restraint after unconscious); at 26 (same); at 31 (side recovery position); at 32 (side recovery position ASAP); |
| | GE 77 (Kueng Academy exam answers) at No. 8 (duty to truthfully answer questions); at No. 9 re: who oversees a scene (correctly answered: "Senior officer of the 1st squad to arrive at the scene," and |

| | |
|---|---|
| | not one of the other options, "Senior officer at the scene"); Tr. at 2577-78 (testimony of Chief Kelly McCarthy: "Duty to intervene, it's one of those core learning objectives that is so important that we bring it through all of your education, is simply that you have an obligation not only to ensure that citizens are acting appropriately, but that your fellow officers and other government officials are also acting in a legal, ethical, and moral way.") |
| Kueng's omissions to Lt. Zimmerman show that he knew that his failure to intervene was wrong. | GE 5 at 21:56:30 (Kueng and Lane's statements to Lt. Zimmerman) (omitting how long the restraint lasted; that Chauvin held his knee on Mr. Floyd's neck; that officers could not find a pulse) GE 45 at 5-101 (MPD truthfulness policy: "Officers shall not willfully or knowingly make an untruthful statement, verbally or written, or knowingly omit pertinent information pertaining to his or her official duty as a Minneapolis police officer.") |
| *See also* evidence supporting element 3 (defendant knew that unreasonable force was being used against Mr. Floyd). | |

III.    **Count 3: Defendants Tou Thao, J. Alexander Kueng, and Thomas Lane—Deprivation of Rights Under Color of Law (*Deliberate Indifference to Serious Medical Needs*)**

| 2(b)  The defendant actually knew that Mr. Floyd had a serious medical need. | |
|---|---|
| **Defendant Thao:   Evidence** | **Source** |
| Stood directly next to Chauvin and Mr. Floyd for first 6 minutes of restraint<br><br>- Entirety of time that Mr. Floyd repeated that he could not breathe and begged for help<br><br>- Including after Mr. Floyd stopped speaking (at 20:23:59)<br><br>- Including after Mr. Floyd lost consciousness (at or around 20:24:46) | GE 9 (Thao BWC) at 20:19:14-20:25:21;<br><br>GE 27 (Thao/ Milestone video) at 20:19:14-20:25:21 |
| Demonstrated awareness that Mr. Floyd was likely under the influence | GE 9 and 27 at 20:21:50 (Thao to Floyd: "What are you on?") |
| Heard directly from Mr. Floyd that Floyd could not breathe because of the knee in his neck | *Id.* at 20:21:53 (Floyd to Thao: "I can't breathe! Please, a knee in my neck, I can't breathe") |
| Repeatedly looked back at Chauvin and Mr. Floyd for remaining 3 minutes and 20 seconds of restraint | GE 27 (Thao/ Milestone video) at 20:25:21-20:28:43<br><br>GE 17 (Frazier video) at 4:29-7:53<br><br>GE 19 (Hansen video) at 0:00-3:34 |

| | |
|---|---|
| Heard from bystanders that Mr. Floyd lost consciousness | *E.g.*, GE 9 at 20:25:30 ("He's not responsive right now!"); ("Look at him!") |
| Bystanders, including off-duty firefighter, begged him to check pulse or ask other officers to do so | *E.g.*, GE 9 at 20:25:42 ("Check him for a pulse. Please. Check for a pulse. Check for a pulse!"); 20:26:20 ("Thao, check his pulse!") |
| We know that he heard bystanders because he responded to them | *E.g.*, GE 9 at 20:25:58 ("Check his pulse, bro. Bro, check his pulse." Thao: "Don't do drugs, guys.")<br><br>*Id.* at 20:27:05 (Firefighter Hansen: "Do you have a pulse?" Thao: "I'm busy trying to deal with you guys right now." Hansen: "Okay, do *they* have a pulse?") |
| *See also* evidence supporting element 5 (willfulness) | |
| **Defendant Kueng:   Evidence** | **Source** |
| Positioned on Mr. Floyd's mid-section; had his knees and a hand on Mr. Floyd throughout the entire period that Mr. Floyd:<br><br>- Repeated that he could not breathe and begged for help<br>- Stopped speaking;<br>- Stopped moving;<br>- Lost consciousness; | GE 7 (Kueng BWC) at 20:19:14-20:30:00;<br><br>Tr. at 1771-72 (testimony of Dr. Systrom: "I think from my review, counsel, respectfully, Mr. Kueng had a front row seat to what was going on"). |

