UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                        Crim. No. 21-108 (PAM/TNL)

          Plaintiff,

v.                                                               **MEMORANDUM AND ORDER**

Tou Thao, J Alexander Kueng,
and Thomas Kiernan Lane,

          Defendants.
_____

This matter is before the Court on posttrial Motions filed by Defendants Tou Thao, J Alexander Kueng, and Thomas Kiernan Lane, for a judgment of acquittal under Rule 29 and for a mistrial on the basis of prosecutorial misconduct.

**BACKGROUND**

Defendants are former Minneapolis police officers who were charged with federal civil rights crimes in connection with their roles in the death of George Floyd while in police custody.  After a four-week trial, the jury convicted Defendants of the charges brought against them under 18 U.S.C. § 242:  deprivation of rights for failing to intervene to stop an unreasonable use of force as to Defendants Thao and Kueng, and deprivation of rights for deliberate indifference to serious medical needs as to all three Defendants. Defendants now seek review of their convictions.

## DISCUSSION

A.   **Motions for Judgment of Acquittal**

At the close of the Government's case, all Defendants moved orally for a judgment of acquittal under Fed. R. Crim. P. 29. (Tr. Vol. XV at 2980-3005.) Defendants Lane and Thao also filed written Motions (Docket Nos. 264, 266), and the Government responded in writing to those Motions (Docket No. 285).

1.   **Legal Standard**

Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Because the Court reserved ruling on the motions at the time they were made, the Rule provides that the Court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Id. R. 29(b).

A Rule 29 judgment of acquittal is available "only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." United States v. Gomez, 165 F.3d 650, 654 (8th Cir. 1999); see also Jackson v. Virginia, 443 U.S. 307, 319 (1979) (evidence is not insufficient to support a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt") (emphasis in original). The Court must "view the evidence in the light most favorable to the jury's verdict, giving the government the benefit of every reasonable inference and resolving all evidentiary conflicts in favor of the government." Gomez, 165 F.3d at 654. A motion for acquittal is properly denied when "there is substantial evidence justifying an inference of guilt irrespective of any countervailing

testimony that may be introduced." United States v. Armstrong, 16 F.3d 289, 292 (8th Cir. 1994).

In looking at the evidence, "the district court is not to weigh evidence or consider the credibility of the witnesses, but rather to determine whether the Government has presented evidence on each element sufficient to support a jury verdict." United States v. Chavez, 230 F.3d 1089, 1091 (8th Cir. 2000). Ultimately, the question raised in these motions is whether the evidence in the Government's case was enough to establish each Defendant's willfulness, that is, their deliberate indifference to Mr. Floyd's rights.

**2.  Analysis**

There was substantial evidence in this case that could have led the jury to determine that Defendants did not act willfully. For example, Defendant Thao notes that he increased the urgency of the ambulance call by "stepping up" the code from a 2 to a 3, and Officer Mackenzie testified that Thao could have assumed that Mr. Floyd was not in cardiac arrest from the fact that the other officers were not performing CPR. Thao also points out that he did not touch Mr. Floyd and was not involved in the restraint in any way, but rather performed crowd- and traffic-control duties during the incident. Defendant Kueng proffered evidence that, as a new officer, he deferred to Officer Chauvin, who by MPD policy was in charge of the scene and was the only officer in a position to take Mr. Floyd's carotid pulse. Defendant Lane notes that he twice asked about turning Mr. Floyd on his

side, even mentioning excited delirium to the other officers, and he assisted in the ambulance by giving Mr. Floyd chest compressions.[1]

For its part, the Government presented evidence regarding the training police officers receive on proper restraint techniques, the duty to stop another officer from using unreasonable force, and medical intervention. The jury's decision was undoubtedly a difficult one, and the Government's evidence was not overwhelming. However, there was sufficient evidence presented that the jury could have relied on, and obviously did rely on, to determine that the Government had met its burden to establish each Defendants' willfulness.

The issues here—whether each Defendant's actions were reasonable and whether each Defendant acted willfully—are quintessential jury questions. See Billingsley v. City of Omaha, 277 F.3d 990, 995-97 (8th Cir. 2002) (approving jury determination of Fourth Amendment's reasonableness standard); United States v. Gleason, 726 F.2d 385, 387-88 (8th Cir. 1984) (noting that willfulness is "for determination by the jury"). And a motion under Rule 29 succeeds only if no reasonable jury could have found that Defendants acted willfully or that Defendants' actions were not reasonable. As noted, the Government submitted evidence regarding the training provided to Defendants, and the jury instructions provided that the jury could use training evidence to evaluate whether Defendants' actions were willful. Although the Court has grave concerns about the possibility that the jury's

---

[1] The evidence showed that Defendants made an amateur—and ultimately incorrect—diagnosis of excited delirium. During the incident, Defendants did not have the benefit of the Government's multiple physician witnesses to refute this mistaken belief.

