UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-108(4) (PAM/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) **UNITED STATES'** ) **SENTENCING** ) **MEMORANDUM** |
| THOMAS KIERNAN LANE, | ) ) |
| Defendant. | ) |

COMES NOW the United States of America, by and through undersigned counsel, and respectfully submits the following memorandum in aid of sentencing. The United States respectfully submits that a within-guideline-range sentence of 63 to 78 months' imprisonment is reasonable and appropriate in light of the serious consequences of defendant Thomas Lane's criminal omissions and in consideration of the 18 U.S.C. § 3553(a) factors.

As the jury necessarily found, the defendant recognized that George Floyd was suffering from a serious medical need and failed to provide him with the basic medical aid that the defendant was trained and duty-bound to give at a time when that aid could have made a difference. Although the defendant did not intend for Mr. Floyd to die, the defendant's failure to provide medical aid had serious consequences for Mr. Floyd, Mr. Floyd's family, defendant Lane's fellow law enforcement officers, and the broader community. A guideline sentence is justified by the gravity and impact of his inaction.

## I. Procedural History

On February 24, 2022, following a 21-day trial, a federal jury convicted the defendant, former Minneapolis Police Department ("MPD") officer Thomas Lane, of violating 18 U.S.C. § 242. The jury found that the defendant willfully deprived George Floyd of the right to be free from a police officer's deliberate indifference to his serious medical needs, by seeing Mr. Floyd lying on the ground in clear need of medical care, and willfully failing to aid him. The jury found that this offense, as charged in Count Three of the Indictment, resulted in bodily injury to and the death of Mr. Floyd.[1]

## II. The Presentence Investigation Report

The United States has reviewed the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office and has no objections. The PSR correctly began with a base offense level of 18, the base offense level for involuntary manslaughter. ECF No. 365 at ¶ 50; U.S.S.G. § 2A1.4(a)(2)(A). United States Sentencing Guidelines Section 2H1.1(a), the guideline section applicable to violations of 18 U.S.C. § 242, states that the base offense level for an offense involving two or more participants is the greater of 12 or the offense level for "any conduct established by the offense of conviction"—here, involuntary manslaughter. § 2H1.1 (a) & application note 1; § 2A1.4(a)(2)(A). The PSR then correctly applied the following adjustments:

---

[1] Former co-defendant Derek Chauvin pleaded guilty to Count One of the Indictment; the same jury that convicted defendant Lane also found co-defendants Tou Thao and J. Alexander Kueng guilty of violating two counts of 18 U.S.C. § 242 each, as charged in Counts Two and Three of the Indictment. The United States will file a separate sentencing memorandum for each defendant.

- a 6-level upward adjustment pursuant to § 2H1.1(b)(1) because the defendant committed the offense under color of law, ECF No. 365 at ¶ 51; and

- a 2-level upward adjustment pursuant to § 3A1.3 for restraint of the victim, *Id.* at ¶ 52.

This results in a total offense level of 26. *Id.* at ¶ 58. With a criminal history category of I, the resulting guideline range is 63 to 78 months' imprisonment. *Id.* at ¶ 111. The PSR identified no factors that would warrant a departure from the applicable sentencing guideline range. *Id.* at ¶ 125.

### III.   The Defendant's Objections

#### 1. Physical Restraint of Victim, § 3A1.3

Defendant Lane first objects to the PSR's application of the two-level upward adjustment for restraint of the victim pursuant to § 3A1.3, because he contends the adjustment should not apply where the victim was lawfully restrained. ECF No. 348 at 2. The restraint of victim adjustment applies when "a victim was physically restrained in the course of the offense," § 3A1.3, even where the victim is lawfully restrained. *United States v. Wilson*, 686 F.3d 868, 872 (8th Cir. 2012) (affirming the application of the physical restraint adjustment where the "victims were lawfully incarcerated"); *United States v. Gray*, 692 F.3d 514, 521-22 (6th Cir. 2012) (affirming the application of the physical restraint adjustment where the defendant was convicted of violating 18 U.S.C. § 242 for acting with deliberate indifference to serious medical needs and explaining that "the lawfulness of the restraint does not preclude the application of § 3A1.3"); *United States v. Clayton*, 172 F.3d 347, 353 (5th Cir. 1999) (holding that the district court had erred in

failing to apply the physical restraint adjustment and explaining that "the lawfulness of the defendant's restraint of the victim . . . is not a concern implicated by U.S.S.G. § 3A1.3").