16

| | |
|---|---|
| - And lost a pulse. | |
| Demonstrated awareness that Mr. Floyd was likely under the influence | GE 7 at 20:20:58 (Thao: "Is he high on something?" Kueng: "I believe so.") |
| Could hear Lane ask if they should roll Mr. Floyd on his side and responded to Lane | GE 7 at 20:23:48 (Lane: "Roll him on his side?" Kueng: "Just leave him.") |
| Could hear Lane observe that Mr. Floyd had lost consciousness | GE 7 at 20:24:44 (Lane: "Yeah I think he's passing out.") |
| Could hear Lane ask if Mr. Floyd had a pulse | GE 7 at 20:25:50 (Lane: "You got one?") |
| Twice checked for a pulse and twice said that he could not find one | GE 34 (Kueng and Lane side-by-side BWC with Kueng audio) at 20:25:52 Kueng first pulse check; 20:25:59 Kueng "I can't find one"; 20:26:07 Kueng second pulse check; 20:26:12 Kueng "I can't find one" |
| *See also* evidence supporting element 5 (willfulness) | |
| **Defendant Lane:  Evidence** | **Source** |
| Positioned at Mr. Floyd's legs and feet throughout the entire period that Mr. Floyd:<br><br>- Repeated that he could not breathe and begged for help<br><br>- Stopped speaking; | GE 5 (Lane BWC) at 20:19:14-20:30:00 |

17

| | |
|---|---|
| - Stopped moving;<br><br>- Lost consciousness;<br><br>- And lost a pulse. | |
| Demonstrated awareness that Mr. Floyd was likely under the influence | GE 5 at 20:20:58 (Thao: "Is he high on something?" Lane: "I'm assuming so.") |
| Could hear and acknowledged bystanders' statements about Mr. Floyd's deteriorating condition | *E.g.*, GE 5 at 20:24:42 (Bystander: "He's about to pass out." Lane: "Yeah I think he's passing out."); 20:25:45 (Firefighter Hansen: "Check for a pulse. Please. Check for his pulse!" Lane: "You got one?") |
| Made additional statements demonstrating his knowledge of Mr. Floyd's medical distress | *E.g.*, GE 5 at 20:23:49 (Lane: "Should we roll him on his side?" Kueng: "No, just leave him." Chauvin: "Nope, stayin' put the way you got him.");<br><br>20:25:39 (Lane: "Should we roll him on his side?" [no response]) |
| *See also* evidence supporting element 5 (willfulness) | |

| **2(c) The defendant disregarded that medical need by failing to take reasonable measures to address it.** | |
|---|---|
| **Defendant Thao:  Evidence** | **Source** |
| Did not take *any* measures to render medical aid. | GE 9 (Thao BWC) at 20:19:14-20:30:00; |

| | Tr. at 1709 (Dr. David Systrom testimony; Q: "And based on your review of the video evidence in this case, what, if any, medical care did you see any officer provide to George Floyd before Mr. Floyd was loaded into the ambulance?" A: "I did not see any."); |
| --- | --- |
| | Tr. at 1907-09 (MPD medical trainer Nicole MacKenzie testimony: Thao's actions were "inconsistent" with MPD policy and training on medical aid; as to Thao, "I didn't see any appearances to render aid."); |
| | Tr. at 2173 (Dr. Vik Bebarta testimony: Q: "In your review of the video, what medical intervention, if any, was offered to Mr. Floyd before he was placed in the ambulance?" A: "None.") |
| | Tr. at 2828-29 (Chief Longo testimony: Q: "Do you have an opinion as to whether Mr. Thao's conduct was consistent or inconsistent with the duty to provide medical aid?" A: "I think it is inconsistent. . . . Because he didn't do anything."). |
| **Defendant Kueng:   Evidence** | **Source** |
| Did not take *any* measures to render medical aid. | GE 7 (Kueng BWC) at 20:19:14-20:30:00;<br><br>Tr. at 1709 (Dr. David Systrom testimony; Q: "And based on your review of the video evidence in this case, what, if any, medical care did you see any |