4

verdicts were based on their fear of repercussions—social, political, and personal—from a different outcome, the evidence brought forth at trial supports the jury's determinations. Because there was sufficient evidence from which the jury could have determined that Defendants acted willfully and that their actions were not reasonable, the Motions must be denied.

Finally, although no Defendant raised this issue, the Court must comment on the potentially dubious constitutionality of the charge brought against Defendants for failure to render medical aid. Deliberate indifference to medical needs has long been recognized as a tort of constitutional magnitude for purposes of a claim under 42 U.S.C. § 1983. E.g., Ivey v. Audrain Cty., Mo., 968 F.3d 845, 848 (8th Cir. 2020) (finding that jail officials in a § 1983 case violated Fourteenth Amendment's Due Process Clause "when they show[ed] deliberate indifference" to the "objectively serious medical needs" of a pretrial detainee). But the criminal prosecution of state actors for failing to give medical aid risks violating the constitutional principle that criminal laws must give fair warning of what they prohibit. See United States v. Lanier, 520 U.S. 259, 266 (1997) (discussing "fair warning requirement"). Indeed, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." Id. This Court is aware of only one other federal criminal case holding law enforcement officers criminally accountable for failure to render medical aid. United States v. Gonzales, 436 F.3d 560, 573 (5th Cir. 2006). The facts of Gonzales are far different from the facts here, and that case occurred in Texas, outside the Eighth

Circuit. Gonzales is likely not sufficient to put law enforcement on notice of § 242's application to a situation such as that Defendants confronted.

In this case, the evidence presented could support a jury determination that Defendants knew or should have known that medical intervention was necessary and disregarded that knowledge. And again, because no Defendant raised the issue with this Court, the ultimate question of whether the charges here imposed criminal liability for conduct which, "in the light of pre-existing law, the unlawfulness under the Constitution is apparent," Lanier, 520 U.S. at 271-72 (quotation and alteration omitted), is beyond the Court's role to determine.

The Motions for Judgment of Acquittal are denied.

**B.    Motions for Mistrial for Prosecutorial Misconduct**

Thao and Kueng each filed motions seeking a mistrial for prosecutorial misconduct. (Docket Nos. 290, 291.) Lane did not file a separate motion in this regard but joined the other Defendants' motions.[2] (Docket No. 292.) The Government responded to the Motions in writing. (Docket No. 294.)

**1.    Legal Standard**

When evaluating a motion for a mistrial on the basis of prosecutorial misconduct, "[t]he ultimate question is whether the prosecutor's comments, if improper, so infected the trial with unfairness as to make the resulting conviction a denial of due process." United

---

[2] The Government asks the Court to disregard Lane's Motion, which was filed one day after the deadline for doing so. The Court will not penalize Lane for what was likely merely an oversight on his counsel's part.

6

States v. New, 491 F.3d 369, 377 (8th Cir. 2007) (internal quotation marks omitted). "Prosecutorial misconduct is grounds for a mistrial where (1) the prosecutor's remarks are improper, and (2) the remarks prejudicially affect the defendant's substantial rights so as to deprive the defendant of a fair trial." United States v. Beeks, 224 F.3d 741, 745 (8th Cir. 2000). "To determine whether the defendant was deprived of a fair trial, [the court] consider[s] three factors: the cumulative effect of the misconduct, the strength of the properly admitted evidence, and any curative actions taken by the district court." United States v. Kopecky, 891 F.3d 340, 343 (8th Cir. 2018).

Cases finding prosecutorial misconduct sufficient to warrant a mistrial are rare. In most such cases, the prosecutor's conduct is egregious. For example, a prosecutor repeatedly commented to the jury and elicited testimony about a matter the Eighth Circuit Court of Appeals had specifically prohibited prosecutors from mentioning. United States v. Conrad, 320 F.3d 851, 853-56 (8th Cir. 2003). In another, the prosecutor referred to the African-American defendants as "bad people" in his rebuttal closing argument, and pointed out to the jury that the defendants were not local to North Dakota, stating, "We are lucky where we live not to come in contact with as many [bad people] as there may be in other parts of the country. But there are still some around here." United States v. Cannon, 88 F.3d 1495, 1502 (8th Cir. 1996), rev'd on other grounds, Watson v. United States, 552 U.S. 74 (2007).

Defendants rely on two additional cases for their contention that the prosecutors in this case committed misconduct. In the first, the defendants were convicted of illegal importation and sale of endangered iguanas. United States v. Crutchfield, 26 F.3d 1098

7

(11th Cir. 1994). The prosecutor was an expert in the reptile field and had been a customer of the defendants. He asked witnesses "countless irrelevant inquiries seemingly designed only to display to the jury his own expertise in the reptile field." Id. at 1100. He persisted in asking these questions despite the District Judge's repeated instructions to "move along" and sustained objections to the questions. The Judge was forced to clear the courtroom after egregiously inappropriate questioning. Id. at 1101. The appellate court had little difficulty concluding that the prosecutor's "flagrant[]" violation of the rules of evidence and that "multiple and continuing instances of intentional misconduct" "permeate[d]" the trial and "prejudicially affected [the defendants'] substantial rights." Id. at 1103.