Defendant Lane's handcuffing and his initial restraint of Mr. Floyd may have been reasonable and within the law, but this does not preclude the application of the restraint guideline when Mr. Floyd remained handcuffed and restrained on the ground throughout the offense. Indeed, despite its initial lawfulness, the officers' prone restraint of Mr. Floyd quickly became unlawful, and the officers' continued restraint of Mr. Floyd as his medical condition deteriorated directly contributed to his death. *See* PSR ¶¶ 40-41, at ECF No. 365 (summarizing expert medical testimony at trial).

### 2. Mitigating Role, § 3B1.2

Defendant Lane next objects to the PSR because he argues he should receive a four-level downward adjustment as a minimal participant in the offense. ECF No. 353 at 1. The mitigating role adjustment applies to "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." § 3B1.2 cmt. n.3(A). "'[M]erely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was deeply involved in the offense.'" *United States v. Jones*, 25 F.4th 1077, 1079 (8th Cir. 2022) (quoting *United States v. Cubillos*, 474 F.3d 1114, 1120 (8th Cir. 2007)).

Here, defendant Lane was convicted of deliberate indifference to Mr. Floyd's serious medical needs in violation of 18 U.S.C. § 242. All four defendants were charged with that offense, and all four defendants shared equally the duty to render aid to Mr. Floyd,

who died in their joint custody. According to the expert medical testimony at trial, had any one of them repositioned Mr. Floyd onto his side when he was still breathing, Mr. Floyd would have lived. Had any defendant performed CPR during the initial minutes after Mr. Floyd lost a pulse, it may also have saved his life. Defendant Lane is not substantially less culpable for his failure to render medical aid than the other defendants. Based on his statements on the scene indicating that he knew the correct action was to roll Mr. Floyd on his side, his stated observations that Mr. Floyd was passing out, and his recognition that Officer Kueng could not find a pulse, he made plain he possessed the knowledge to save Mr. Floyd's life—yet he chose not to act.

### 3. Color of Law Adjustment, § 2H1.1(b)

Defendant Lane objects to the six-level increase of his offense level for acting under color of law, pursuant to § 2H1.1(b)(1), arguing that it amounts to double counting because acting under color of law was an element of the offense. ECF No. 353 at 1. The question, however, is not whether the defendant was convicted of a crime that included acting under color of law as an element, but rather whether his base offense level accounts for his status as a police officer before the six-level color of law adjustment is applied. Here, it does not.

Defendant Lane's base offense level, § 2H1.1(a), applies both to offenses committed under color of law and offenses such as hate crimes, where the defendant acts in a private capacity. *See* § 2H1.1 Stat. Provisions (including § 242 and federal hate crime statutes 18 U.S.C. §§ 245(b), 247, 249 & 42 U.S.C. § 3631 among the statutes that correspond to this guideline). The § 2H1.1 base offense level therefore does not account for the defendant's status as a police officer until the offense level is adjusted under § 2H1.1(b)(1). *See United*

5

*States v. Volpe*, 224 F.3d 72, 77 (2d Cir. 2000) (no double counting when the guideline calculations for an officer convicted of an 18 U.S.C. § 242 violation included both an adjustment under § 2H1.1(b)(1)(B) because the defendant acted under color of law and § 2A3.1(b)(3)(A) because the victim was in the custody, care, or control of the defendant); *United States v. Hickman*, 766 F. App'x 240, 250-51 (6th Cir. 2019) (affirming the sentence in a § 242 deliberate indifference and excessive force prosecution and holding that there was no double counting where the defendant received a color-of-law adjustment under § 2H1.1(b)(1) because without it, his base offense level would not reflect that he had acted under color of law); *see also United States v. Webb*, 214 F.3d 962, 965 (8th Cir. 2000) (no double counting when the guideline calculations for an officer convicted of an 18 U.S.C. § 242 violation included a color of law adjustment under § 2H1.1(b)(1)(B) because the § 2H1.1 adjustment can be independently justified on the basis that the defendant-officer was a public official at the time of the offense).