|  |  |
|---|---|
|  | officer provide to George Floyd before Mr. Floyd was loaded into the ambulance?" A: "I did not see any."); |
|  | Tr. at 1896, 1902 (MPD medical trainer Nicole MacKenzie testimony: Kueng's actions were "inconsistent" with MPD policy and training on medical aid); at 1905-06 (pulse checks are "an assessment" and "doesn't mean you're rendering any sort of aid"); |
|  | Tr. at 2173: (Dr. Vik Bebarta testimony: Q: "In your review of the video, what medical intervention, if any, was offered to Mr. Floyd before he was placed in the ambulance?" A: "None."); |
|  | Tr. at 2829 (Chief Longo testimony: Q: "And what is your opinion about whether Mr. Kueng's conduct was consistent or inconsistent with the duty to provide medical aid?  A: "I think it was contrary to generally accepted policing practices. . . . Again, because he didn't take any steps to—other than to check pulse, which is not rendering medical aid.") |

| Defendant Lane:  Evidence | Source |
|---|---|
| Did not take *any* measures to render medical aid on the ground, despite the fact that Mr. Floyd was | GE 5 (Lane BWC) at 20:19:14-20:30:00; <br><br> Tr. at 1709 (Dr. David Systrom testimony; Q: "And based on your review of the video evidence in this case, what, if any, medical care did you see any |

| | |
|---|---|
| - On the ground pleading for help and that he could not breathe for 4 minutes and 45 seconds [20:19:14-20:23:59];<br><br>- Silent on the ground for 4 minutes and 48 seconds [20:23:59-20:28:47];<br><br>- Unconscious on the ground for 4 minutes and 1 second [20:24:46 (Lane: "he's passing out")-20:28:47]<br><br>- Without an ascertainable pulse on the ground for 2 minutes and 48 seconds [20:25:59 (Kueng: "I can't find one")- 20:28:47] | officer provide to George Floyd before Mr. Floyd was loaded into the ambulance?"<br>A: "I did not see any.");<br><br>Tr. at 1902-03 (MPD medical trainer Nicole MacKenzie testimony: Lane's actions were "inconsistent" with MPD policy and training on medical aid); at 1905-06 (pulse checks are "an assessment" and "doesn't mean you're rendering any sort of aid");<br><br>Tr. at 2173: (Dr. Vik Bebarta testimony: Q: "In your review of the video, what medical intervention, if any, was offered to Mr. Floyd before he was placed in the ambulance?" A: "None.");<br><br>Tr. at 2531-32 (Lt. Zimmerman testimony: "[Lane] didn't . . . render first aid. He didn't put Mr. Floyd in a side recovery position. Mr. Floyd was handcuffed by him and his partner, and they should have taken care of the person they had in custody and it's that simple.")<br><br>Tr. at 2830 (Chief Longo testimony: Q: "What is your opinion about whether Mr. Lane's conduct was consistent or inconsistent with the duty to provide medical aid?" A: "Contrary to generally accepted police practices. . . . For the same reasons. Officer Lane took no steps to provide medical care . . . ."). |