In the other case on which Defendants rely, the prosecutor misstated evidence, twice attempted to elicit evidence the court had already rejected and was held in contempt of court for continuing to ask leading questions despite being repeatedly admonished by the district judge. Locken v. United States, 383 F.2d 340 (9th Cir. 1967). In his closing argument, the prosecutor "improperly expressed his own personal opinion, unsupported by evidence, as to" one witness's motivation for exculpating the defendant. Id. at 341. Because the case against the defendant was not "very strong," the appellate court concluded that the "cumulative effect of many prejudicial irregularities should not stand." Id.

### 2. Analysis

Defendants Thao and Kueng generally rely on the same instances of alleged prosecutorial misconduct, arguing that even if the instances taken separately are not sufficient, the cumulative effect warrants a mistrial. They contend that: the prosecutor's opening statement was argumentative; prosecutors persistently used leading, repetitive,

8

and cumulative questioning of witnesses; prosecutors elicited testimony in violation of the Court's pretrial orders; the prosecutor called Defendants liars in her closing argument; and the closing argument impermissibly shifted the burden to Defendants.

The Court must determine first whether the Government's conduct was improper. If it was, then the Court must evaluate the cumulative effect of that misconduct, the strength of the case against the Defendants, and the curative actions taken in instructing the jury to disregard improper questions or answers and other curative instructions.

A mistrial on the basis of prosecutorial misconduct is rare, and as discussed previously, is warranted when the prosecutor's statements, arguments, and questions are egregiously improper. The Court has reviewed all instances Defendants list in their memoranda. Although Defendants are correct that the Court admonished the prosecution regarding leading questions and repetitive evidence, this conduct did not permeate the trial in such a way to have a prejudicial effect on Defendants' rights. Indeed, the Court repeatedly cautioned all counsel, defense and prosecution alike, regarding leading questions and repetitive evidence. None of the instances of alleged misconduct to which Defendants point, taken individually or cumulatively, meets the high bar necessary for a mistrial on the basis of prosecutorial misconduct.

This is not to say that the Court countenances the Government's trial strategy in this case, which often seemed vindictive and overbearing. This Court has had the privilege of working in dozens of emerging democracies around the world to ensure that judicial independence is preserved as the fundamental building block of the rule of law. In many former totalitarian states, the rule of law suffers because of the disproportionate power of

the prosecutor vis-à-vis the accused and the judiciary. The Court views the Government's conduct in this case—not the least of which was assigning no fewer than seven prosecutors to try the case—as frighteningly close to that line of overzealous prosecution.

An example of the danger of overzealous prosecution in this case is the disregard the Department of Justice showed for its own guidelines in bringing these charges in the first instance. Defendants are facing serious charges in Minnesota state court. The Department's policy on initiating and declining charges provides that the federal government will weigh several considerations "[i]n determining whether prosecution should be declined because the person is subject to effective prosecution in another jurisdiction." U.S. Attorneys' Manual: Principles of Federal Prosecution § 9–27.240 (2021). Those factors include the strength of the state's interest in prosecuting the individuals, the state's "ability and willingness" to do so, and the probable sentence the individuals would receive in state court if convicted. Id. All of these factors should have weighed against prosecuting these Defendants here. But despite pending state charges that potentially carry significant prison terms, the Department of Justice pursued prosecution.

There is certainly no double-jeopardy issue in the federal government's prosecution of these Defendants. Gamble v. United States, 139 S. Ct. 1960 (2019). But "state prosecutions [are not] a Grapefruit League version of the Big Show." Torres v. Lynch, 578 U.S. 452, 464 n.9 (2016). States "possess primary authority for defining and enforcing criminal laws, including those prohibiting the gravest crimes. For that reason, even when U.S. Attorneys have jurisdiction, they are generally to defer to, rather than supplant, state prosecutions of serious offenses." Id. (citations and quotation omitted). The Government's

10

prosecution here raises significant questions, but those questions are for the executive branch, not the judiciary, to resolve.

## CONCLUSION

Defendants' convictions are supported by evidence, and Defendants did not establish that prosecutorial misconduct deprived them of their rights. Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant Kueng's Oral Motion for Judgment of Acquittal is **DENIED**;

2. Defendant Thao's Motion for Judgment of Acquittal (Docket No. 266) is **DENIED**;

3. Defendant Lane's Motions for Judgment of Acquittal (Docket Nos. 264, 288) are **DENIED**;

4. Defendant Kueng's Motion for Mistrial (Docket No. 290) is **DENIED**;

5. Defendant Thao's Motion for Mistrial (Docket No. 291) is **DENIED**; and

6. Defendant Lane's Motion for Mistrial (Docket No. 292) is **DENIED**.

Dated:    May 10, 2022                    *s/Paul A. Magnuson*
                                                     Paul A. Magnuson
                                                     United States District Court Judge