   4. **Acceptance of Responsibility**

Last, defendant Lane argues that he is entitled to a downward adjustment in his offense level because he accepted responsibility. ECF No. 348 at 1-2. A defendant may receive a downward adjustment "[i]f the defendant *clearly* demonstrates acceptance of responsibility for his offense." § 3E1.1 (emphasis added). The adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id.* cmt. n.2. It may, however, apply in "rare situations" where a defendant goes to trial to contest legal issues unrelated to factual guilt. *Id.* That was not

the situation here, and accordingly, defendant Lane is not entitled to this adjustment.

Defendant Lane, as was his constitutional right, contested factual elements of his guilt at trial, arguing that the evidence failed to prove that he had acted willfully or with deliberate indifference. He contended that he had provided medical care to Mr. Floyd when Mr. Floyd was restrained on the ground by calling an ambulance, suggesting that the officers restrain Mr. Floyd with a hobble, and asking whether they should roll Mr. Floyd on his side.[2] *See, e.g.*, TT 4108-113 (arguing that these and other facts demonstrate defendant Lane was "concerned" about Mr. Floyd, "[n]ot deliberately indifferent"). As the defendant denied "the factual element[s] of guilt," no adjustment is warranted. *See, e.g.*, *United States v. Roggy*, 76 F.3d 189, 194 (8th Cir. 1996) (affirming the district court's denial of an adjustment for acceptance of responsibility where the defendant expressed remorse and admitted to using an unapproved pesticide but denied that he had the intent required to prove fraud); *United States v. Makes Room*, 49 F.3d 410, 416 (8th Cir. 1995) (affirming the denial of the acceptance of responsibility adjustment where the defendant denied that he acted with the required *mens rea* for the charged offense of second-degree murder but admitted to the underlying facts and offered to plead guilty to assault); *United States v. Spurlock*, 485 F.3d 1011, 1015-16 (8th Cir. 2007) (affirming the denial of an acceptance of responsibility adjustment where the defendant failed to "narrow the case to

---

[2] To the extent that defendant Lane now argues that his actions after Mr. Floyd was placed in the ambulance demonstrate the defendant's acceptance of responsibility, the defendant's failure to tell Sgt. Pleoger and Lt. Zimmerman about the nature and extent of Chauvin's restraint and the seriousness of Mr. Floyd's condition—*i.e.*, that he was pulseless and not breathing—undercut the defendant's argument.

purely legal issues" and instead "hedged his bet" by "'denying the essential factual elements of guilt'").

## IV. Section 3553(a) Factors Support a Within-Guideline Sentence

When fashioning an appropriate sentence for a defendant, a court must first consider the applicable guideline range under 18 U.S.C. § 3553(a)(4). *United States v. Hernandez*, 518 F.3d 613, 616 (8th Cir. 2008). Although the sentencing guidelines are advisory, they are the "starting point and the initial benchmark" for federal sentencing. *Id.* at 616 (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). Once a court has determined the appropriate sentencing range, it must then consider that range in light of the other relevant § 3553(a) factors. *Hernandez*, 518 F.3d at 616.

In order to arrive at an appropriate sentence within that range, the Court must consider several factors, including: (1) the nature and circumstances of the offense; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the history and characteristics of the defendant; and (4) adequate deterrence of criminal conduct and the protection of the public. 18 U.S.C. § 3553(a). Section 3553(a) then requires the Court to "impose a sentence sufficient, but not greater than necessary, to comply" with these purposes. *Id*. Consideration of the § 3553(a) factors here demonstrates that a within-guideline sentence is most consistent with these purposes.

### A. The Nature and Circumstances of the Offense

The first § 3553(a) factor is the "nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). The nature and circumstances of the defendant's conduct here support a within-guideline sentence.

During the restraint, defendant Lane was well-placed to save Mr. Floyd's life. He had the information to understand exactly how critical Mr. Floyd's situation was: he heard Mr. Floyd say, over and over again, that he could not breathe. He saw Chauvin restraining Mr. Floyd by his neck in a position the defendant was never trained to use, and saw Chauvin keep his knee on Mr. Floyd's neck for minutes after Mr. Floyd stopped struggling, stopped talking, lost consciousness, and lost a pulse. He heard the bystanders, who could see Mr. Floyd's face and Chauvin's position, warn him that Chauvin was cutting off Mr. Floyd's ability to breathe, and eventually, that Mr. Floyd had passed out.