| | |
|---|---|
| Pulse checks are not medical aid. | Tr. at 1905-06 (MPD medical trainer MacKenzie testimony: pulse checks are "an assessment" and "doesn't mean you're rendering any sort of aid");<br><br>Tr. at 2278 (Dr. Bebarta testimony on cross-examination: Q: "You testified that the paramedic checking his carotid artery to see if he had a pulse was also providing care?" A: "That's actually assessing for a pulse, not providing care.");<br><br>Tr. at 1709 (Dr. Systrom testimony: Q: "And based on your review of the video evidence in this case, what, if any, medical care did you see any officer provide to George Floyd before Mr. Floyd was loaded into the ambulance?" A: "I did not see any.");<br><br>Tr. at 2146 (Dr. Bebarta testimony: Q: "What medical aid, if any, did you see any of the four officers provide Mr. Floyd before Mr. Floyd was loaded into the ambulance?" A: "I did not see any medical aid provided.") |
| Questions are not medical aid. | Tr. at 2052 (MPD medical trainer MacKenzie testimony: "Suggesting rendering aid and actually rendering aid are two very different things."; "Just merely offering a suggestion will not pump blood throughout your system.");<br><br>Tr. at 2531 (Lt. Zimmerman testimony: Q: "Mr. Gray asked you a line of questions about things Mr. Lane said. Do you remember those questions?" A: |

| | |
|---|---|
| | "Yes." Q: "What, if anything, did Mr. Lane do to provide aid to Mr. Floyd when he was on the ground?" A: "Nothing.") |
| Seconds and minutes are critical when a person has no pulse. | Tr. at 1708 (Dr. Systrom testimony: there is "about a ten percent fall per minute" in chance of survival after cardiac arrest; he observed Mr. Floyd being restrained for "about three minutes" following the onset of cardiac arrest); <br><br> Tr. at 1838 (MPD medical trainer MacKenzie testimony: ("If they're unsure, they can ask somebody else to check a pulse, but if they're not getting that pulse within ten seconds, then you immediately begin CPR."); at 2047 ("They need to act immediately."); <br><br> Tr. at 2176 (Dr. Bebarta testimony: "It's taught across the country in basic life support, Red Cross -- that every minute that a life-saving maneuver is not given, CPR or chest compressions, they have a 10 percent higher risk of dying"; "So the longer that goes on, the higher risk of dying, every minute, every second.") |

| |
|---|
| **3.  The defendant committed the acts or omissions willfully.** |
| For purposes of Count Three: The defendant knew that, as an officer, he was required to try to aid Mr. Floyd, but he intentionally failed to do it. |

| **Defendant Thao:  Evidence** | **Source** |
|---|---|

| | |
|---|---|
| Thao knew he was required to render aid because of what he learned through MPD policy:<br><br>- Policy requires officers to render aid while awaiting EMS; and<br><br>- Policy informs officers of the dangers of the prone position and the need to use the side recovery position. | GE 57, 58 (Thao signatures re: responsibility for knowing policies)<br><br>GE 48 (Emergency Medical Response Policy 7-350) at II.A. ("[D]elay in treatment could potentially aggravate the severity of the medical crisis"); at II.A.1. ("*While awaiting EMS*, MPD employees assisting an individual having an acute medical crisis shall provide any necessary first aid consistent with MPD training, as soon as practical.") (emphasis added);<br><br>GE 46 (Use of Force Post Incident Requirements 5-306) ("As soon as reasonably practical, determine if anyone was injured *and* render medical aid consistent with training *and* request [EMS] if necessary.") (emphasis added).; *Id.* at 5-316 ("**Side Recovery Position:** Placing a restrained subject on their side in order to reduce pressure on his/her chest and facilitate breathing.") |
| He knew because he was CPR-certified and trained regarding:<br><br>- The need to place a person who is prone, handcuffed, and no longer resisting in the side recovery position;<br><br>- The dangers of positional asphyxia and keeping a person restrained in the prone position; | GE 59 (Thao records documenting medical training);<br><br>GE 60 (Thao CPR certification card);<br><br>GE 61 (2018 Defensive Tactics PPT) (side recovery and prone positions at 31946, 31948); |