Defendant Lane also had the information he gathered while crouching at Mr. Floyd's feet: he could feel Mr. Floyd's lack of resistance and movement with his hands; he heard Officer Kueng say he could not find a pulse; and defendant Lane also tried and failed to find Mr. Floyd's pulse. All of this information should have set off alarm bells for defendant Lane, who had recently completed a 40-hour emergency medical responder course, and had completed two CPR trainings in three years. Indeed, defendant Lane's own words during the restraint demonstrate that he actually *did* know that Mr. Floyd was in serious medical distress, and he knew exactly what needed to be done to save Mr. Floyd—he just failed to do it. Thus, far from demonstrating that defendant Lane was not deliberately indifferent as he contended at trial, his own statements establish that the

9

defendant understood in real-time the seriousness of Mr. Floyd's condition, and thus support his willfulness. Yet, knowing both the seriousness of Mr. Floyd's condition and how to save him, defendant Lane chose passivity rather than action when Mr. Floyd's life hung in the balance.

Throughout the trial, defendant Lane also argued that he was not deliberately indifferent to Mr. Floyd's serious medical needs because he took certain actions before and after Chauvin knelt on Mr. Floyd's neck. The crucial period, however, and the omissions for which defendant Lane was convicted, occurred during the nine-and-a-half-minute restraint because that was the period during which Mr. Floyd suffered serious medical distress. The jury concluded both that Mr. Floyd's serious medical needs during that time were obvious and that defendant Lane was subjectively aware of them. That defendant Lane called for an ambulance prior to Mr. Floyd's situation becoming emergent, or that defendant Lane performed CPR in the ambulance at the direction of the paramedics after it was too late to save him does not mitigate his culpability for his failure to aid Mr. Floyd when it mattered.

A guideline-range sentence is also appropriate here because the defendant's offense is appropriately cross-referenced to the involuntary manslaughter guideline. *See* U.S.S.G. § 2A1.4; 18 U.S.C. § 1112A ("the unlawful killing of a human being without malice . . . in the commission[,] . . . without due caution and circumspection, of a lawful act which might produce death"); *see also United States v. Williams*, 353 F. Supp. 3d 14, 20-21 (D.D.C. 2019) ("[P]assive conduct or omissions alone are sufficient to convict a defendant of involuntary manslaughter under Section 1112(a)."). This guideline takes account of both

defendant Lane's lack of specific intent to take a life and the jury's verdict that he was subjectively aware of and deliberately disregarded Mr. Floyd's serious medical condition. *See United States v. Pardee*, 368 F.2d 368, 373-74 (4th Cir. 1966) (reasoning that the federal statutory definition of manslaughter "was not intended to deviate from the universal concept of manslaughter" as "a felonious homicide in which one takes the life of another without legal excuse unintentionally . . . *by neglecting a duty* imposed either by law or by contract") (emphasis added) (internal quotation marks omitted). This guideline ensures that the defendant's sentencing range is appropriately calibrated to the crime of conviction.

### B. The Seriousness of the Defendant's Offenses, Promotion of Respect for the Law, and a Just Punishment

Section 3553(a) also directs the sentencing court to consider the need for the sentence "to reflect the seriousness of the offense, promote respect for the law, and to provide for a just punishment." 18 U.S.C. § 3553(a)(2)(A). A guideline-range sentence will most appropriately capture the significance of the defendant's inaction here, and the lasting harms that those failures have inflicted on the victim, his family members, and the larger community.

The defendant's failure to act here impacted Mr. Floyd and his family and friends in the most personal and direct way: the defendant's inaction resulted in the loss of Mr. Floyd's life. Although defendant Lane surely did not intend that result, no harm is greater or more permanent.

The defendant's offenses also failed the community he served, which expected him to step in (as he was required to do) when he witnessed a medical emergency inflicted by

11

a fellow officer on a person in his custody. By failing to provide this aid when it was most needed; by failing to render care any community member would hope any stranger with such training would provide their loved one in that position; and particularly by failing to do so when providing aid was so uniquely within his power and his duty, the defendant undermined public trust in law enforcement officers at MPD and beyond. A guideline sentence will therefore reflect the seriousness of the defendant's inaction, including the loss of Mr. Floyd's life, the permanent harm such a loss has inflicted on his family, and the larger societal harm.