| | |
|---|---|
| - The increased medical danger if substance use is suspected; | GE 63 (2019 Defensive Tactics PPT) (side recovery and prone positions at 53310, 53325); |
| - The need to aid someone who has lost consciousness; | GE 75 (2012 Administrative Announcement re: positional asphyxia training video); |
| - The dangers of failure to regain consciousness; and | GE 76 (2012 positional asphyxia training video); |
| - The need for immediate CPR if no pulse is found. | GE 86 (2019 CPR PPT) (provide CPR while awaiting EMS at 43092, 43098, 43102); Tr. at 1873-1881 (MPD medical trainer Nicole MacKenzie testimony re: medical training received by Thao) |
| He was not forced to make a split-second decision; he made a conscious choice over the course of 9 minutes.[3] | GE 27 (Thao/ Milestone video) at 20:19:14-20:30:00 |
| *See also* evidence supporting element 3 (defendant actually knew that Mr. Floyd had a serious medical need). | |
| **Defendant Kueng:  Evidence** | **Source** |
| Kueng knew he was required to render aid because of what he learned through MPD policy: | GE 66, 67 (Kueng signatures re: responsibility for knowing policies) GE 48 (Emergency Medical Response Policy 7-350) at II.A. ("[D]elay in treatment could potentially |

---

[3] *C.f. Cole Estate of Richards v. Hutchins*, 959 F.3d 1127, 1134-35 (8th Cir. 2020) ("[A] few seconds is enough time to determine an immediate threat has passed, extinguishing a preexisting justification" for force).

| | |
|---|---|
| - Policy requires officers to render aid while awaiting EMS; and<br><br>- Policy informs officers of the dangers of the prone position and the need to use the side recovery position. | aggravate the severity of the medical crisis"); at II.A.1. ("*While awaiting EMS*, MPD employees assisting an individual having an acute medical crisis shall provide any necessary first aid consistent with MPD training, as soon as practical.)" (emphasis added);<br><br>GE 46 (Use of Force Post Incident Requirements 5-306) ("As soon as reasonably practical, determine if anyone was injured *and* render medical aid consistent with training *and* request [EMS] if necessary.") (emphasis added).; *Id.* at 5-316 ("**Side Recovery Position:** Placing a restrained subject on their side in order to reduce pressure on his/her chest and facilitate breathing.") |
| He knew because he was CPR-certified and trained regarding:<br><br>- The need to place a person who is prone, handcuffed, and no longer resisting in the side recovery position;<br><br>- The dangers of positional asphyxia and keeping a person restrained in the prone position;<br><br>- The increased medical danger if substance use is suspected;<br><br>- The need to aid someone who has lost consciousness; | GE 68 (Kueng training records);<br><br>GE 85 (Kueng records documenting medical training and test responses and scores); *e.g.*, at 1892 (Q: "If you are unable to feel a carotid pulse in an unconscious, nonbreathing adult within 5 to 10 seconds, you should"; Kueng answered correctly: "Begin cardiopulmonary resuscitation (CPR) at once."); at 1889 (question providing scenario regarding delayed CPR: "Which of the following statements regarding this scenario is correct?" Kueng answered correctly: "You may be held liable for failure to follow the standard of care."); |

26

| | |
|---|---|
| - The dangers of failure to regain consciousness; and<br><br>- The need for immediate CPR if no pulse is found. | GE 73 (Academy Defensive Tactics PPT) at 1231 ("Side Recovery Position: Placing a restrained subject on their side in order to reduce pressure on his/her chest and facilitate breathing);<br><br>GE 74 (Academy Defensive Tactics lesson plan) at 3 ("If unconsciousness occurred, request EMS immediately by radio. Loosen clothing & jewelry around the SUB's neck area. Check airway & breathing—start CPR if needed."); side recovery at 4-5;<br><br>GE 87 (Excited Delirium PPT) at 3747 ("Ok they are in handcuffs now what. Sudden cardiac arrest typically occurs immediately following a violent struggle. Place the subject in the recovery position to alleviate positional asphyxia.");<br><br>GE 83 (law enforcement medical aid textbook) at 5 (importance of the side recovery position with photo illustrating it); 40 (noting, as to the provision of medical aid, that "laws, regulations, and policies . . . impose sanctions for wrongful actions"); 41 (discussing officer's duty to act and stating, "Police officers . . . have a duty to provide care because their job includes the provision of emergency medical care within the community."); Unit 10 (airway, breathing, and oxygenation); Unit 11 (CPR) (instructing officers to (1) "assess" a patient's |