### C. The History and Characteristics of the Defendant

Section 3553(a)(1) also directs courts to consider "the history and characteristics of defendant." The defendant will likely argue that he merits a downward variance because he chose a career as a police officer. Numerous courts have held that crimes committed by law enforcement officers are ones that courts should treat more seriously, not less seriously, than other types of criminal acts. *See United States v. Thames*, 214 F.3d 608, 614 (5th Cir. 2000) ("A defendant's status as a law enforcement officer is often times more akin to an aggravating as opposed to a mitigating sentencing factor, as criminal conduct by a police officer constitutes an abuse of a public position."); *see also United States v. McQueen*, 727 F.3d 1144, 1157 (11th Cir. 2013) (reversing a below-guidelines sentence in an excessive force case as "a clear error of judgment" because such a crime is a "particularly serious offense"); *United States v. LaVallee*, 439 F.3d 670, 708 (10th Cir. 2006) ("[I]n many instances, committing a crime while acting under color of law will result in a higher sentence – as it did in this case – rather than a lower sentence."). This is such a case. It is

12

precisely because the defendant was a police officer at the time of the offense that his failure to act not only harmed Mr. Floyd but harmed the public trust. Moreover, had everyone involved been a private citizen, the defendant would have lacked the authority to hold off the civilian bystanders, and one of them could have stepped in to provide the needed aid.

Although the defendant may argue for a downward departure based on his public service or his relative inexperience as a police officer—arguments that at first blush, may seem reasonable—a deviation from the guidelines on these bases would send the message that deliberate indifference toward individuals in police custody is not deserving of the sanction that Congress and the Sentencing Commission have deemed to be just punishment based on the federal courts' collective sentencing expertise accumulated over the decades. *See, e.g.*, *United States v. Strange*, 370 F. Supp. 2d 644, 651 (D.N.D. 2005) ("When people who are supposed to enforce our law . . . end up violating someone's constitutional rights, it is a very serious thing in a community. . . . The range of imprisonment suggested by the sentencing guidelines both reflects and furthers these considerations.") (internal quotation marks omitted).

Further, despite the defendant's inexperience, he testified at trial that he had both the knowledge and the training to recognize Mr. Floyd's medical condition and respond appropriately. *See* TT 3835, 3838-3839 (acknowledging that he knew he had a duty to render medical aid to a person in his custody); TT 3839, 3845-46, 3848 (acknowledging that leaving a handcuffed person in the prone position can make it difficult for a person to breathe, and that the defendant was trained to move people into the side recovery position

13

to protect against those risks); TT 3949-59 (defendant had been trained, both in his position as a juvenile detention officer and in order to become an MPD officer, on how to assess breathing, take a pulse, and immediately provide CPR). A guideline sentence is appropriate because it accounts for the defendant's position as a law enforcement officer.

### D. Deterrence and Protection of the Public from Further Crimes

Protecting the public and deterring additional criminal conduct is the fourth factor that courts are directed to consider under § 3553(a)(2)(B)-(C). The defendant will never again serve as a law enforcement officer, and thus, the need for a sentence to protect the public against future, similar crimes by this defendant is not at issue here. However, "Congress specifically made general deterrence an appropriate [sentencing] consideration under [S]ection 3553(a)(2)(B)," and the Eighth Circuit has "described it as 'one of the key purposes of sentencing.'" *Ferguson v. United States*, 623 F.3d 627, 632 (8th Cir. 2010) (quoting *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006)). A within-guideline sentence will remind other officers that their constitutional obligations as law enforcement officers include an affirmative obligation to protect the lives and safety of those in their custody. A within-guidelines sentence will thus serve to protect the American public by promoting respect for the law and these paramount constitutional duties.

## V. Conclusion

For these reasons, the United States respectfully submits that the defendant should be sentenced to a within-guidelines sentence of 63 to 78 months' imprisonment on Count Three, to be followed by three years of supervised release.

Dated: June 29, 2022                                                          Respectfully submitted,

ANDREW M. LUGER                                     KRISTEN CLARKE
United States Attorney                                     Assistant Attorney General
                                                                            Civil Rights Division

*/s/ LeeAnn K. Bell*
BY:  LEEANN K. BELL                                  */s/ Samantha Trepel*
Assistant U.S. Attorney                                   BY:  SAMANTHA TREPEL
Attorney ID No. 318334                                 Special Litigation Counsel
                                                                            Attorney ID No. 992377 DC