| | |
|---|---|
| | airway, breathing, and circulation, and then (2) "begin interventions needed to preserve life"); |
| He was not forced to make a split-second decision; he made a conscious choice over the course of 9 minutes. | GE 7 (Kueng BWC) at 20:19:14-20:30:00 |
| Kueng's omissions to supervisors show that he knew that his failure to render aid was wrong. | GE 5 at 20:45:22 (Kueng's statements to Sgt. Pleoger) (omitting how long the restraint lasted; that Chauvin held his knee on Mr. Floyd's neck; and that officers could not find a pulse); <br><br> GE 5 at 21:56:30 (Kueng's statements to Lt. Zimmerman) (omitting how long the restraint lasted; that Chauvin held his knee on Mr. Floyd's neck; that officers could not find a pulse); <br><br> GE 45 at 5-101 (MPD truthfulness policy: "Officers shall not willfully or knowingly make an untruthful statement, verbally or written, or knowingly omit pertinent information pertaining to his or her official duty as a Minneapolis police officer.") |
| *See also* evidence supporting element 3 (defendant actually knew that Mr. Floyd had a serious medical need). | |
| **Defendant Lane:  Evidence** | **Source** |
| Lane knew he was required to render aid because of what he learned through MPD policy: | GE 71 (Lane signature re: responsibility for knowing policies) |

| | |
|---|---|
| - Policy requires officers to render aid while awaiting EMS; and<br><br>- Policy informs officers of the dangers of the prone position and the need to use the side recovery position. | GE 48 (Emergency Medical Response Policy 7-350) at II.A. ("[D]elay in treatment could potentially aggravate the severity of the medical crisis"); at II.A.1. ("*While awaiting EMS*, MPD employees assisting an individual having an acute medical crisis shall provide any necessary first aid consistent with MPD training, as soon as practical.)" (emphasis added);<br><br>GE 46 (Use of Force Post Incident Requirements 5-306) ("As soon as reasonably practical, determine if anyone was injured *and* render medical aid consistent with training *and* request [EMS] if necessary.") (emphasis added).; *Id.* at 5-316 ("**Side Recovery Position:** Placing a restrained subject on their side in order to reduce pressure on his/her chest and facilitate breathing.") |
| He knew because he was CPR-certified and trained regarding:<br><br>- The need to place a person who is prone, handcuffed, and no longer resisting in the side recovery position;<br><br>- The dangers of positional asphyxia and keeping a person restrained in the prone position;<br><br>- The increased medical danger if substance use is suspected; | GE 72 (Lane training records);<br><br>GE 84 (Lane records documenting medical training and test responses and scores); *e.g.*, at 1867 (Q: "If you are unable to feel a carotid pulse in an unconscious, nonbreathing adult within 5 to 10 seconds, you should"; Lane answered correctly: "Begin cardiopulmonary resuscitation (CPR) at once."); at 1864 (question providing scenario regarding delayed CPR: "Which of the following statements regarding this scenario is correct?" Lane |

| | |
|---|---|
| - The need to aid someone who has lost consciousness;<br><br>- The dangers of failure to regain consciousness; and<br><br>- The need for immediate CPR if no pulse is found. | answered correctly: "You may be held liable for failure to follow the standard of care.");<br><br>GE 73 (Academy Defensive Tactics PPT) at 1231 ("Side Recovery Position: Placing a restrained subject on their side in order to reduce pressure on his/her chest and facilitate breathing);<br><br>GE 74 (Academy Defensive Tactics lesson plan) at 3 ("If unconsciousness occurred, request EMS immediately by radio. Loosen clothing & jewelry around the SUB's neck area. Check airway & breathing—start CPR if needed."); side recovery at 4-5;<br><br>GE 87 (Excited Delirium PPT) at 3747 ("Ok they are in handcuffs now what. Sudden cardiac arrest typically occurs immediately following a violent struggle. Place the subject in the recovery position to alleviate positional asphyxia.");<br><br>GE 83 (law enforcement medical aid textbook) at 5 (importance of the side recovery position with photo illustrating it); 40 (noting, as to the provision of medical aid, that "laws, regulations, and policies . . . impose sanctions for wrongful actions"); 41 (discussing officer's duty to act and stating, "Police officers . . . have a duty to provide care because their job includes the provision of emergency medical care within the community."); Unit 10 |

|  | (airway, breathing, and oxygenation); Unit 11 (CPR) (instructing officers to (1) "assess" a patient's airway, breathing, and circulation, and then (2) "begin interventions needed to preserve life");<br><br>GE 95 (Lane Henn. Co. Juvenile Det. Ctr. training log);<br><br>GE 96 (Positional asphyxia training- Henn. Co. Juvenile Det. Ctr.) at 79158 ("How can we avoid Positional Asphyxia? . . .  Once restraints are applied, position the subject in a position that doesn't restrict breathing. This should be done right away. The best position will be either lying on their side in a 'recovery' position, or up in a seated position.");<br><br>*Id.* at 79159 ("What are the signs of Positional Asphyxia? . . . A person states he/she can't breathe . . . Increasing panic . . . A change from being loud, active and violent to suddenly quiet and tranquil");<br><br>*Id.* at 79161-62 ("Please choose . . . the statements that are correct" re: "positional asphyxia and excited delirium": A: "Once a subject is restrained, he should quickly be switched from a prone position to a position that allows him/her to breathe more freely."); |

| | |
|---|---|
| | *Id.* at 79170 ("It is critical that when a subject all of a sudden becomes quiet and still that staff check for responsiveness and vital signs. The transition from restraint to medical assistance must be quick. Staff should provide first aid . . . right away."); |
| | Tr. at 1900 (testimony of Officer Nicole MacKenzie: Q: "Now, but consistent with MPD medical training, [how] are officers trained to deal with a person who might be suffering from excited delirium?" A: "Put them in the side recovery position.") |
| | Tr. at 2571 (testimony of Chief Kelly McCarthy, explaining that POST board learning objectives specifically address positional asphyxia: "[A]s soon as someone is restrained and it is safe for you to do so, you need to move them into what we call a recovery position or you need to ensure that they're able to breathe. . . . Because positional asphyxia is so closely related to the position that we put people in for handcuffing and there were enough in-custody deaths that we needed to have a learning objective on it."). |
| He was not forced to make a split-second decision; he made a conscious choice over the course of 9 minutes. | GE 5 (Lane BWC) at 20:19:14-20:30:00 |

| | |
|---|---|
| Lane's omissions to paramedics and to supervisors show that he knew that his failure to render aid was wrong. | GE 5 at 20:29:10 (Lane's statements to paramedic) (omitting that Mr. Floyd had been pinned to the ground by his neck for 9 and a half minutes; that Mr. Floyd had been unconscious for 4 minutes; and that Mr. Floyd had been without an ascertainable pulse for almost 3 minutes);<br><br>GE 5 at 20:45:22 (Lane's statements to Sgt. Pleoger) (omitting how long the restraint lasted; that Chauvin held his knee on Mr. Floyd's neck; that officers could not find a pulse; that he did CPR in ambulance);<br><br>GE 5 at 21:56:30 (Lane's statements to Lt. Zimmerman) (omitting how long the restraint lasted; that Chauvin held his knee on Mr. Floyd's neck; that officers could not find a pulse; that he did CPR in ambulance);<br><br>GE 45 at 5-101 (MPD truthfulness policy: "Officers shall not willfully or knowingly make an untruthful statement, verbally or written, or knowingly omit pertinent information pertaining to his or her official duty as a Minneapolis police officer.") |
| *See also* evidence supporting element 3 (defendant actually knew that Mr. Floyd had a serious medical need). | |